UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
JOHN DOE,                                                              :
                                                                       :
                               Plaintiff,                              :
                                                                       :
               -v-                                                     :   23 Civ. 4743 (JPC)
                                                                       :
DELOITTE LLP GROUP INSURANCE PLAN,                                     :   MEMORANDUM OPINION
                                                                       :        AND ORDER
                               Defendant.                              :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff John Doe brings this civil enforcement action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Plaintiff was a participant of the Defendant employee health benefit plan, Deloitte LLP Group Insurance Plan, and ascribed to the Aetna Open Access Select EPO Plan (the "Plan"), which was administered by Aetna Life Insurance Company ("Aetna"). Plaintiff challenges the denial of health benefits related to residential mental health treatment at an out-of-network provider for his dependent son, A.D. As relief, he seeks, *inter alia*, payments of health benefits due under the Plan and approval of ongoing costs for A.D.'s out-of-network residential treatment.

Pending before the Court are the parties' cross-motions for judgment in their favor. Dkts. 33, 36.[1] For the reasons stated below, the Court treats the filings as cross-motions for summary

---

[1] Plaintiff's motion is styled as a motion for judgment on partial findings under Federal Rule of Civil Procedure 52. *See* Dkt. 33. As explained *infra*, the proper vehicle for each party's motion is a motion for summary judgment. The Court thus construes Plaintiff's motion as one for summary judgment and adjudicates the motion accordingly. *See* Dkt. 41 ("Pl. Reply") at 22 (requesting that the Court grant Plaintiff summary judgment "if the Court determines summary judgment is [the] appropriate [vehicle]").

judgments and concludes that the denial of benefits was arbitrary and capricious because Aetna did not adequately explain the basis for denial by failing to address whether to authorize a single case agreement for the out-of-network provider at issue. Accordingly, the Court denies Defendant's motion for summary judgment, grants in part Plaintiff's motion, and remands this case to Aetna for a new review and further explanation of the basis of its decision.[2]

For the purposes of this Memorandum Opinion and Order, the Court assumes the parties' familiarity with the facts and procedural history of this case.[3] The threshold issue is whether the parties' cross-motions should be evaluated as motions seeking judgment following a bench trial on the papers under Federal Rule of Civil Procedure 52 or for summary judgment under Rule 56. *Compare* Dkt. 33-1 ("Pl. Motion") at 16-17, *with* Dkt. 36-1 ("Deft. Motion") at 4-6.

Rule 56 is the proper vehicle for the parties' motions. "In ERISA actions challenging the denial of benefits, the general practice is to treat the parties' submissions as cross-motions for summary judgment, and, if summary judgment is denied because material facts are in dispute, to conduct a 'bench trial' with the Court acting as the finder of fact." *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 497 (S.D.N.Y. 2015) (internal quotation marks omitted).

---

[2] The Court concludes that oral argument would not aid in its disposition of this matter and therefore denies Defendant's motion for oral argument. Dkt. 37.

[3] In reaching its decision, the Court relies on the administrative record, Dkt. 35, and cites to pages in that record using the prefix "DGIP." Plaintiff moves to seal the administrative record and other exhibits attached to his motion for judgment. Dkt. 34. The Court has reviewed the proposed exhibits in light of the principles set forth in *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110 (2d Cir. 2006), and its progeny. As the Court explained in its Order of June 13, 2023, "this case entails highly sensitive and personal matters involving Plaintiff's son's mental health, which allegedly manifested in several ways, including thoughts of suicide." Dkt. 9 at 3. Thus, the Court finds that sealing of these records is warranted because they contain numerous documents concerning the sensitive and private medical treatment of A.D., a minor, including a multitude of documents with A.D.'s full name and other identifying information. The Court finds that Plaintiff's and A.D.'s privacy interests in these materials outweigh the right of public access and therefore grants the motion to seal.

