UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Doe,

                    Plaintiff,

          v.

Deloitte LLP Group Insurance Plan,

                   Defendant.

Civil Action No. 1:23-cv-04743-JPC

**DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Judge John P. Cronan**

**TABLE OF CONTENTS**

SUMMARY OF THE FACTS ................................................................................1

PROCEDURAL HISTORY ................................................................................3

RULE 56 SUMMARY JUDGMENT STANDARD ................................................5

ARGUMENT ................................................................................6

I.     AETNA'S POST-REMAND DENIAL OF PLAINTIFF'S BENEFITS CLAIM IS SUBJECT TO THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW......6

       A.     The Plan is The Determinative Document Controlling this Dispute. .....................7

       B.     The Plan Grants Discretionary Authority to Aetna, Warranting the Arbitrary and Capricious Standard of Review. ..................................................................10

II.    AETNA SATISFIED ERISA'S NOTICE AND FULL AND FAIR REVIEW STANDARDS.........................................................................................11

       A.     Aetna Provided a Full and Fair Review of Plaintiff's Arguments That A Network Deficiency Required a Single Case Agreement Because None of the In-Network Facilities Purportedly Were Appropriate for A.D.'s Care. ...................................13

              1.     Meridell ............................................................................. 15

              2.     Oak Plains Academy........................................................... 15

              3.     San Marcos Treatment Center ............................................ 16

              4.     Center for Discovery........................................................... 17

       B.     Aetna Provided a Full and Fair Review of Plaintiff's Plan-Based Argument That Coverage For Sandhill Should Be Provided Under a Single Case Agreement......17

III.   AETNA'S FINAL CLAIM DETERMINATION ON REMAND WAS NOT ARBITRARY AND CAPRICOUS AND MUST BE UPHELD......................................19

       A.     Aetna's Determination is Supported by Substantial Evidence, Including Plan Language.......................................................................................20

       B.     Plaintiff's Arguments Enlisting Inapplicable Federal and State Insurance Laws and Based On a Prior Single Case Agreement Approved for A.D. Are Unavailing. ...23

              1.     Plaintiff's Insurance Law Arguments Are Not Applicable........................23

      2.     A Prior Single Case Agreement for Episodic Outpatient Therapy Does Not Support a Single Case Agreement for an Out-of-Network RTC Facility..25

IV.    EVEN UNDER A DE NOVO STANDARD, DENIAL OF PLAINTIFF'S BENEFIT CLAIM ON APPEAL IN REMAND MUST BE UPHELD. ............................................26

CONCLUSION...................................................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986) ............................................................................... 5

*Anonymous Oxford Health Plan Member With Id No. 6023604\*01 v. Oxford Health Plans (N.Y.), Inc.*,
No. 08CIV.943PAC, 2009 WL 667237 (S.D.N.Y. Mar. 16, 2009) .................................. 20, 21

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822, 834 (2003) ............................................................................... 13

*Celardo v. GNY Auto. Dealers Health & Welfare Tr.*,
318 F.3d 142, 146 (2d Cir. 2003) ..................................................................... 19

*Conkright v. Frommert*,
559 U.S. 506, 507 (2010) ............................................................................... 7

*Coram Healthcare Corp. v. Wal-Mart Stores, Inc.*,
238 F. Supp. 2d 586, 589-90 (S.D.N.Y. 2002) ................................................... 8, 10

*Curran v. Aetna Life Ins. Co.*,
No. 7:2013cv00289, 2016 WL 3843085 (S.D.N.Y. July 11, 2016) .......................... 21

*DeCesare v. Aetna Life Ins. Co.*,
95 F. Supp. 3d 458, 481 (S.D.N.Y. 2015) ...................................................... 10, 12

*DeFrancis v. MVP Health Plan, Inc.*,
No. 05CIV7086CMGAY, 2005 WL 8179331 (S.D.N.Y. Nov. 1, 2005) ................... 21

*Demirovic v. Bldg. Serv. 32 B–J Pension Fund*,
467 F.3d 208, 212 (2d Cir. 2006) ..................................................................... 12

*Feifer v. Prudential Ins. Co. of Am.*,
306 F.3d 1202, 1209 (2d Cir. 2002) ........................................................ 7, 8, 9, 10

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101, 115 (1989) ..................................................................... 6, 7, 10, 26

*Grimo v. Blue Cross/Blue Shield of Vt.*,
34 F.3d 148, 151 (2d Cir.1994) ......................................................................... 7

*Halberg v. United Behav. Health*,
408 F. Supp. 3d 118, 124-25, 137-38 (E.D.N.Y. 2019) ...................................... 8, 9

*Hobson v. Metropolitan Life Ins. Co.*,
  574 F.3d 75 (2d Cir. 2009) ................................................................................ 12, 19

*Hughes v. Hartford Life & Accident Ins. Co.*,
  No. 3:19-CV-01611 (JAM), 2021 WL 1165430 (D. Conn. Mar. 25, 2021) ............................ 7

*Krauss v. Oxford Health Plans, Inc.*,
  517 F.3d 614, 622 (2d Cir. 2008) ................................................................... 6, 10, 21

*Kruk v. Metro. Life Ins. Co.*,
  567 F. App'x 17, 19 (2d Cir. 2014) ............................................................................. 6

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574, 586 (1986) ........................................................................................... 5

*N. Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*,
  No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) ......................... 24, 25

*Northwell Health Inc. v. Lamis*,
  No. 18CV1178, 2019 WL 4688704 (S.D.N.Y. Sept. 25, 2019) ...................................... 9

*Pagan v. NYNEX Pension Plan*,
  52 F.3d 438, 442 (2d Cir.1995) ................................................................................ 19

*Redstone v. Empire Healthchoice HMO, Inc.*,
  No. 23-CV-2077 (VEC), 2024 WL 967416 (S.D.N.Y. Mar. 5, 2024) .............................. 21

*Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*,
  858 F.3d 340, 346-47 (5th Cir. 2017) ...................................................................... 8, 9

*Schanfield v. Sojitz Corp. of Am.*,
  663 F. Supp. 2d 305, 328 (S.D.N.Y. 2009) ................................................................ 5

*Scotto v. Almenas*,
  143 F.3d 105, 114 (2d Cir. 1998) ............................................................................ 5

*Wise v. Plan Adm'r, IBM Ben. Plan for Ret. Emps.*,
  No. 3:13-cv-1591(JBA), 2014 WL 3849975 (D. Conn. Aug. 15, 2014) ......................... 9

## Statutes

29 U.S.C. § 1132(a)(1)(B) ........................................................................................ 6
29 U.S.C. § 1133 ....................................................................................................... 12

**Other Authorities**

FED. R. CIV. P. 56(c) .................................................................................................... 5

The question presented in this case is straightforward: was Plaintiff's health insurance benefit claim properly denied when that claim was for out-of-network care, the benefit plan expressly does not cover out-of-network care expenses, and there was no basis for an exception? For the reasons discussed below, the answer to that question is yes.