Moreover, the Second Circuit has held that "a district court may decide a case by summary bench trial upon stipulation of the parties as long as the parties have willingly forgone their right to a full trial." *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 142-43 (2d Cir. 1998). While "there is no right to a jury trial under ERISA," *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003), these proceedings must first step past summary judgment prior to proceeding under Rule 52, for two reasons. First, summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. If Defendant is correct that it is entitled to judgment based on the law and the undisputed facts in the record, the Court's role as a fact-finder under Rule 52 is unnecessary. Second, it must be clear to the parties that the Court is proceeding under Rule 52 before the Court can engage in fact-finding.

In urging review under Rule 52, Plaintiff appeals to *Muller v. First Unum Life Insurance Company*, 341 F.3d 119 (2d Cir. 2003). *See* Pl. Motion at 16; Pl. Reply at 3. *Muller* is procedurally distinct in two respects. First, that case concerned a "motion for judgment on the administrative record," which is not a motion authorized by the Federal Rules of Civil Procedure, and the Second Circuit was faced with how to best understand the district court's subsequent actions. *Id.* at 124. Second, the procedural history of that case indicated that the district court had already adjudicated summary judgment motions and found disputes of material fact. *Id.* As a result, the Second Circuit stated that "[a]lthough it may be appropriate to treat such a motion as a motion for summary judgment in some cases, it does not make sense in this case," and therefore evaluated the motion under Rule 52. *Id.* That reasoning does not extend to the circumstances here, where Defendant is arguing that it is entitled to judgment as a matter of law based on an undisputed administrative

3

record.[4] Summary judgment is the appropriate mechanism to test such contentions. If the Court determines that genuine issues of material fact persist which preclude summary judgment, only then would *Muller* indicate that the parties could proceed under Rule 52. Accordingly, the Court adjudicates the parties' motions as cross-motions for summary judgment.

The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In conducting this review, the Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party." *Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'" *Chen*, 2019 WL 1244291, at *4 (quoting

---

[4] Plaintiff contends that "[t]here are genuine issues of material fact in dispute, such as whether Aetna could provide an in-network residential facility appropriate for A.D." Pl. Reply at 4. But this statement implicates the issue of who decides whether adequate in-network facilities existed. As explained *infra*, the Court reviews the decision to deny benefits for abuse of discretion and therefore so long as substantial evidence exists to support Aetna's conclusion in this respect, there is no factual issue that would preclude summary judgment.

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). The non-movant must present more than a "scintilla of evidence" to survive summary judgment. *Anderson*, 477 U.S. at 252. "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks omitted).

The Court "need not enter judgment for either party" when cross-motions for summary judgment are filed. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Generally, the Court evaluates each cross-motion independently of the other, considering the facts in the light most favorable to the non-moving party. *Id.* "But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Vill. of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

The parties next disagree on whether the denial of benefits should be reviewed *de novo* or for abuse of discretion. *Compare* Pl. Motion at 17-19, *with* Deft. Motion at 8-12. The Court need not resolve this issue. Even assuming Defendant is correct that abuse of discretion review applies,[5]

---

[5] Whether Defendant is correct in this regard is difficult to determine, as the Summary Plan Description ("SPD") provided to the Court refers to an unknown "Plan document," DGIP 1655, the terms of which govern coverage here. While Defendant indicates that the SPD "is the comprehensive plan document, comprising the plan and the SPD, and setting forth its terms," Deft. Motion at 9, the text of the SPD provides:

> This summary provides general information about the Plan, who is eligible to receive benefits under the Plan, what those benefits are, and how to obtain benefits. It does not cover all provisions, limitations, and exclusions. No general explanation can adequately give you all the details of the Plan. This general explanation does not change, expand, or otherwise interpret the terms of the Plan. If there is any

summary judgment in favor of Plaintiff remains warranted. "Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (internal quotation marks omitted).