## SUMMARY OF THE FACTS

The Deloitte LLP Group Insurance Plan ("Defendant") is the legal entity through which Deloitte LLP provides health and welfare benefits to eligible employees and their dependents. (Defendant Deloitte LLP Group Insurance Plan's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("56.1") at ¶ 2.) One of the plans through which Defendant offers those benefits is the Aetna Open Access Select EPO Plan (the "Plan"). (56.1 ¶ 3.) Aetna Life Insurance Company ("Aetna") is the Plan's Claims Administrator. (56.1 ¶ 6.) The Plan grants discretionary authority to Aetna to construe and interpret the Plan's terms and determine Plan participants' benefits claims. (56.1 ¶ 8.)

The Plan plainly and unambiguously states – indeed, in emphasized, underlined text – that expenses for care provided by out-of-network providers are not covered. (56.1 ¶ 16: "Out-of-Network care is not a covered expense in this Plan") (emphasis in original). If a Plan participant nonetheless elects to receive out-of-network care, the Plan states the participant may request exception-based coverage through a prior authorization, which entails an Aetna utilization review process. (56.1 ¶¶ 24-25.) Aetna uses its own techniques and programs to evaluate the clinical necessity, appropriateness, efficacy, or efficiency of the out-of-network provider. (56.1 ¶ 26.)

Plaintiff is a Plan participant. (56.1 ¶ 10.) Plaintiff's dependent son, A.D., is a beneficiary eligible for medical benefits under the Plan. (56.1 ¶ 11.) In 2022, A.D. was a ten-year-old boy presenting with significant and complex mental health issues, culminating in his admission to

Huntsman Mental Health Institute ("Huntsman") on or around September 6, 2022. (56.1 ¶¶ 27-30.) When Huntsman and Plaintiff began coordinating A.D.'s post-hospitalization care plans with Aetna, Aetna did not dispute that A.D.'s continuing care at a residential treatment center ("RTC") was medically necessary. (56.1 ¶¶ 31-34.) Aetna's Care Advocate – the liaison between Plaintiff and Aetna – provided Plaintiff with multiple suitable and available in-network RTC facilities for A.D.'s admission. (56.1 ¶¶ 35-36; 47; 49; 57.) Plaintiff, however, rejected each of these in-network RTC options and instead arranged for A.D.'s admission into Sandhill, an out-of-network RTC, despite being repeatedly advised by Aetna that expenses incurred by Plaintiff for A.D.'s treatment at Sandhill would not be covered under the terms of the Plan, including with consideration of a requested single case agreement for out-of-network providers. (56.1, ¶¶ 40-41; 48; 59-60.)

Plaintiff nonetheless submitted a benefit claim to Aetna for payment of Sandhill expenses for a six month period between October 2022 and April 2023 (56.1, ¶ 61.) Aetna denied that claim and thereafter maintained its position through the administrative review process initiated and pursued by Plaintiff. (56.1 ¶¶ 60-80.) After exhausting all appeals under that process, Plaintiff sued Defendant, alleging Aetna's denial of Plaintiff's claim for benefits violated Section 1132(a)(1)(B) of ERISA. (56.1 ¶¶ 85-87; Doc. 1)

Following briefing on the parties' cross-motions for judgment/summary judgment, on February 24, 2025, the Court issued an Order remanding Plaintiff's benefits claim to Aetna to address in its decision whether Plaintiff's claim for Sandhill expenses should be approved, notwithstanding Sandhill's status as an out-of-network provider and the Plan's exclusion of coverage for out-of-network providers, on a single case agreement basis. (56.1 ¶¶ 88-95; Doc. 44; the "Order".) Aetna complied with the Court's Order and reached a final determination on November 11, 2025, denying Plaintiff's benefit claim. (56.1 ¶ 113.)

Aetna's November 11, 2025 claim denial determination is thorough, detailed, well-reasoned, and reflects its full and fair consideration of all of Plaintiff's arguments made throughout the administrative appeal process. (56.1 ¶¶113-144.) More specifically, that determination directly complied with the Court's instructions in the Order, evaluating Plaintiff's request for coverage for Sandhill on a single case agreement basis, but concluding that exception-based coverage on a single case agreement basis was not warranted or appropriate under the Plan because there was no deficiency in Aetna's RTC network, as multiple clinically appropriate and available in-network RTC options were presented to (but rejected by) Plaintiff. (56.1 ¶¶ 118-136.) Aetna's November 11, 2025 determination additionally concluded that even if a network deficiency existed, Sandhill nonetheless could not be approved on a single case agreement basis due to its not meeting Aetna's legitimate utilization review criteria. (56.1 ¶¶ 137-142.)

The Administrative Record reflects that Aetna conducted a full and fair review of Plaintiff's benefit claim, and that its denial determination was reasonable and supported by substantial evidence. As denial was neither arbitrary nor capricious under the terms of the Plan, it must be upheld. Defendant therefore respectfully requests that the Court grant it summary judgment on Plaintiff's claim.

## <u>PROCEDURAL HISTORY</u>

On June 6, 2023, Plaintiff filed a Complaint alleging a single cause of action for denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). (Doc. 1 at ¶¶ 27-34.) On April 5, 2024, Plaintiff submitted a Rule 52 Motion for Judgment (56.1 ¶ 88; Doc. 33). On May 3, 2024, Defendant submitted a Rule 56 Motion for Summary Judgment and Opposition to Plaintiff's Rule 52 Motion (56.1 ¶ 88; Doc. 36). After full briefing, on February 24, 2025, the Court issued the Order remanding Plaintiff's claim for benefits to Aetna "for a new review and with instructions to

specifically address in any decision whether Sandhill should be granted a single case agreement, including consideration of Plaintiff's arguments concerning the adequacy of in-network offerings." (56.1 ¶¶ 90-95; Docs. 41; 42; 44.)

On May 1, 2025, Aetna issued its determination following the Court's Order (the "May 1, 2025 Determination"), in which it upheld its earlier denial of coverage. (56.1 ¶¶ 99-104.) Plaintiff sought an administrative appeal to Aetna's May 1, 2025 Determination, which Defendant consented to without waiving its position that neither the Plan nor ERISA provided for any further appeal. (56.1 ¶¶ 105-107; Docs. 49; 50.) On August 13, 2025, Plaintiff submitted an appeal to Aetna's May 1, 2025 Determination (the "August 13, 2025 Appeal"). (56.1 ¶¶ 108-112.) On November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 Appeal (the "November 11, 2025 Determination"). (56.1 ¶ 113.) Aetna's November 11, 2025 Determination was made by a licensed, board certified child and adolescent psychiatrist who was not previously involved in any prior Aetna determinations with respect to A.D.'s treatment or Plaintiff's claim for benefits related thereto, including Plaintiff's prior appeals (the "Appeal Reviewer") (56.1 ¶ 114.) The Appeal Reviewer determined, as reflected in the November 11, 2025 Determination, that the denial of coverage for Sandhill must be upheld. (56.1 ¶ 115-117; 144.)