Here, the denial of benefits was arbitrary and capricious because it was "without reason," and the Court remands for a new review by Aetna to adequately articulate its determination. Plaintiff's administrative appeals centered on "the denial of a single case agreement and authorization for ongoing medically necessary mental health residential treatment, at the Sandhill Center in Las Lunas, N[ew] M[exico]." DGIP 21; *see* DGIP 27 ("We respectfully request that you reverse your prior decision, approve a single case agreement with Sandhill Center, and authorize services."); *see also* DGIP 881, 890. Yet, benefits for A.D.'s residential treatment at Sandhill were denied on appeal only on the basis that the Plan "does not cover out of network benefits." DGIP 871 (first appeal denial)[6]; *see* DGIP 1149 (second appeal denial) ("[W]e conclude[] that we are unable to allow benefits because the plan does not cover services performed by out-of-network

---

> conflict between the information presented here, or any written or oral communication by an individual representing the Plan, and the Plan document, the terms of the Plan document as interpreted in the sole discretion of the Plan Administrator will govern and will determine the rights and benefits to which you will be entitled under the Plan.

DGIP 1655. This appears to indicate that the Plan Administrator has some level of discretion over the Plan. As it will not alter the disposition of this matter, the Court assumes that abuse of discretion review applies.

[6] In the first appeal letter, Aetna explained that it was "responding to the appeal of our decision on . . . [t]he denial of a single case agreement and authorization for ongoing mental health residential treatment." DGIP 870. Yet in announcing its decision to "stand[] by" that earlier decision, Aetna explained only that it "concluded that we are unable to reverse our previous benefit decision because your plan does not cover out of network benefits." DGIP 871.

providers. Sandhill Center, LLC is not a network provider and there is no out-of-network coverage with the member's open access Aetna select medical plan.").[7]

The factual statements in these appeal denials were technically correct. It is undisputed that the Plan explicitly does not cover care at out-of-network providers and that Sandhill was an out-of-network provider. *See* DGIP 1663 ("Out-of-Network care is not a covered expense in this Plan."). If those were the only issues, this would be a relatively straightforward case. The problem is that Plaintiff's claim was not simply a request for reimbursement for care at an out-of-network provider. Rather, Plaintiff asked Aetna to "approve a single case agreement with Sandhill Center," *i.e.*, to afford him an exception from the Plan's general prohibition on out-of-network care. The Plan provides for such an exception, *see* DGIP 1667-1668 (discussing procedures for the receipt of "Covered Health Services from an Out-of-Network provider"), and Plaintiff's argument for why Aetna should have approved such exception-based coverage was twofold. First, Plaintiff maintained that the Plan's in-network options were inadequate. *See, e.g.*, DGIP 885-888. Second, in Plaintiff's view, Sandhill qualified for a single case agreement and Aetna considered inappropriate criteria in making its decision. *See* DGIP 888-890.

Aetna's denials did not address either issue, nor is it apparent that Aetna even considered during the administrative appeals process whether Sandhill, notwithstanding its out-of-network status, should be provided a single case agreement and therefore Plaintiff should be afforded exception-based coverage. Rather, Aetna's denials on appeal stated perfunctorily that Sandhill was not covered because it was an out-of-network provider. DGIP 871; DGIP 1149; *see* DGIP 12 (denying coverage initially on the grounds that residential treatment at Sandhill "is not a covered

---

[7] Aetna's letter denying the second appeal stated that it was "responding to the appeal of our decision about . . . [t]he precertification denial for ongoing mental health residential treatment center." DCIP1148.

7

service under the terms of the plan"). But that did not respond to Plaintiff's point that an exception to the general rule should apply in his case. Even construing Aetna's denials to have necessarily included a rejection of exception-based care, what criteria Aetna used in reaching that decision and how they applied those criteria to Sandhill during the appeals are not apparent from the record—an issue which severely hampers this Court's ability to review whether the denial of benefits was supported by substantial evidence.[8] It is not clear to the Court, for example, that the utilization review process described in the Plan, *see* DGIP 1668, was employed during the appeals or what criteria the reviewers utilized to determine whether to authorize a single case agreement.