The parties notified the Court on November 18, 2025 that the appeals process was complete. (Doc. 51.) The Court thereafter lifted the stay in this matter and ordered the parties to file a joint letter advising the Court of the disposition of Plaintiff's administrative appeal and how the parties wished to proceed. (Doc. 52.) On November 24, 2025, the parties advised the Court of the disposition and requested that each party be permitted to file a motion for summary judgment, limited to the issues of (1) standard of review; (2) Aetna's post-remand review and determination; and (3) whether the benefits denial determination should be upheld. (Doc. 53.) On November 26,

2026, the Court issued a Minute Entry setting a briefing scheduling for the parties' cross-motions

for summary judgment (Nov. 26, 2026 Minute Entry (text-only entry, no ECF document number).)

## RULE 56 SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no "genuine issue of material fact" and

the undisputed facts warrant judgment for the moving party as a matter of law. FED. R. CIV. P.

56(c). In addressing a motion for summary judgment, the court must view the evidence "in the

light most favorable to the party against whom summary judgment is sought and must draw all

reasonable inferences in its favor." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 328

(S.D.N.Y. 2009) (citation omitted). The party moving for summary judgment bears the initial

burden of demonstrating the absence of a disputed issue of material fact. *Id.* The burden then shifts

to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial."

*Id.* (quoting FED. R. CIV. P. 56(e).

The party opposing summary judgment cannot rely on "conclusory allegations or

unsubstantiated speculation" to defeat summary judgment. *Id.* (quoting *Scotto v. Almenas*, 143

F.3d 105, 114 (2d Cir. 1998)). Moreover, a nonmoving party's establishment of a disputed fact

cannot defeat summary judgment unless it is "material in light of the substantive law that governs

the case." *Id.* ("Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.") (quoting *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Finally, the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In other words,

the nonmoving party must establish sufficient evidence such that "a reasonable jury could return

a verdict for the nonmovant." *Id.*

## ARGUMENT

I.    **AETNA'S POST-REMAND DENIAL OF PLAINTIFF'S BENEFITS CLAIM IS SUBJECT TO THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW.**

ERISA permits participants of an ERISA-governed benefits plan to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Courts review a denial of benefits challenged under Section 1132(a)(1)(B) using either a *de novo* or a more deferential arbitrary and capricious standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Courts must apply the arbitrary and capricious standard of review when the benefits plan document grants the claims administrator—the entity responsible for making the determination denying plan benefits to the participant—discretionary authority to determine benefit eligibility or construe the terms of the plan. *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008).

The standard of review does not change when a court is in the posture of reviewing a benefits determination post-remand, after an initial determination was found to have been arbitrary and capricious. *Kruk v. Metro. Life Ins. Co.*, 567 F. App'x 17, 19 (2d Cir. 2014). In *Kruk*, the district court initially found the plan's denial of benefits arbitrary and capricious and remanded the claim to the plan administrator, and the plan administrator again denied the plaintiff's benefit claim. *Kruk*, 567 F. App'x at 19. The plaintiff argued that court should apply a *de novo* standard or review to the post-remand denial because the court had previously found the initial denial improper under an arbitrary and capricious standard, and the court's second review warranted less deference to the administrator's determination. *Id.* The Second Circuit however expressly rejected that argument, finding the standard of review remains the arbitrary and capricious standard post-remand. *Id.* ("[The plaintiff] argues that judicial review of MetLife's challenged decision here should be *de novo* in light of a prior vacatur of MetLife's initial denial of benefits as arbitrary and

capricious. We reject this argument…") (internal citation omitted); *see also Conkright v. Frommert*, 559 U.S. 506, 507 (2010) (finding the deferential standard of review applied post-remand, holding the Second Circuit's then-"one-strike-and-you're-out" approach in removing deference to the plan administrator's interpretation of plan terms post-remand "has no basis in *Firestone*"); *Hughes v. Hartford Life & Accident Ins. Co.*, No. 3:19-CV-01611 (JAM), 2021 WL 1165430, at *6 (D. Conn. Mar. 25, 2021) ("Hughes argues that *de novo* review must apply because of my prior ruling that Hartford failed to conduct a full and fair review during the course of the first administrative appeal. But the Supreme Court's decision in *Conkright v. Frommert*, 559 U.S. 506 (2010) forecloses this argument.").

Addressed in detail below, the Plan grants discretionary authority to Aetna as the Claims Administrator to make eligibility determinations and to construe the terms of the Plan. An arbitrary and capricious standard of review is proper.

## A.    The Plan is The Determinative Document Controlling this Dispute.

The Plan (56.1 ¶ 4; DGIP001651-1757) is the determinative document controlling this dispute. The Plan's language granting discretionary authority to Aetna as the Claims Administrator requires application of the arbitrary and capricious standard of review.

An ERISA plan is "established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002) (quoting *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir.1994)).

A plan document's generic disclaimer that it is only a "summary . . . not intended to cover all details of the Plan" and that "the actual provisions of the Plan will govern in settling any questions that may arise" does not impact the terms established in the available plan document or

otherwise impact the standard of review. *Feifer*, 306 F.3d at 1209; *see also Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 346-47 (5th Cir. 2017) ("The Plan's SPD references an 'official Plan Document' that does not exist. . . . As the [magistrate judge] observed, including the disclaimer in the [summary plan description] was 'sloppy,' but the disclaimer does not render the Plan's terms unenforceable."). In *Feifer*, the court considered a "Program Summary" and accompanying memorandum as the critical plan documents because those documents established in writing the arrangement to provide employee benefits, even though the Program Summary contained the following disclaimer: "This summary is for informational purposes only and is not intended to cover all details of the Plan. The actual provisions of the Plan will govern in settling any questions that may arise." *Id.* at 1205-1210. The court specifically considered and rejected the argument that the disclaimer rendered the Program Summary terms ineffective and non-binding because the referenced "provisions of the Plan" did not exist or were not provided. *Id.* In reviewing the administrative record, the court determined the Program Summary and accompanying memorandum were the only plan documents available for the time period relevant to the employees' benefit claims, and therefore the terms stated in the Program Summary governed the dispute. *Id.* at 1209-1210. The general reference to other controlling plan documents (which were for practical purposes unavailable or nonexistent) did not change the court's conclusion. *Id.*