> This violates ERISA. Under ERISA, an employee benefits plan administrator must:
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133; *accord Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 735 (S.D.N.Y. 2018); *see* 29 C.F.R. § 2560.503-1(g). The Second Circuit has explained that this notice requirement has two purposes. "First, notice can provide the member with information necessary for him or her to know what he or she must do to obtain the benefit. Second . . . notice can enable the member effectively to protest [a denial] decision." *Juliano v. Health Maintenance Org. of N.J., Inc.*, 221 F.3d 279, 287 (2d Cir. 2000). Therefore, to provide a beneficiary with "full and fair

---

[8] Defendant's reliance on *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 628-29 (2d Cir. 2008), is misplaced. The issue at present is not whether the denial of exception-based coverage was appropriate, but rather concerns Plaintiff's "procedural rights" as a beneficiary. *Id.* at 630. Given the lack of explanation by Aetna and the opacity of the criteria it used to determine whether a single case agreement for Sandhill was appropriate, the Court cannot conclude that remand is "futile." *Id.*

review" under ERISA, a plan administrator's written notice of denial "must be comprehensible and provide the claimant with the information necessary to perfect h[is] claim." *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107-09 (2d Cir. 2003). The ultimate goal is to "facilitate 'meaningful dialogues between plan administrators and plan members,' and permit effective review." *Munnelly*, 316 F. Supp. 3d at 736 (quoting *Juliano*, 221 F.3d at 288).

Courts therefore have found that plan administrators do not comply with these notice requirements when they "fail[] to explain the specific reasons for the benefit denial." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 87 (2d Cir. 2009) (collecting cases). But unlike a case like *Hobson*, where the denial letter detailed what the beneficiary's case was lacking that would have affected the administrator's calculus, *see id.*, the appeal denial letters here gave only the barest explanation which—while technically accurate in that Sandhill was out-of-network—did not engage with Plaintiff's actual claim seeking a single case agreement. Aetna's failure to provide adequate notice here is further suggested by the fact that "much of the information Plaintiff submitted with his first-level and second-level appeals was duplicative," Deft. Motion at 24, evidencing that Plaintiff was unable to "perfect [his] claim" and was not "fairly apprised of how [he] could prepare adequately for subsequent appeals of earlier benefit denials," *Hobson*, 574 F.3d at 88.

This is not to say that the appeal denial letters here should have been "meaningless catalogs of every conceivable reason that the cost in question might not be reimbursable, instead of candid statements as to why the administrator framing the notice thinks reimbursement is unwarranted." *Juliano*, 221 F.3d at 288. But where, as here, a plan administrator has not even attempted to grapple with the beneficiary's argument that an exception should apply when basing the denial of

9

coverage on the general rule, the denial letter itself falls short of satisfying ERISA's notice requirements.

Defendant brushes off the facially inadequate appeal denial notices by pointing the Court instead to the context of the parties' relationship as evidenced through the "entire administrative record." Dkt. 42 ("Deft. Reply") at 7.  Yet the cases Defendant points to in urging the Court to look beyond the "four corners of denial letters," *id.*, do not go quite as far as suggested.  For example, the court in *Wedge v. Shawmut Design & Construction Group Long Term Disability Insurance Plan*, 23 F. Supp. 3d 320 (S.D.N.Y. 2014), did state that courts "will review the administrative record in its entirety when determining whether an administrator's decision was arbitrary or capricious." *Id.* at 337-38.  But this statement followed the defendant insurance plan's contention that the court "should not separately examine the original claim decision and final decision on appeal," as the plaintiff suggested, and the court concluded that it could consider both the administrator's initial and final decision to determine if the administrator's denial was arbitrary and capricious.  *Id.*