Second Circuit courts routinely accept "summary" documents such as the Plan as the determinative plan document for purposes of determining the applicable standard of review. *Feifer, supra; Coram Healthcare Corp. v. Wal-Mart Stores, Inc.*, 238 F. Supp. 2d 586, 589-90 (S.D.N.Y. 2002) (determining arbitrary and capricious standard of review applied based solely on discretionary authority language contained in a summary plan description ("SPD"), with the SPD as the operative plan document); *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 124-25,

137-38 (E.D.N.Y. 2019) (same); *see also Northwell Health Inc. v. Lamis*, No. 18CV1178, 2019 WL 4688704, at *5 (S.D.N.Y. Sept. 25, 2019) (explaining courts routinely hold that a single plan document labeled an "SPD" can function as both an SPD and written plan instrument) (citing *Rhea, supra* at 344, n. 3, *Wise v. Plan Adm'r, IBM Ben. Plan for Ret. Emps.*, No. 3:13-cv-1591(JBA), 2014 WL 3849975, at *4 (D. Conn. Aug. 15, 2014)). Thus, under settled law, an ERISA plan's description as a "summary" or "SPD" in no way impacts such document's binding status as an ERISA plan or language therein granting discretionary authority to a claims administrator.

Here, the Plan is described as an ERISA "Summary Plan Description" representing the benefit plan, and it explains in detail the medical benefit options, coverages, and claims administration procedures. (56.1, ¶¶ 4-5.) The Plan contains a generic disclaimer substantially similar to the plan language reviewed in *Feifer*:

> This summary represents the Aetna Open Access Select EPO medical benefit option, herein 'the Plan' . . . This summary provides general information about the Plan, who is eligible to receive benefits under the Plan, what those benefits are, and how to obtain benefits.  It does not cover all provisions, limitations, and exclusions.  No general explanation can adequately give you all the details of the Plan. This general explanation does not change, expand, or otherwise interpret the terms of the Plan. If there is any conflict between the information presented here, or any written or oral communication by an individual representing the Plan, and the Plan document, the terms of the Plan document as interpreted in the sole discretion of the Plan Administrator will govern and will determine the rights and benefits to which you will be entitled under the Plan.

(56.1 ¶ 5; DGIP001655.) As in *Feifer*, the Plan is the only plan document describing the benefits program controlling Plaintiff's claim, even though the Plan contains a generic disclaimer stating that it is a non-exhaustive summary. (*Id.*) As the Second Circuit ruled in *Feifer*, the Plan's terms control, and reference to unavailable or nonexistent additional plan documents does not limit

or nullify the Plan's terms. *Feifer*, 306 F.3d at 1208-1210.  As such, the Plan is the appropriate "instrument" through which discretion in its administration.

### B.    The Plan Grants Discretionary Authority to Aetna, Warranting the Arbitrary and Capricious Standard of Review.

Under well-settled law, a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard of review when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan**.**" *Krauss*, 517 F.3d at 622 (quoting *Firestone*, 489 U.S. at 115). The grant of discretion in the plan document need not contain any specific words, only that it convey that the entity designated to review and administer benefit claims has authority to do so. *Id.* (noting example plan document language providing authorization to "resolve all disputes and ambiguities," "make benefit determinations 'in our judgment,'" or "adopt reasonable policies, procedures, rules, and interpretation to promote the orderly and efficient administration of [the plan]" as adequately granting discretionary authority).

A plan that gives the designated claims administrator discretionary authority to resolve "questions concerning the administration, interpretation, or application of the Plan" grants that claims administrator sufficient discretionary authority to warrant review under an arbitrary and capricious standard as a matter of law. *Coram*, 238 F. Supp. 2d at 589; *see also DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 481 (S.D.N.Y. 2015) (ruling arbitrary and capricious standard of review applied based on plan language granting Aetna "discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the plan).

Here, the Plan is a valid plan document that expressly and adequately grants discretionary authority to Aetna, as Claims Administrator, to determine eligibility for benefits and construe the terms of the Plan. The Plan states that Deloitte LLP is the "Plan Sponsor" and that Aetna is the

-10-

"Claims Administrator" (56.1 ¶¶ 6-7.) Most critically, the Plan expressly states Aetna has the discretion to "interpret [b]enefits under the Plan," "interpret the other terms, conditions, limitations, and exclusions listed in the Plan," and "make factual determinations related to the Plan and its [b]enefits." (56.1 ¶ 8.) The Plan additionally provides that Aetna is responsible for prior authorization determinations – necessary for coverage of any RTC care, and any discretionary consideration of out-of-network exception requests – through which it will employ its own "formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness, efficacy, or efficiency of, health care services, procedures, or settings. Such techniques may include ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review or similar programs." (56.1 ¶ 26.) The Plan also contains a detailed description of the claims process, stating repeatedly that the Claims Administrator determines benefit claims and appeals. (56.1 ¶ 9.)

Based on the Plan's unambiguous and fulsome grant of discretionary authority to Aetna to make benefits claims determinations and interpret the Plan's terms and the fact that Aetna exercised such authority in administering Plaintiff's benefits claim, Aetna's denial of Plaintiff's benefits claim is subject to the arbitrary and capricious standard of review.

## II. AETNA SATISFIED ERISA'S NOTICE AND FULL AND FAIR REVIEW STANDARDS.

The Court's Order remanded Plaintiff's claim for benefits to Aetna "for a new review and with instructions to specifically address in any decision whether Sandhill should be granted a single case agreement, including consideration of Plaintiff's arguments concerning the adequacy of in-network offerings." (Doc. 44.) Aetna satisfied this directive and the requirements set by ERISA for adequate claim determinations in its final post-remand determination (the November 11, 2025 Determination). (*See* 56.1 ¶¶ 113-144.)

In issuing benefit determinations, an ERISA claims administrator must:

> (1)    provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2)    afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

The claims administrator satisfies the "adequate notice" obligation and the requirement to provide a "full and fair review" by explaining the specific reasons for the benefit denial, and "reasonably" taking up the aspects of the claim as articulated by the claimant. *Hobson v. Metropolitan Life Ins. Co.,* 574 F.3d 75, 87 (2d Cir. 2009); *see also DeCesare.*, 95 F. Supp. 3d at 480 ("Courts have defined a 'full and fair review' to mean 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering [its] decision.'") (internal quotation omitted).

The claims administrator must consider the opinions of a claimant's health care provider contained in the administrative record (when provided), but need not accord "greater deference" to such opinions over the administrator's professional medical personnel reviewing the claim. *DeCesare*, 95 F. Supp. 3d at 488 (quoting *Demirovic v. Bldg. Serv. 32 B–J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006)). A claims administrator that employs its own medical personnel to *consider* the opinions of the treating providers instead of "ignoring" them has satisfied the full and fair review requirement. *Id.*; *see also Hobson*, 574 F.3d at 85) ("As the Supreme Court has explained, 'courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete

burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.'") (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

Here, set forth below, there can be no legitimate dispute that Aetna communicated its specific reasoning for denying Plaintiff's benefit claim, reasonably taking up each aspect of Plaintiff's claim. Aetna expressly catalogued the evidence it reviewed and relied upon, giving Plaintiff a full opportunity to address its accuracy and reliability. The record amply demonstrates that Aetna fully and fairly considered the information provided by and opinions of Plaintiff, Plaintiff's benefits claim consultants, and A.D.'s treating health care providers in issuing its thorough and extensive November 11, 2025 Determination.