Defendant's other cited cases similarly do not suggest that a plan administrator can make up for blatant deficiencies in its denial letters by pointing to other communications in the administrative record which may or may not have served as the actual basis for denial upon review. *See Martin v. Haverford Life & Acc. Ins. Co.*, 478 F. App'x 695, 698 (2d Cir. 2012) (summary order) (using the interpretations offered in denial letters to hold that the different rationale offered upon judicial appeal violated ERISA's notice provisions); *Munnelly*, 316 F. Supp. 3d at 739 (recounting the administrator's statements in various denial letters).  Indeed, *Munnelly*'s statement that "courts commonly review the entirety of communications between a beneficiary and a plan administrator in assessing whether an administrator substantially complied with ERISA's notice

requirements," is immediately followed by citations to courts analyzing initial and final denial letters, not the administrative record writ large. 316 F. Supp. 3d at 739-40. Analyzing the content of those letters for compliance with ERISA's notice provision makes sense, as such notice must be "in writing" and "set[] forth the specific reasons for denial." 29 U.S.C. § 1133. Consideration of a plan administrator's other communications with a claimant, however, would be disjoined from the statutory framework.

Moreover, relying on the larger administrative record to fill in what the denial letters omit raises a severe risk that a beneficiary would "be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Juliano*, 221 F.3d at 287. Indeed, a court would be unable to determine if the administrator was offering "a different rationale for its denial of [the beneficiary's] claim after the completion of the claim's administrative review," particularly when an administrative record can contain many alternative bases for denial. *Martin*, 478 F. App'x at 698. So while Defendant gestures to communications between Aetna's representatives and Plaintiff concerning the "application of legitimate qualification criteria for out-of-network RTC exception-based coverage requests," Deft. Reply at 8, these communications cannot by themselves cure the deficient notice provided in the appeal denial letters. These communications also occurred prior to the administrative appeals process and therefore cannot be known to have been the basis for denial of a single case agreement after Plaintiff's appeals (nor are they even referenced in the appeal denial letters). *See* DGIP 1772-73; DGIP 1785; DGIP 1790; DGIP 1816-17. And while Defendant's briefing identifies other possible bases for the denial, like the content of A.D.'s doctors' recommendations, *see* Deft. Reply at 5, the Court can only speculate whether these were the reasons that Aetna considered in its decision to deny benefits.

In short, Aetna's "decision to deny benefits to [Plaintiff] was arbitrary and capricious in that it was rendered, in effect, 'without reason.'" *Pastore v. Witco Corp. Severance Plan*, 196 F. App'x 18, 21 (2d Cir. 2006) (summary order). "The question was whether [Sandhill should be granted a single case agreement]. [Aetna] did not address this question; instead it stated in a conclusory fashion that [Sandhill was 'out of network']. This explanation was insufficient." *Id.* The appropriate relief in such a situation is to remand this case for further administrative review. *See Krauss*, 517 F.3d at 630 ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review."); *Pastore*, 196 F. App'x at 21 ("When a plan administrator fails to provide an adequate reasoning, the proper remedy in an ERISA case is to remand for further findings or explanations, unless it is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." (internal quotation marks omitted)).

For these reasons, Defendant's motion for summary judgment is denied and Plaintiff's cross-motion is granted in part. This case is remanded to Aetna for a new review and with instructions to specifically address in any decision whether Sandhill should be granted a single case agreement, including consideration of Plaintiff's arguments concerning the adequacy of in-network offerings. As an order remanding an ERISA case to the claims administrator is a non-final order, *see Giraldo v. Building Serv. 32B-J Pension Fund*, 502 F.3d 200, 202-03 (2d Cir. 2007), the Court will retain jurisdiction over this case but stay this matter pending remand. *See Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 113 (2d Cir. 2014) ("We thus adopt the rule that a district court's ERISA remand order will generally be interpreted as having retained jurisdiction over the case such that either party may seek to reopen the district court proceeding and obtain a final judgment."). The parties shall notify the Court by letter within two weeks of the completion

12

of the new review.  The Clerk of Court is respectfully directed to close the motions pending at

Docket Numbers 33, 34, 36, and 37.  The Clerk of Court is further directed to stay this case.

    SO ORDERED.

Dated: February 24, 2025
       New York, New York

                                                  JOHN P. CRONAN
                                      United States District Judge