### A. Aetna Provided a Full and Fair Review of Plaintiff's Arguments That A Network Deficiency Required a Single Case Agreement Because None of the In-Network Facilities Purportedly Were Appropriate for A.D.'s Care.

Plaintiff does not contest that Sandhill was an out-of-network provider or that the Plan expressly excludes coverage for out-of-network providers. Plaintiff's argument in his August 13, 2025 Appeal is that the options for A.D.'s treatment at an in-network RTC were insufficient, either because the in-network facility was inappropriate due to various circumstances (*i.e.*, A.D.'s age, IQ, treatment needs, etc.) or was unavailable to promptly admit A.D, without undue delay. Based on this, Plaintiff contends that Aetna should have approved treatment at Sandhill on a single case agreement basis. (56.1 ¶¶ 108-110.)

Aetna considered and reasonably evaluated each aspect of Plaintiff's arguments relating to purported unsuitability of each in-network RTC option it provided to Plaintiff, explaining in detail the specific reasons for its denial determination, including that in-network options provided by the Plan were in fact clinically appropriate and available to provide residential care to A.D. and thus no network deficiency existed. (56.1 ¶¶ 122-123.)

-13-

In reviewing Plaintiff's appeal materials as to the alleged network deficiency and concerns with the in-network RTC providers offered by Aetna, Aetna determined that at least four in-network RTCs were available to provide clinically appropriate care to A.D.: Meridell Achievement Center; Oak Plains Academy; San Marcos Treatment Center; and Center for Discovery (56.1 ¶ 124-125.)  The Appeal Reviewer relied on their certification in child and adolescent psychiatry, personal review of each of the identified facilities (including each facility's licensure, credentialing, and clinical program offerings), and the Administrative Record broadly. (56.1 ¶ 128.) The Appeal Reviewer considered the statements provided in 2025 by A.D.'s treating health care providers (which was years after A.D.'s admission at Sandhill), including their opinions as to perceived inadequacies of the in-network providers (*e.g.*, accommodation of A.D.'s age, the therapeutic focus, or clinical milieu), and recommending Sandhill as an RTC provider.  (56.1 ¶¶ 126; 142.) Notably, when Plaintiff appealed the initial claim denials in 2022, Plaintiff submitted letters from many of these same providers, none of whom expressed concerns with the adequacy of the in-network providers or provide a recommendation of Sandhill at that time. (56.1 ¶ 32.)

The Appeal Reviewer also expressly considered and factored into the November 11, 2025 Determination the prior single case agreement granted to A.D. for episodic therapy (56.1 ¶ 120) and Plaintiff's arguments that the federal Affordable Care Act and New York insurance law required a single case agreement for Sandhill (56.1 ¶ 121). For each of the identified in-network RTCs, the Appeal Reviewer confirmed that any geographic-based restriction was determined based upon Plaintiff's preferences provided to Aetna's Care Advocate; treatment parameters were determined based upon A.D.'s age and individualized clinical factors; and whether transfer could be made directly from Huntsman, either on an expedited basis or with a reasonably transfer delay. (56.1 ¶ 127.)

The Appeal Reviewer ultimately determined that each of the four identified in-network RTCs was clinically appropriate to provide residential treatment care to A.D. (56.1 ¶¶ 128; 144.) Aetna thus concluded a network deficiency did not exist to warrant consideration of a single case agreement with an out-of-network provider. (56.1 ¶ 128.)

### 1.     Meridell

As to Meridell Achievement Center, the Appeal Reviewer determined A.D.'s age and IQ did not preclude his admission, as confirmed by Aetna's Care Advocate and Meridell materials; that Meridell offered sufficient duration of stay and clinically appropriate treatment; and that Plaintiff's concerns of negligence of Meridell were not supported by Aetna's review of Meridell with regard to safety violations, licensure, and credentialing. (56.1 ¶ 129.) The Appeal Reviewer concluded that Meridell, "based on its licensure, credentialing, and clinical program offering, [] was suitable to provide appropriate Residential Treatment Services to [A.D.]. Specifically, this facility provided physician-led behavioral and neurobehavioral programs using evidence-based, trauma-informed interventions, including family therapy to target dysregulation and aggressive behaviors, improving functioning at home and school." (56.1 ¶ 130.)

### 2.     Oak Plains Academy

As to Oak Plains Academy, the Appeal Reviewer determined information provided by Oak Plains supported its suitability for admission of A.D., with specific consideration given to A.D.'s IQ and history of violent outbursts; that Oak Plains did not require demonstration of violent behavior as a clinical requirement for remaining at the facility; that concerns about short term discharge were not warranted because discharge was based upon completion goals; that Plaintiff's concerns of a reported patient death occurring at Oak Plains *after A.D.'s admission to Sandhill* was not supported by Aetna's review of Oak Plains with regard to safety violations, licensure, and

credentialing; and that Plaintiff's concern about a five-week admission delay was not supported by Aetna's own review and communications with Oak Plains when planning for A.D.'s discharge from Huntsman. (56.1 ¶ 131.)  The Appeal Reviewer concluded that Oak Plains "was suitable to provide appropriate Residential Treatment Services to [A.D.]. Specifically, this facility is a trauma-informed psychiatric residential treatment program for children ages 7 to 17 struggling with emotional and behavioral issues, highlighting family therapy as part of its interventions." (56.1 ¶ 132.)

### 3.     San Marcos Treatment Center

As to San Marcos Treatment Center, the Appeal Reviewer determined San Marcos was responsive and communicative with Aetna regarding admission of A.D.; that San Marcos offers adequate round the clock treatment for autism spectrum disorders as presented by A.D. and accounting for A.D.'s age; that the 2025 letters from various physicians who treated A.D. three years earlier, and which were submitted years after A.D.'s admission to RTC care alleging San Marcos was not appropriate and "more of a hospital program" were not supported by San Marcos' treatment offerings and modalities, as A.D. would not have been treated alongside older patients receiving treatment for alcohol dependency, or that A.D.'s treatment would have been limited to an insufficient duration; and that the longer waitlist of San Marcos was common and could have been accommodated through faster admission, or an extended stay at Huntsman and direct transfer to the RTC facility. (56.1 ¶ 133.) The Appeal Reviewer concluded that, "based on its licensure, credentialing, and clinical program offering, San Marcos was suitable to provide appropriate Residential Treatment services to [A.D.]. Specifically, this facility provided physician-led, evidence-based child-centered interventions including weekly family therapy to target dysregulation and aggressive behaviors, improving functioning at home and school." (56.1 ¶ 134.)

#### 4. Center for Discovery

As to Center for Discovery, the Appeal Reviewer determined the facility would have accepted A.D., factoring in his age and his diagnosis, as Center for Discovery treated 10-year-old patients and the full range of behavioral health issues and psychiatric disorders; that its many different treatment units and programs supported separate (i.e., not mixed) clinical populations, including by age, diagnosis, and gender, such that A.D. would receive clinically appropriate, individualized care; and that treatment was not subject to predetermined time limits. (56.1 ¶ 135.) The Appeal Reviewer concluded that, "Center for Discovery was able to accept a 10-year-old . . . they operate 8–10 facilities nationwide that provide physician-led, evidence-based residential care for complex child and adolescent mental health disorders, offering five to six hours of daily psychotherapy and weekly psychiatric visits." (56.1 ¶ 136.)

In sum, through Aetna's May 1, 2025 Determination and November 11, 2025 Determination, Aetna provided a full and fair review of Plaintiff's benefit claim, specifically responding to Plaintiff's arguments that Aetna's in-network offerings were inadequate and required a single case agreement, and explaining the evidence relied upon in its determination.

#### B. Aetna Provided a Full and Fair Review of Plaintiff's Plan-Based Argument That Coverage For Sandhill Should Be Provided Under a Single Case Agreement.

The November 11, 2025 Determination also explained that Sandhill could not be granted a single case exception because, even if there was a network deficiency (there was not), Sandhill failed to meet minimum safety criteria per the Plan terms surrounding the utilization review process.

The November 11, 2025 Determination considered and responded to Plaintiff's arguments that Sandhill satisfied the Plan's definitions of "providers" and "residential treatment facility" and

therefore should be covered without Aetna's consideration of its clinical safety criteria. (56.1 ¶ 138.) The Appeal Reviewer explained that Plan language expressly excludes out-of-network providers such as Sandhill from coverage, and exception-based coverage determinations are confined to the prior authorization utilization review process. (*Id.*) The Appeal Reviewer cited the Plan's prior authorization language, which permits Aetna to consider requests for out-of-network provider coverage through use of the utilization review process, including review of a requested service's clinical necessity, appropriateness, efficacy, or efficiency, and using utilization review techniques such as ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review, or similar programs. (56.1 ¶ 119.)

The Appeal Reviewer explained the quality control and safety criteria considered by Aetna in the utilization review process for approval of single case agreements for RTC care, which had been repeatedly provided to Plaintiff:

> Included in those criteria are that the out-of-network residential treatment facility 'be accredited by one of the following agencies, commissions or committees for the services being provided: The Joint Commission (TJC), Committee on Accreditation of Rehabilitation Facilities (CARF), American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP), or the Council on Accreditation (COA); or is credentialed by Aetna.' The criteria further provide that in addition to accreditation, a licensed behavioral health provider must be actively on duty at the facility 24 hours per day for 7 days a week; the patient must be treated by a psychiatrist at least once per week; and the facility's medical director must be a psychiatrist.

(56.1 ¶ 139.) The Appeal Reviewer explained why Aetna determined at the time of A.D.'s discharge planning from Huntsman that Sandhill did not meet such criteria: "it was not accredited or credentialed as required by the criteria, it did not have a licensed behavioral health provider actively on duty 24/7, [A.D.] was not being treated by a psychiatrist at least one time per week

since his admission, and Sandhill Center's medical director was not a psychiatrist." (56.1 ¶ 140.) The Appeal Reviewer also explained that Sandhill's treatment approaches and techniques (including basing patient care on the Neurosequential Model of Therapeutics) did not have adequate support of the academic and clinical community for purposes of best accepted standard of care, prohibiting eligibility for Aetna's provider network or approval on a single case agreement basis. (56.1 ¶ 141.)

By any reasonable measure, Aetna's exhaustive, 15-page denial letter, responding to each and every argument made by Plaintiff in the August 13, 2025 Appeal, provided Plaintiff a comprehensive explanation supporting its claim denial determination and afforded Plaintiff a reasonable opportunity for, and thereby, a full and fair review of, the decision denying the claim.

## III.    AETNA'S FINAL CLAIM DETERMINAITON ON REMAND WAS NOT ARBITRARY AND CAPRICIOUS AND MUST BE UPHELD.

Judicial review under the arbitrary and capricious standard of review of an ERISA claims administrator's denial of a claim for benefits is "highly deferential" to the administrator's determination and "narrow" in scope. *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003). A court can overturn the administrator's denial only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)). "Substantial evidence" means "more than a scintilla but less than a preponderance." *Id.* (explaining support constitutes "substantial evidence" if a reasonable mind might accept it as adequate to rationalize the administrator's conclusion). Under the arbitrary and capricious standard, if the administrator's and the plaintiff's interpretations of plan provisions are conflicting but both are rational, the administrator's interpretation must control. *Id.* Courts may not substitute their own judgment for that of the claims administrator. *Id.*; *Hobson*, 574 F.3d at 83–84.

Aetna's denial of Plaintiff's claim for reimbursement of Sandhill expenses was based on substantial evidence and was not arbitrary and capricious:

- Sandhill was an out-of-network provider and the Plan explicitly provides that it does not cover out-of-network providers.

- Multiple clinically appropriate RTCs were identified as available to provide residential treatment to A.D.

- Because multiple in-network options were available, no network deficiency existed that would warrant consideration of a single case agreement for coverage of an out-of-network provider.

- Even if a network deficiency did exist, Sandhill did not meet established minimum safety criteria for approval on a single case agreement basis.

### A.    Aetna's Determination is Supported by Substantial Evidence, Including Plan Language.

The Plan unambiguously states out-of-network provider expenses are not covered by the Plan, and such language must be enforced.

Second Circuit courts routinely uphold denials of claims for out-of-network health care expenses based on plan language either limiting coverage of such expenses or excluding them entirely. For example, in *Anonymous Oxford Health Plan Member With Id No. 6023604*01 v. Oxford Health Plans (N.Y.), Inc.*, No. 08CIV.943PAC, 2009 WL 667237, at *5 (S.D.N.Y. Mar. 16, 2009), the court granted the plan's motion to dismiss the plaintiff's benefits claim seeking coverage for residential treatment facility expenses because the facility was not in-network and the plan did not cover out-of-network expenses. In doing so, the court explained, mirroring this case, that "[t]he language in Plaintiff's 2003 health plan clearly precludes coverage for out-of-network, inpatient mental health services. Plaintiff's concern and care for his daughter are entirely

-20-

commendable, but unfortunately the plan itself is unambiguous and it does not provide for out-of-network coverage." *Id.*; *see also Curran v. Aetna Life Ins. Co.*, No. 7:2013cv00289, 2016 WL 3843085 (S.D.N.Y. July 11, 2016) (granting summary judgment on plaintiff's benefits claim for out-of-network expenses because plan language stated only in-network benefits were authorized for the at-issue balance billing policy); *DeFrancis v. MVP Health Plan, Inc.*, No. 05CIV7086CMGAY, 2005 WL 8179331, at *3 (S.D.N.Y. Nov. 1, 2005) (dismissing benefits claim involving plan that did not cover out-of-network care, even when the only in-network surgery options were more invasive and required a multi-week wait, and the elected out-of-network option was less invasive, recommended by a physician, and immediately available).

If a plan participant requests an exception to a plan's exclusion of out-of-network provider coverage, such claim is properly denied where the plaintiff cannot point to a specific plan provision requiring exercise of the exception. *Krauss*, 517 F.3d at 617-18. In *Krauss*, the Second Circuit court reviewed plan provisions stating participants who use out-of-network providers will pay higher portions of medical expenses, and completely excluding coverage for private-duty nurses. *Id. at* 618-19. The claims administrator in *Krauss* determined that "in-network providers could have performed the surgery," and the court agreed that there was no plan language requiring an out-of-network exception under the circumstances. *Id.* at 620, 628-29 (affirming summary judgment to claims administrators based on their interpretation of plan language limiting out-of-network providers, even though the court was "sympathetic" to the medical needs of the plaintiff); *see also Redstone v. Empire Healthchoice HMO, Inc.*, No. 23-CV-2077 (VEC), 2024 WL 967416, at *2 (S.D.N.Y. Mar. 5, 2024) (granting motion to dismiss action on ERISA benefits claim, finding there were "no facts to support [plaintiffs'] conclusion that there was not a single in-network surgeon capable of performing [the] surgery").

-21-

Here, Aetna properly applied the Plan's terms and reasonably determined that expenses from out-of-network provider Sandhill were not covered. The Plan expressly states, in underlined text – indeed, the only underlined text in the entire Plan – "<u>Out-of-Network care is not a covered expense in this Plan</u>." (56.1 ¶ 16.) Nothing in the Plan requires coverage for any out-of-network provider care. (56.1 ¶¶ 24-26.)  Rather, the Plan allows a participant to request an exception through the prior authorization process, which entails Aetna's assessment as the Claims Administrator of that request through utilization review. (56.1 ¶¶ 24-25.) Aetna may consider its "formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness, efficacy, or efficiency of, health care services, procedures, or settings. Such techniques may include ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review or similar programs." (56.1 ¶ 26.)

It is undisputed the care Plaintiff elected for A.D. to receive at Sandhill was "<u>Out-of-Network care</u>" not covered by the Plan. It is also undisputed that upon Plaintiff's August 13, 2025 Appeal, Aetna engaged a licensed child and adolescent psychiatrist to conduct a thorough review of both Aetna's in-network RTC offerings and Sandhill, focusing on each facilities' clinical standards, appropriateness, efficacy, and efficiency for A.D.'s clinical care needs. (56.1 ¶¶ 113-144.) Aetna determined that exception-based coverage for A.D.'s RTC care under a single case agreement was not appropriate under Plan language relating to out-of-network care and the utilization review process, because the Plan offered multiple clinically appropriate in-network options for A.D.'s residential treatment that were available to admit A.D. on a reasonable timeframe. (56.1 ¶ 122.) *See supra*, Section II.A.

Aetna nonetheless reviewed Sandhill as though a network deficiency existed (it did not) and determined Sandhill did not satisfy minimal clinical safety standard criteria established by Aetna for RTC facilities at the time of A.D.'s care in 2022. Specifically, "[Sandhill] was not accredited or credentialed as required by the criteria, it did not have a licensed behavioral health provider actively on duty 24/7, [A.D.] was not being treated by a psychiatrist at least one time per week since his admission, and Sandhill Center's medical director was not a psychiatrist." (56.1 ¶ 139-140.) In addition, Sandhill's treatment approaches and techniques (including basing patient care on the Neurosequential Model of Therapeutics) did not have adequate support of the academic and clinical community for purposes of best accepted standard of care. (56.1 ¶¶ 141.)

Aetna reasonably construed the Plan terms concerning out-of-network care and exception-based coverage, and determined Sandhill could not be covered, even if a network deficiency did exist. Its claim denial was reasonable and supported by substantial evidence, and therefore not arbitrary and capricious.

**B.    Plaintiff's Arguments Enlisting Inapplicable Federal and State Insurance Laws and Based On a Prior Single Case Agreement Approved for A.D. Are Unavailing.**

Plaintiff's August 13, 2025 Appeal asserts that Sandhill should have been approved on a single case agreement basis due to requirements of the Affordable Care Act ("ACA") and New York State insurance law, as well as because Aetna previously approved out-of-network treatment for A.D. on a single case agreement basis. Neither argument is availing to Plaintiff.

**1.    Plaintiff's Insurance Law Arguments Are Not Applicable.**

Plaintiff's August 13, 2025 Appeal asserted that the ACA regulates the Plan with respect to its network of providers, mandating out-of-network coverage for Sandhill. (56.1 ¶ 111.)

By its plain terms, the ACA's network adequacy regulation applies only to insurers that are "QHP issuers." 45 C.F.R. § 156.320(a)(1)(ii). A "QHP issuer" is defined in 45 C.F.R. § 155.20 as "a health insurance issuer that offers a <u>QHP</u> in accordance with a certification from an Exchange" (emphasis added), and a "QHP" is defined, also in 45 C.F.R. § 155.20, as "a health plan that has in effect a certification that it meets the standards described in subpart C of part 156 issued or recognized by each Exchange through which such plan is offered in accordance with the process described in subpart K of part 155." Simplified, QHP issuers are health insurance companies (not self-funded health benefit plans) that sell QHPs through a state or federal Exchange – commonly known as a "Marketplace" in ACA parlance, including www.healthcare.gov – to individuals and small employer groups seeking to buy fully insured health insurance coverage that meets certain requirements (*i.e.*, QHPs).

Plaintiff's August 13, 2025 Appeal offered no evidence, nor does the Administrative Record show, that the Plan is a QHP within the meaning of the ACA. And there is a good reason for that. The Plan is not a QHP; it is instead a self-funded group insurance plan sponsored by Deloitte LLP for the benefit of its employees and their dependents, not an insurance policy that is sold on an Exchange to the general public. (56.1 ¶¶ 1-3.) This being the case, Plaintiff's ACA-based argument simply does not apply.

Plaintiff's August 13, 2025 Appeal also contended that New York Insurance Law Section 3241 imposes certain network adequacy requirements on the Plan because "Aetna issues and administers health insurance policies in the State of New York. (56.1 ¶ 111 (see DGIP001915).) But like Plaintiff's ACA argument, Plaintiff's attempted reliance on New York state insurance laws also misses the mark. In *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023), the plaintiff surgery center

was an out-of-network provider under the ERISA plan's terms, which stated out-of-network provider expenses would only be reimbursed pursuant to a "Schedule of Allowances," the result of which was that a plan participant selecting an out-of-network provider would incur significant uncovered costs. *Id.* at *1-2. A plan participant nonetheless elected services from the out-of-network surgery center, and the surgery center sued the plan (on behalf of the participant) for $145,155 in uncovered expenses. *Id.* at *2. Although the amended complaint generally alleged the plan's provider network was inadequate, that pleading did not reference New York state insurance laws. *Id.* at *7. The Court summarily rejected the plaintiff's *post hoc* attempt to enlist New York state insurance law to support its ERISA claim. *Id.* (granting the defendant's motion to dismiss the complaint without leave to amend).

Here, the Complaint does not refer to New York's state insurance laws. But even assuming Plaintiff had properly raised this issue in an operative pleading (he did not), *N. Jersey Plastic Surgery Ctr.* forecloses his argument. As the Court there unequivocally confirmed, a plaintiff cannot bootstrap network adequacy requirements under New York Insurance Law Section 3241 to an ERISA Section 1132(a)(1)(B) denial of benefits claim. 2023 WL 5956142 at *7.

## 2. A Prior Single Case Agreement for Episodic Outpatient Therapy Does Not Support a Single Case Agreement for an Out-of-Network RTC Facility.

Plaintiff's argument that Aetna should have approved Sandhill on a single case agreement basis because it had previously done so for one of A.D.'s psychologists who is an out-of-network provider is a *non sequitur*. First, the Plan expressly explains that Aetna's prior authorization process, which can include consideration of requests for out-of-network coverage, is based on the specific health care service at issue and other claim-specific factors. (56.1 ¶ 26.) Thus, each request necessarily stands on its own. Second, there is an enormous qualitative difference – both in the

type of treatment and the expense – between a single case agreement approving episodic outpatient talk therapy sessions and an agreement to provide coverage for ongoing, continuous, long-term residential treatment facility admission of a minor. There is no legal support for the argument that a network exception determination for one *therapist* must be duplicated for future *RTC* facilities as well, particularly when in-network RTC options existed.

Aetna's denial of Plaintiff's request for coverage of out-of-network provider Sandhill was reasonable and based on substantial evidence – most notably, Aetna's referral to multiple clinically appropriate and available in-network providers and Plan provisions and exclusions described above. The denial was not arbitrary and capricious.

## IV. EVEN UNDER A *DE NOVO* STANDARD, DENIAL OF PLAINTIFF'S BENEFIT CLAIM ON APPEAL IN REMAND MUST BE UPHELD.

Even assuming, *arguendo*, that the *de novo* standard of review applied to Aetna's denial of Plaintiff's ERISA benefits claim (it does not), such denial must be upheld as a matter of law.

A court charged with *de novo* review of a plaintiff's ERISA benefits denial claim must review the claim "as it would [] any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent." *Firestone*, 489 U.S. at 112-13).

Even under *de novo* review, denial of Plaintiff's claim for reimbursement of Sandhill expenses was proper pursuant to the unambiguous terms of the Plan. As set forth above, the Plan's exclusion of coverage for out-of-network expenses is unambiguous: "Out-of-Network care is not a covered expense in this Plan," and nothing in the Plan requires coverage for any out-of-network provider care. (56.1 ¶¶ 16; 24-26.) Rather, a Plan participant may request an exception to the out-of-network exclusion through Aetna's utilization review process. (56.1 ¶¶ 24-25.) Aetna administers this process through discretionary review of clinical necessity, appropriateness, efficacy, or efficiency of the requested provider. (56.1 ¶ 26.) Aetna's determination that expenses

incurred from Sandhill, an out-of-network provider, would not be reimbursed under the Plan indisputably aligns with the Plan language and Aetna's utilization review. (56.1 ¶¶ 16-26.) The Plan's in-network RTC offerings illustrated no network deficiency that could reasonably warrant an out-of-network single case agreement-based exception for coverage. *See supra* Section III(A). And, even if a network deficiency existed (it didn't), Aetna properly followed the utilization review process contained in the Plan in determining Sandhill did not meet minimum safety standards necessary for potential approval on a single case agreement basis. (56.1 ¶¶ 137-143.) Aetna's denial of Plaintiff's claim for reimbursement of Sandhill expenses is fully supported by the terms of the Plan. Thus, even under an inapplicable *de novo* standard, the denial must be upheld as a matter of law.

## **CONCLUSION**

The Plan grants discretionary authority to Aetna as Claims Administrator to construe claims made by Plan participants. Here, Aetna reasonably construed the Plan's explicit out-of-network exclusion in denying Plaintiff's request for coverage of expenses incurred at Sandhill, an out-of-network RTC, because clinically appropriate and available in-network RTC options were available (but rejected) by Plaintiff. Aetna also considered but denied Plaintiff's request for coverage for Sandhill on a single case agreement basis because (1) the availability of clinically appropriate in-network RTC options made consideration of Sandhill on an single case agreement basis unwarranted; and (2) even if in-network RTC options were not clinically appropriate and available, Sandhill could not be approved on a single case agreement basis because it did not meet Aetna's reasonable and legitimate criteria for such approval. Aetna's final determination reasonably addressed all arguments, information, and opinions raised by Plaintiff, adhered to the Court's remand instructions, and was supported by substantial evidence. Its claim denial

determination therefore should be upheld under the arbitrary and capricious standard (or even if evaluated *de novo*). Accordingly, Defendant respectfully requests the Court grant Defendant's Motion for Summary Judgment and enter judgment in favor of Defendant.

DATED:  January 30, 2026

Respectfully submitted,

*/s/ Daniel B. Pasternak*
Daniel B. Pasternak (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, Arizona 85016
T:  (602) 528-4000
F:  (602) 253-8129
daniel.pasternak@squirepb.com

Paul D. Erian
SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, New York  10036
T:  (212) 872-9800
F:  (212) 872-9815
paul.erian@squirepb.com

*Counsel for Defendant*
*Deloitte LLP Group Insurance Plan*

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** contains 8,302 words (not including the case caption, table of contents, table of authorities, signature block, or required certificates), as indicated by the word count function of Microsoft Word, the word-processing program used to prepare the document, and therefore complies with the word-count limitation in Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern District of New York.

*/s/ Daniel B. Pasternak*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 30, 2026, I caused a copy of the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served via ECF/CM on the ECF registrants for this case.

/s/ *Tammy Gougeon*