UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Doe,

                Plaintiff,

      v.

Deloitte LLP Group Insurance Plan,

                Defendant.

Civil Action No. 1:23-cv-04743-JPC

**DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Judge John P. Cronan**

1106608327\8\AMERICAS

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

DEFENDANT'S RESPONSES TO PLAINTIFF'S ARGUMENTS ............................................. 2

I.   PLAINTIFF ARGUES, INCORRECTLY, THAT A *DE NOVO* STANDARD
     OF REVIEW APPLIES TO AETNA'S NOVEMBER 11, 2025
     CLAIM DETERMINATION ON REMAND. ........................................................ 2

II.  APPLICATION OF THE PLAN'S OUT-OF-NETWORK COVERAGE
     EXCLUSION TO PLAINTIFF'S BENEFIT CLAIM DOES NOT RENDER
     PLAN BENEFITS "ILLUSORY." ........................................................................ 7

III. PLAINTIFF'S RELIANCE ON PLAN DEFINITIONS DOES NOT SUPPORT
     COVERAGE FOR SANDHILL. ........................................................................ 10

IV.  AETNA'S CONSIDERATION OF ITS NON-CONTRACTED RTC CRITERIA
     WAS PROPER. ................................................................................................ 11

V.   PLAINTIFF'S ACA AND NEW YORK INSURANCE-LAW BASED
     ARGUMENTS REMAIN MISPLACED. ............................................................ 13

VI.  PLAINTIFF'S MISREPRESENTATIONS OF THE ADMINISTRATIVE
     RECORD DO NOT RENDER AETNA'S CLAIM DENIAL ARBITRARY
     AND CAPRICIOUS. ........................................................................................ 13

     A.   Aetna Provided Full and Fair Review of Plaintiff's Benefits Claim. ................. 15

     B.   Aetna Appropriately Considered the Opinions of A.D.'s Health Care
          Providers Submitted in 2025 in Support of Plaintiff's Post-Remand
          Appeal but Relied On the Opinion of its Qualified Appeal Reviewer. ................. 17

CONCLUSION ........................................................................................................ 20

1106608327\8\AMERICAS

# TABLE OF AUTHORITIES

**Cases**

*Anonymous Oxford Health Plan Member With Id No. 6023604\*01 v. Oxford
Health Plans (N.Y.), Inc.*,
No. 08CIV.943PAC, 2009 WL 667237 (S.D.N.Y. Mar. 16, 2009) ........................................8

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822, 834 (2003) ......................................................................................17

*Boyle v. Legacy Health Plan No. 504*,
No. 6:20-CV-00705-AA, 2023 WL 6318923 (D. Or. Sept. 28, 2023) ...................................9

*Conkright v. Frommert*,
559 U.S. 506 (2010) ...........................................................................................2, 3

*Curran v. Aetna Life Ins. Co.*,
No. 7:2013cv00289, 2016 WL 3843085 (S.D.N.Y. 2016) ......................................................9

*DeCesare v. Aetna Life Ins. Co.*,
95 F. Supp. 3d 458, 480 ......................................................................................14

*DeFrancis v. MVP Health Plan, Inc.*,
No. 05CIV7086CMGAY, 2005 WL 8179331 (S.D.N.Y. 2005) ...........................................9

*Feifer v. Prudential Ins. Co. of Am.*,
306 F.3d 1202 (2d Cir. 2002) .................................................................................5

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101, 115 (1989) .....................................................................................2, 3

*Hines v. First Unum Life Ins. Co.*,
14 Civ. 2961 (ER), 2016 WL 1246483 (S.D.N.Y. Mar. 23, 2016) .............................17, 18, 19

*Hobson v. Metropolitan Life Ins. Co.*,
574 F.3d 75, 87 (2d Cir. 2009) ........................................................................14, 17, 18, 19

*Hughes v. Hartford Life & Accident Ins. Co.*,
No. 3:19-CV-01611 (JAM), 2021 WL 1165430 (D. Conn. Mar. 25, 2021) ............................3

*Jacobs v. Kaiser Found. Health Plan Inc.*,
265 Fed. App'x 652 (9th Cir. 2008) .......................................................................9

*Juliano v. Health  Maint. Org. of New Jersey, Inc.*,
221 F.3d 279, 288 (2d Cir. 2000) .........................................................................14, 15

1106608327\8\AMERICAS

*Krauss v. Oxford Health Plans, Inc.*,
    517 F.3d 614, 617-18, 628-29 (2d Cir. 2008) ...................................................................8, 12

*Kruk v. Metro. Life Ins. Co.*,
    567 Fed. App'x 17, 19 (2d Cir. 2014) ...................................................................................3

*McDonnell v. First Unum Life Ins. Co.*,
    No. 10 CV 8140 RPP, 2013 WL 3975941 (S.D.N.Y. Aug. 5, 2013) .............................3, 5, 6

*N. Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*,
    No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) ..............................13

*Redstone v. Empire Healthchoice HMO, Inc.*,
    No. 23-CV-2077 (VEC), 2024 WL 967416 (S.D.N.Y. Mar. 5, 2024) ...................................9

*Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*,
    858 F.3d 340, 346-47 (5th Cir. 2017) ...................................................................................5

*Rubio v. Chock Full O'Nuts Corp.*,
    254 F. Supp. 2d 413, 422 (S.D.N.Y. 2003) ....................................................................3, 5, 6

## Statutes/Regulations

29 U.S.C. § 1105(c)(1) ..............................................................................................................3, 4

29 U.S.C. § 1133 .........................................................................................................................14

45 C.F.R. § 156.230(a)(2) ...........................................................................................................13

29 C.F.R. § 2560.503-1................................................................................................................14

1106608327\8\AMERICAS

## INTRODUCTION

In September 2022, A.D. was experiencing a mental health crisis. Aetna, the Plan's claims administrator, approved A.D.'s in-patient hospitalization and approved his transfer following discharge from the hospital to a residential treatment center to receive continuing care. The record in this case abundantly demonstrates that Aetna's Care Advocate worked extensively with A.D.'s parents – Plaintiff and his spouse in this action – to locate an in-network residential treatment center that was available to accept A.D. post-hospitalization and provide him with clinically appropriate ongoing care. Although that proved challenging – A.D.'s age and specific clinical needs limited the number of facilities that could provide appropriate care – Aetna nonetheless identified multiple in-network facilities available to accept A.D. directly upon his discharge from the hospital and provide him with appropriate care.

But A.D.'s parents rejected each of the in-network facilities Aetna offered as options. Despite Aetna's Care Advocate's repeated explanations that the Plan does not provide benefits for out-of-network residential treatment centers, A.D.'s parents instead chose to admit A.D. to Sandhill, an out-of-network provider. When they then asked Aetna to cover A.D.'s treatment at Sandhill, Aetna denied that request on the basis that Sandhill was an out-of-network provider; by its express terms, the Plan does not cover out-of-network providers; Aetna had offered clinically appropriate, available in-network providers; and because even if there had not been appropriate in-network providers (although there were), Sandhill lacked appropriate licensure as well as failed to meet several of the legitimate safety criteria required by Aetna to approve Sandhill for coverage as an out-of-network provider on a single case agreement basis.

What followed since then has been an ongoing cycle of appeals through which A.D.'s parents seek to avoid the consequences of the fully informed choice they made to admit A.D. to

1106608327\8\AMERICAS

Sandhill. Relying on arguments contradicted by binding precedent and misrepresenting facts as well as the unambiguous content of Aetna's claim determinations, they ask the Court to require the Plan to cover A.D.'s stay at Sandhill. The record simply does not support this. Aetna fully and fairly considered all arguments raised in Plaintiff's appeals, but appropriately stood firm in its decision to deny benefits based on all of the facts and information comprising the claim record. Accordingly, Plaintiff is not entitled to summary judgment, and summary judgment should be instead entered in favor of the Plan.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S ARGUMENTS

### I.    PLAINTIFF ARGUES, INCORRECTLY, THAT A *DE NOVO* STANDARD OF REVIEW APPLIES TO AETNA'S NOVEMBER 11, 2025 CLAIM DETERMINATION ON REMAND.

Judicial review of benefit determinations under ERISA is subject to either a deferential arbitrary and capricious standard of review, or a more rigorous *de novo* review standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). As explained in the Plan's memorandum in support of its cross-motion for summary judgment, the proper standard to be applied by the Court to its review of Aetna's November 11, 2025 Determination is the arbitrary and capricious standard. (*See* Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Mem."), ECF No. 57-1, at 19.)

Citing no authority – neither statute nor caselaw – Plaintiff argues Aetna is not entitled to the deferential standard of review because this Court previously found Aetna's pre-remand handling of Plaintiff's benefit claim was arbitrary and capricious. (Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl. Mem."), ECF No. 56-1, at 4.) But that argument has been rejected by the United States Supreme Court. In *Conkright v. Frommert*, 559 U.S. 506 (2010), the Court overruled the Second Circuit's then "one-strike-and-you're-out" approach in

1106608327\8\AMERICAS

removing deference to a plan administrator's interpretation of plan terms post-remand, explaining that such an approach "has no basis in *Firestone.*" 559 U.S. at 513 (*citing Firestone*, *supra* at 111, 115). The Second Circuit and its district courts follow *Conkright*, as they must. *See, e.g.*, *Kruk v. Metro. Life Ins. Co.*, 567 Fed. App'x 17, 19 (2d Cir. 2014) (summary order) ("[The plaintiff] argues that judicial review of MetLife's challenged decision here should be *de novo* in light of a prior vacatur of MetLife's initial denial of benefits as arbitrary and capricious. We reject this argument…") (internal citation omitted); *Hughes v. Hartford Life & Accident Ins. Co.*, No. 3:19-CV-01611 (JAM), 2021 WL 1165430, at *6 (D. Conn. Mar. 25, 2021) ("Hughes argues that *de novo* review must apply because of my prior ruling that Hartford failed to conduct a full and fair review during the course of the first administrative appeal. But the Supreme Court's decision in *Conkright v. Frommert*, 559 U.S. 506 (2010), forecloses this argument.").

Perhaps recognizing the complete invalidity of this argument, Plaintiff offers a second but equally meritless rationale for *de novo* review. Plaintiff contends that standard is proper because there supposedly "is no evidence that the Plan had the authority to delegate discretion to Aetna or that the Plan contained specific procedures for delegation." (Pl. Mem., at 23.) Plaintiff props up this argument by noting that the Plan references another "Plan document" that is not included in the Administrative Record, and cites 29 U.S.C. § 1105(c)(1), *Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413, 422 (S.D.N.Y. 2003), and *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 8140 RPP, 2013 WL 3975941, at *10 (S.D.N.Y. Aug. 5, 2013). But none of this authority actually supports Plaintiff's argument for *de novo* review. Indeed, Plaintiff's claims that the Plan is not an adequate "instrument" to grant Aetna discretionary authority and that it does not contain the authority for designating fiduciary responsibility is both factually incorrect and contradicted by binding precedent.

1106608327\8\AMERICAS

29 U.S.C. § 1105(c)(1) offers Plaintiff nothing, as it is silent as to adequacy of plan instruments. Rather, the statute simply states, "The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." (29 U.S.C. § 1105(c)(1)). Multiple reasons are present to find that the Plan is an appropriate "instrument" within the meaning of the statute.

First, that the Plan bears the title "Summary Plan Description" is immaterial. (*See* Def. Mem., at 7-9.) What matters is the substance of the document. Here, the Plan expressly and adequately establishes the procedures and authority of named fiduciaries and grants discretionary authority to Aetna, as Claims Administrator, to determine eligibility for benefits and construe the terms of the Plan. More specifically, the Plan:

- identifies Deloitte LLP as the "Plan Sponsor" (Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 57-2) ("Def.'s 56.1"), at ¶ 7);

- designates Aetna as the "claims administrator and a named fiduciary for purposes of claims processing, review, approval, denial and/or review of denied claims under the Plan" (Def.'s 56.1, at ¶ 6);

- explains that Aetna has the discretion to "interpret [b]enefits under the Plan," "interpret the other terms, conditions, limitations, and exclusions listed in the Plan," and "make factual determinations related to the Plan and its [b]enefits" (Def.'s 56.1, at ¶ 8);

- provides that Aetna is responsible for prior authorization determinations – necessary as a prerequisite for coverage under the Plan of certain services, including RTC care – through which it will employ its own "formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness, efficacy, or efficiency of, health care services, procedures, or settings. Such techniques may include ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review or similar programs" (Def.'s 56.1, at ¶ 26); and

-4-

- contains a detailed description of the claims process, stating repeatedly that the Claims Administrator determines benefit claims and appeals (Def.'s 56.1, at ¶ 9).

Second, that the Plan contains language referencing other unnamed (and even non-existent) documents in no way vitiates the Plan's terms granting discretionary authority to Aetna to review benefit claims and construe the terms of the Plan, a point unequivocally established by the Second Circuit in *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002). In that case (discussed extensively in Def. Mem. at 7-10, but notably absent from Plaintiff's briefing), the Court ruled that a "Program Summary" was the operative plan document, even though it contained disclaiming language that it was "not intended to cover all details of the Plan" and stated that "actual provisions of the Plan will govern in settling any questions that may arise." *Feifer,* 306 F.3d at 1209. Other courts have applied the same interpretation – that references in plan documents to other documents, even those that do not exist, do not nullify a valid delegation in plan documents that do exist. *See Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 346-47 (5th Cir. 2017) ("The Plan's SPD references an 'official Plan Document' that does not exist. . . . As the [magistrate judge] observed, including the disclaimer in the [summary plan description] was 'sloppy,' but the disclaimer does not render the Plan's terms unenforceable.").

Third, neither *Rubio* nor *McDonnell*, relied on by Plaintiff, support Plaintiff's contention that the Plan fails to provide for specific procedures for the delegation of discretionary authority. In *Rubio*, there was no dispute that the ERISA plan document at issue granted authority to the "Board of Directors or a committee appointed by the Board" to interpret the plan, and that any decision by the Board or the committee appointed by the Board would be afforded deferential review. *Rubio*, 254 F. Supp. 2d at 421. However, when the committee appointed by the Board attempted to confer its discretionary authority to a third-party subcommittee via a Board resolution, the court concluded that attempt was outside the boundaries of the plan's terms and therefore

-5-

invalid. *Id.* at 421-23 (noting the plan document did not delegate discretion to the subcommittee, and the Board resolution purporting to grant such authority was not a plan document). Those are not even remotely the facts in this matter; there was no subsequent delegation by the Plan here to any other individual or entity other than Aetna, so *Rubio* is plainly distinguishable. *McDonnell* likewise involved the issue of an entity not granted discretion under the applicable plan document making claim determinations, which again, is not present here. *McDonnell*, 2013 WL 3975941, at *7-11 (finding the plan language stating First Unum had discretionary authority "to determine an employee's eligibility for benefits and to construe the terms of this policy" warranted deferential review of First Unum determinations, but that a different entity made the benefits determination).

The facts in this case – which do not involve any delegation of discretion to administer or decide claims under the Plan to any entity other than Aetna – bear no similarity to those in *Rubio* or *McDonnell*. Rather, the Plan unambiguously grants discretion to Aetna, and to Aetna alone, to administer benefits claims (*see* Def.'s 56.1, at ¶¶ 6; 8-9), and Aetna is the sole entity that administered and determined Plaintiff's benefit claim at issue in this litigation.

As Second Circuit courts routinely recognize documents like the Plan as the determinative plan document for purposes of determining the applicable standard of review (Def. Mem., at 8-9), and as the Plan unequivocally grants discretionary authority to Aetna to construe Plan terms and determine benefit claims (Def. Mem., at 10-11), denial of Plaintiff's benefits claim must be reviewed under the deferential arbitrary and capricious standard of review, and not subject to *de novo* review.

## II.    APPLICATION OF THE PLAN'S OUT-OF-NETWORK COVERAGE EXCLUSION TO PLAINTIFF'S BENEFIT CLAIM DOES NOT RENDER PLAN BENEFITS "ILLUSORY."

Plaintiff contends that Aetna's in-network residential treatment center ("RTC") providers were either unavailable to accept A.D. directly following discharge from hospitalization, or were unsuitable to provide him with appropriate care. Thus, Plaintiff argues, Aetna should have approved benefits for A.D.'s RTC care at out-of-network Sandhill on a single case agreement basis, as it did previously for A.D.'s outpatient, episodic treatment by an out-of-network therapist. The Court is familiar with these arguments, and Defendant has responded to them repeatedly, including at Def. Mem., at 13-17; 25-26. *See also infra* Section VI.[1]

As part of these arguments, Plaintiff repeats his previous contention that Aetna should have approved a single case agreement for Sandhill because failure to do so renders the Plan's RTC benefits "illusory." (Pl. Mem., at 25-26.) That argument, however, is premised on a false equivalency: that a legitimate denial of benefits, supported by facts and express and unambiguous Plan language, means that the Plan's benefits are not real.

To begin, Plaintiff's argument is constructed on a faulty foundation: that Aetna's network of RTC providers was inadequate. Aetna's reasonable determination that there was no network deficiency – indeed, that there were multiple in-network RTCs available to accept A.D. from hospitalization and provide him with clinically appropriate care – is exhaustively established in

---

[1] Plaintiff references A.D.'s treatment at Sandhill through March 1, 2024. (Dec. of Elizabeth Green, ¶ 2, ECF No. 56-3.) However, the benefit claim at issue in this litigation is for dates of service beginning October 11, 2022 and running through April 13, 2023. (DGIP001862; 1951.) Thus, what is at issue is whether expenses for services provided for that period should be covered on an out-of-network, single case agreement basis. The Administrative Record does not contain evidence relating to any claim for benefits, or any determinations with respect thereto, for any period after April 13, 2023. including whether continued care after April 13, 2023 was medically necessary. *See generally* Administrative Record (DGIP000001-001966).

1106608327\8\AMERICAS

the Administrative Record, including in the comprehensive review provided in Aetna's November 11, 2025 Determination. (*See* Def. Mem, at 13-17; DGIP001951-001966.) Moreover, the Plan does not promise to cover any or all RTC care requested by a participant. Rather, the Plan explains that RTC care must be provided by an in-network provider and approved through a Prior Authorization process, which Aetna expressly administers through its own processes designed to evaluate the clinical necessity, appropriateness, efficacy, or efficiency of a requested health care service or setting. (*See* Def.'s 56.1, at ¶¶ 15-26.) Aetna followed the Plan's stated processes in identifying multiple in-network RTC facilities for A.D.'s care which would be covered by the Plan through Prior Authorization, but also explained that, under those processes, Sandhill would not be approved for coverage. (Def.'s 56.1, at ¶¶ 123-143.) That Aetna followed these processes and the Plan's terms, but Plaintiff chose notwithstanding to admit A.D. for treatment at Sandhill, knowing full well that such treatment would not be covered, does not render the Plan's RTC care benefit "illusory."

Second, even assuming the premise of Plaintiff's argument here were accurate (it is not), it simply has no legal support. Courts in the Second Circuit repeatedly have held that ERISA plan limitations and exclusions for out-of-network providers from coverage are enforceable, even if such limitations and exclusions result in non-coverage of the plaintiff's chosen provider. *See, e.g.*, *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 617-18, 628-29 (2d Cir. 2008) (affirming summary judgment to claims administrators based on their interpretation of plan language limiting out-of-network providers and excluding certain services, even though the court was "sympathetic" to the medical needs of the plaintiff); *Anonymous Oxford Health Plan Member with Id No. 6023604*01 v. Oxford Health Plans (N.Y.), Inc.*, No. 08CIV.943PAC, 2009 WL 667237, at *5 (S.D.N.Y. Mar. 16, 2009) ("The language in Plaintiff's 2003 health plan clearly precludes

coverage for out-of-network, inpatient mental health services. Plaintiff's concern and care for his daughter are entirely commendable, but unfortunately the plan itself is unambiguous and it does not provide for out-of-network coverage."); *DeFrancis v. MVP Health Plan, Inc.*, No. 05CIV7086CMGAY, 2005 WL 8179331, at *3 (S.D.N.Y. 2005) (dismissing benefits claim involving plan that did not cover out-of-network care, even when the only in-network surgery options were more invasive and required a multi-week wait, and the elected out-of-network option was less invasive, recommended by a physician, and immediately available); *Curran v. Aetna Life Ins. Co.*, No. 7:2013cv00289, 2016 WL 3843085 (S.D.N.Y. 2016) (granting summary judgment on plaintiff's benefits claim for out-of-network expenses because plan language stated only in-network benefits were authorized for the at-issue balance billing policy); *Redstone v. Empire Healthchoice HMO, Inc.*, No. 23-CV-2077 (VEC), 2024 WL 967416, at *2 (S.D.N.Y. Mar. 5, 2024) (granting motion to dismiss action on ERISA benefits claim, finding there were "no facts to support [plaintiffs'] conclusion that there was not a single in-network surgeon capable of performing [the] surgery").

The two out-of-circuit cases cited by Plaintiff do not in any way support or even suggest the Plan's RTC benefits were rendered "illusory" as a result of denial of Plaintiff's benefit claim. Unlike in *Jacobs v. Kaiser Found. Health Plan Inc.*, 265 Fed. App'x 652 (9th Cir. 2008), there are no facts in this case upon which to conclude A.D. would have been unable to receive RTC treatment for months had Plaintiff not admitted A.D. into Sandhill. (Def.'s 56.1, at ¶¶ 50, 52, 54 (establishing in-network RTC facilities Center for Discovery, Meridell, and Oak Plains as available to admit A.D. on a similar timeframe, or even sooner than Sandhill). Unlike in *Boyle v. Legacy Health Plan No. 504*, No. 6:20-CV-00705-AA, 2023 WL 6318923 (D. Or. Sept. 28, 2023), the Administrative Record shows Aetna identified multiple in-network RTC providers that could

1106608327\8\AMERICAS

promptly admit and treat A.D., specifically taking into consideration A.D.'s age and diagnoses. (Def.'s 56.1, at ¶¶ 49-55.) That Plaintiff selected a different, uncovered, out-of-network provider instead of the covered in-network options offered by Aetna does not render denial of Plaintiff's benefit claim improper or the RTC benefit provided under Plan terms illusory.

## III. PLAINTIFF'S RELIANCE ON PLAN DEFINITIONS DOES NOT SUPPORT COVERAGE FOR SANDHILL.

Plaintiff's claim that Aetna's benefits denial must be overturned because Sandhill satisfies the Plan's definitions of "Residential Treatment Facility" and "Provider" (Pl. Mem., at 26, 31) is a *non sequitur.* To be sure, the Plan does define the term "Provider," but it does so only in general terms. What is relevant here is that the Plan takes the general defined term "Provider" but then distinguishes between a "Network Provider" and an "Out-of-Network Provider." (*See* Def.'s 56.1, at ¶ 12-14.) Plaintiff's argument that Sandhill met the Plan's definition of "Provider" (which, in fact, at the time of A.D.'s admission, it did not, as discussed below) means nothing standing alone, when the Plan specifically differentiates between providers, and here, there is no dispute that Sandhill was an out-of-network provider. Likewise, Plaintiff's position that Sandhill may have met the Plan's general definition for RTCs conveniently elides other Plan language that clarifies the conditions for RTC coverage, which include, among other things, that the RTC be "licensed by the State Department of Health or its equivalent," that it "provide[] a program of treatment approved by a Physician and the Claims Administrator," and that Aetna approve the facility through the Prior Authorization process. (*See* Def's 56.1, at ¶¶ 20-24.)

Here, none of these requirements were satisfied. Sandhill was out-of-network. (Def.'s 56.1, at ¶ 43.) Aetna's Board-certified Appeal Reviewer did not approve the program of treatment offered by Sandhill, assessing that it did not meet the accepted standard of care. (Def.'s 56.1, at ¶ 141) ("Sandhill holds itself out as basing all aspects of patient care on the Neurosequential Model

-10-

of Therapeutics (NMT), which falls outside this standard [of care]. . . ."). And Plaintiff did not

obtain prior authorization for admission at Sandhill.  (Def.'s 56.1, at ¶ 81.)

Illustrating the fast-and-loose approach taken by Plaintiff to the actual record in this case,

even if the requirement of state licensure in the Plan's definition of "Provider" (*see* DGIP001752)

was the *sine quo non* for approval of benefits – and it is not – Plaintiff represents to the Court that

Sandhill was a licensed facility (Pl. Mem., at 26), a fact which Plaintiff contends Aetna should

have considered when making its claim determinations. But the Administrative Record contains

licenses reflecting that Sandhill received its license from the New Mexico Children, Youth &

Families Department to operate as an RTC *as of November 19, 2023* – more than one year *after*

A.D.'s admission (which was on October 11, 2022), more than one year *after* Aetna's initial claim

denial (October 17, 2022), and even *after* its denial of Plaintiff's first and second level appeals

(December 14, 2022 and February 28, 2023, respectively). (Def.'s 56.1,  at ¶¶ 60; 62; 72; 79.)[2]

## IV.    AETNA'S CONSIDERATION OF ITS NON-CONTRACTED RTC CRITERIA WAS PROPER.

Plaintiff's argument that Aetna improperly considered its Non-Contracted RTC Criteria

when considering Plaintiff's request for single case agreement-based coverage for Sandhill (Pl.

Mem., at 31) is similarly meritless. The Plan specifically grants Aetna as Claims Administrator

authority to consider in its discretion requests for out-of-network provider coverage through the

Prior Authorization process. (Def's 56.1, at ¶¶ 23-26.) The Plan advises participants like Plaintiff

---

[2] Although Plaintiff also cites DGIP000136 – his third-party benefits consultant's first level appeal document – as evidence that Sandhill was licensed by the State of New Mexico, there is no evidence in the Administrative Record supporting that assertion. Given Plaintiff's reliance on his argument that Sandhill was a licensed facility, and given that Plaintiff provided licensure information with his August 13, 2025 Appeal reflecting licensure only as of November 2023, if indeed Sandhill was licensed at the time of A.D.'s admission, it follows that Plaintiff would have provided Aetna with that information. Its absence speaks volumes.

1106608327\8\AMERICAS

that Aetna will follow its utilization review process, which is designed to evaluate the clinical appropriateness of health care services or settings. The Plan leaves open the processes available to Aetna, stating they "may include" "ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review, or similar programs." (Def.'s 56.1, at ¶ 26.)

That the Plan does not specifically list within the Plan document itself all of the Non-Contracted RTC Criteria does not restrict or limit Aetna's use of such criteria where appropriate. Plaintiff cites no law to suggest otherwise, and none exists. Rather, courts within the Second Circuit routinely permit claims administrators like Aetna to utilize external criteria in assessing benefit claims when, as is the case here, the plan grants discretion to the claims administrator to determine benefit claims and how to do so. *See, e.g.*, *Krauss*, 517 F.3d at 620-21, 623, 627-28 (upholding the claims administrator's reliance on a "Bilateral Surgery Policy" in denying coverage of certain charges of the plaintiff's benefit claim, even though such policy was not disclosed in the ERISA plan, because the plan granted the administrator discretion in determining which sources to rely upon in determining claims). As previously noted, the Plan unequivocally grants Aetna discretion to make factual determinations as to benefits under the Plan, and to broadly consider internally developed processes to assess the appropriateness of an out-of-network health care provider otherwise excluded from coverage per Plan terms, such as Sandhill. (Def.'s 56.1, at ¶¶ 8; 26.) Its determination therefore that, even if there were insufficient in-network RTC options, Sandhill would not be approved on a single case agreement basis because it did not meet its Non-Contracted RTC Criteria was both entirely permissible under the Plan and entirely lawful under binding precedent.

1106608327\8\AMERICAS

## V.    PLAINTIFF'S ACA AND NEW YORK INSURANCE-LAW BASED ARGUMENTS REMAIN MISPLACED.

Plaintiff maintains, as Plaintiff has in prior appeals and motion practice, that Aetna's benefit determination should be overturned because Aetna failed to comply with the federal Affordable Care Act ("ACA") and New York Insurance law. (Pl. Mem., at 27-28.) Those arguments have no more merit now than they have had previously (which is to say, none).

This case involves a single claim brought pursuant to ERISA for denial of benefits. ERISA does not incorporate or adopt other federal statutes, and would likely preempt any state law that imposed different requirements. But, in any event, under settled precedent, Plaintiff cannot rely on the provisions of the ACA or New York Insurance law to support a claim for ERISA benefits. (*See* Def.'s Mem., at 23-25.) Simply stated, the regulation promulgated under the ACA cited by Plaintiff (45 C.F.R. § 156.230(a)(2)) does not apply to the Plan or this litigation. (Def. Mem., at 24; *see also* ECF No. 36-1, at 20-21.) Nor does the New York Insurance law provide any support for Plaintiff's ERISA benefits claim. (*See* Def. Mem. 24-25; ECF No. 36-1, at 21-23 (citing *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) (considering and rejecting an argument nearly identical to Plaintiff's New York Insurance Law-based argument)).

## VI.    PLAINTIFF'S MISREPRESENTATIONS OF THE ADMINISTRATIVE RECORD DO NOT RENDER AETNA'S CLAIM DENIAL ARBITRARY AND CAPRICIOUS.

Plaintiff complains that Aetna's November 11, 2025 Determination did not provide a "full and fair review" because it was not supported by substantial evidence[3] and because it did not

---

[3]  Plaintiff conflates the "supported by substantial evidence" requirement in a benefits determination reviewed under the arbitrary and capricious standard with ERISA's "full and fair review" requirement. Defendant extensively addresses how and why Aetna's November 11, 2025

respond to all issues and arguments raised in Plaintiff's August 13, 2025 Appeal. (Pl. Mem., at 28-31.) More specifically, Plaintiff claims Aetna did not dispute facts which showed the purported inadequacy of in-network facilities and dismissed opinions of health care providers without offering contrary evidence. These arguments, however, fail to hold up when the full content of Aetna's thorough, 15-page, single-spaced November 11, 2025 Determination is properly considered. Moreover, Plaintiff cites no binding caselaw addressing the standards for assessing whether a claims administrator's determination reflects a full and fair review as required by 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

Plaintiff's allegations relating to the litany of issues or arguments supposedly ignored by or not specifically addressed in Aetna's November 11, 2025 Determination both misapprehends what is required under ERISA for a full and fair review and misstates or outright misrepresents the November 11, 2025 Determination. Far from requiring an exhaustive examination of every issue or argument raised by a claimant on appeal, the statute requires only a "meaningful dialogue" between the claims administrator and participant; the administrator need not provide "meaningless catalogs of every conceivable reason that the cost in question might not be reimbursable." *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 288 (2d Cir. 2000) (noting that to hold otherwise would be at the risk of "the loss of some of the usefulness" of the ERISA notice requirement and appeals procedure). Rather, full and fair review is provided if the administrator provides the specific reasons for the benefit denial, and reasonably takes up the aspects of the claim as articulated by the claimant. *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 87 (2d Cir. 2009); *see also DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 480 ("In the denial of the

---

Determination is supported by substantial evidence in its cross-motion for summary judgment. *See* Def. Mem., 19-23.

1106608327\8\AMERICAS

appeal, [defendant] again summarized the information it considered in evaluating [plaintiff's] claim and explained that it was denying him LTD benefits… the evidence unequivocally demonstrates that [p]laintiff had a full and fair opportunity to address the accuracy and reliability of his claim.").

### A.    Aetna Provided Full and Fair Review of Plaintiff's Benefits Claim.

Viewed holistically, there is little room for credible debate that Aetna's November 11, 2025 Determination took up Plaintiff's arguments and summarized the information it considered in evaluating Plaintiff's claim, thereby engaging in the requisite "meaningful dialogue" with Plaintiff. (Def.'s 56.1, at ¶¶ 113-144.) Plaintiff, however, picks at the edges, endorsing the rejected notion that Aetna was required to address each and every issue and argument advanced in his appeal in order to provide full and fair review. The cases cited above explain that level of granularity is simply not required, lest ERISA benefit denials become "meaningless catalogs of every conceivable reason" to deny a claim. *Juliano*, 221 F.3d at 288.

Objectively considered, Aetna's November 11, 2025 Determination reflects that it provided a thorough review of Plaintiff's appeal, meeting if not significantly exceeding the "meaningful dialogue" required. Nonetheless, to illustrate the fallaciousness of Plaintiff's contentions on this point, the following non-exhaustive list provides examples of conclusory allegations raised by Plaintiff regarding the scope and thoroughness of Aetna's review, and how they are belied by the facts contained in the Administrative Record.

- Plaintiff contends Aetna did not cite or address Plan language arguments raised by Plaintiff regarding "residential treatment facilities" and "providers." (Pl. Mem., at 16-17). Not so. *See* DGIP001864-67; 1953; 1963-67 (addressing "in-network providers," "out-of-network providers," "prior authorization," "Covered Health Services;" and "residential treatment facilities").

1106608327\8\AMERICAS

- Plaintiff contends Aetna did not explain its application of the Non-Contracted RTC Criteria. (Pl. Mem., at 17). Not so. *See* DGIP001864-66; 1953; 1961-62 (referencing the use of the Non-Contracted RTC Criteria per the utilization review process).

- Plaintiff contends Aetna did not address Plaintiff's ACA network insurance arguments for coverage. Not so. *See* DGIP001953 (explaining why ACA requirements are inapplicable to the Plan).

- Plaintiff contends Aetna did not dispute facts provided by Plaintiff demonstrating in-network RTCs were unavailable and inappropriate because Plaintiff did not receive return phone calls, or due to A.D.'s age, long wait times, or because the facility focused on short-term assessment. Not so. *See* DGIP001954; 1956-57 (explaining, as to Meridell, phone calls with admissions, acceptance of a 10-year-old, intake expectations, and duration of stay based upon intensive long term clinical treatment goals); DGIP001958-59 (same as to Oak Plains); DGIP001959 (same as to San Marcos); DGIP001960 (same as to Center for Discovery).

- Plaintiff contends Aetna failed to properly respond to safety issues raised, for example with regard to two fatal overdoses at Oak Plains. (Pl. Mem., at 21). Not so. *See* DGIP001958 (explaining the reported patient deaths occurred *after* A.D.'s admission to Sandhill (and *after* Plaintiff's benefits claim had been denied)).

- Plaintiff contends Aetna failed to address facts regarding direct transfer from Huntsman to residential treatment such that A.D. could not return home in between stays. (Pl. Mem., at 22.) Not so. *See* DGIP001956 (concluding each of the four in-network facilities were able to accept A.D. "within a reasonable period of time" and explaining that Aetna routinely coordinates with hospitals and RTC facilities such that Aetna would align a transfer "from Huntsman directly to a residential treatment facility to allow for bed availability," based upon wait lists).[4]

Here, the Administrative Record conclusively establishes that Aetna adequately considered the

issues, arguments, and information supplied by Plaintiff in his appeal, and that it conducted a full

---

[4] Furthermore, Aetna's Care Advocate advised Plaintiff that each of Oak Plains, Meridell, and Center for Discovery were available to admit A.D. within a few weeks from September 19, 2022. (Def.'s 56.1, at ¶ 50 (3-4 weeks from September 19, 2022, as to Center for Discovery); ¶ 52 (two weeks from September 21, 2022, as to Meridell); ¶ 54 (7-10 days from September 20, 2022, as to Oak Plains)). Notably, A.D. was not admitted to Sandhill until October 11, 2022 (Def.'s 56.1, at ¶ 60), nearly three weeks after these in-network RTCs had been identified for Plaintiff. Plaintiff's argument that no in-network RTC was available to promptly admit A.D., in comparison to Sandhill, is plainly contradicted by the Administrative Record.

and fair review of that appeal. Plaintiff's conclusory allegations and misrepresentations to the contrary should be disregarded.

> ### B. Aetna Appropriately Considered the Opinions of A.D.'s Health Care Providers Submitted in 2025 in Support of Plaintiff's Post-Remand Appeal but Relied On the Opinion of its Qualified Appeal Reviewer.

Plaintiff criticizes Aetna's November 11, 2025 Determination for purportedly dismissing the opinions expressed in June and July 2025 by Dr. Russell Hyken and Jennifer Taylor which Plaintiff provided with his August 13, 2025 Appeal, and for instead relying on the opinions of its Appeal Reviewer. (Pl. Mem., at 20-21; 30.) As elsewhere in Plaintiff's Motion, Plaintiff's allegation of this supposed defect in Aetna's determination is unsupported by any case law, and more fundamentally, is belied by the Administrative Record.

Binding precedent confirms that a claims administrator is not obligated to afford any special deference to the opinions of a plaintiff's treating providers. *Hobson*, 574 F.3d at 85 ("As the Supreme Court has explained, 'courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation'") (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). *Hobson* also establishes that a claims administrator may rely on the opinion of its engaged, non-treating medical reviewer that is Board-certified in the relevant specialty area. *Hobson*, 574 F.3d at 90.

As noted above, the letters Plaintiff accuses Aetna of ignoring were submitted with his August 13, 2025 Appeal. Those letters were authored in 2025, nearly three years after A.D.'s admission to Sandhill. Given the passage of time, it is and was reasonable for Aetna to question the *bona fides* of them, in particular where, as here, those letters express opinions that contradict

-17-

assessments provided earlier in time. *Hines v. First Unum Life Ins. Co.*, 14 Civ. 2961 (ER), 2016 WL 1246483, at *14 (S.D.N.Y. Mar. 23, 2016) ("[The defendant] and its reviewing doctors were well within their discretion to afford more weight to evidence most contemporaneous with the critical dates of [the plaintiff's treatment]; it was reasonable to discount the probative nature of arguably contradictory notes written months later") (collecting cases).

Here, in yet another exaggeration if not outright misrepresentation of the Administrative Record, Plaintiff tells the Court that A.D.'s "entire medical team" recommended Sandhill. (Pl. Mem., at 15, 18.)  Pre-remand, A.D.'s providers provided letters in support of RTC care, but none of those providers recommended Sandhill – or any other RTC – nor did they advise against any of the Plan's in-network RTCs (Def.'s 56.1, at ¶ 32.)  But nearly three years after his admission, several of those providers opined that Sandhill was the only acceptable RTC provider, nationwide, for A.D.'s care in 2022. (Def.'s 56.1, at ¶ 110.)[5] Per settled law, Aetna need not afford special weight to these providers' *post hoc* assertions in support of Sandhill, particularly when they made no such assertions in any prior appeals. *Hobson*, 574 F.3d at 85; *Hines*, 2016 WL 1246483, at *14.

Putting aside Plaintiff's exaggerations, the Administrative Record in fact does show Aetna reviewed the letters submitted with Plaintiff's August 13, 2025 Appeal and expressly considered the opinions of such providers. (*See* Def.'s 56.1, at ¶¶ 123, 128-136, 142.)  Plaintiff's conclusory allegations that Aetna "unreasonably dismissed" their opinions, and that the Appeal Reviewer

---

[5] One of the letters submitted, from Dr. Russell Hyken, dated June 27, 2025, notes that he did not even begin treating A.D. until the spring of 2023, which was months after Plaintiff rejected Aetna's in-network options in favor of Sandhill. Yet Dr. Hyken nonetheless opined that Sandhill was one of only two RTCs in the entire United States that was an appropriate placement for A.D. in October 2022. *See* DGIP001942 ("I began evaluating [A.D.] and working with [his] family in spring 2023. I was not part of the team that referred [A.D.] and his family to Sandhill Center.") It was entirely reasonable for Aetna's Appeal Reviewer not to afford weight to the opinion of a medical provider who did not even treat A.D. until months after his admission to Sandhill as to what facilities were appropriate for his care months earlier when he was not under that provider's care.

1106608327\8\AMERICAS

improperly opined on placement of A.D. without evaluating him or the facilities, are egregiously misrepresentative of the Administrative Record.

The November 11, 2025 Determination specifies the qualifications of the Appeal Reviewer as a licensed psychiatrist who is Board certified in child and adolescent psychiatry (Def.'s 56.1, at ¶¶ 114.) The Appeal Reviewer relied on their specialty in child and adolescent psychiatry, personal review of the at-issue facilities, A.D.'s medical records, the letters from A.D.'s parents and health care providers, and the Administrative Record in full, in conducting the review. (Def.'s 56.1, at ¶ 128.)[6] The November 11, 2025 Determination explains how the Appeal Reviewer considered the licensure, credentialing, and clinical program offerings of Aetna's in-network RTC providers and A.D.'s specific clinical presentation, along with the providers' concerns with the appropriateness of Meridell, Oak Plains, San Marcos, and Center for Discovery for A.D.'s care (including due to A.D.'s age, the therapeutic focus, or clinical milieu). (Def.'s 56.1, at ¶¶ 129-136, 142.) The November 11, 2025 Determination also explains the Appeal Reviewer's concern with Sandhill's treatment approaches as outside the accepted standard of care. (Def.'s 56.1, at ¶ 141.)

That the Appeal Reviewer did not actually provide direct patient care to A.D. in no way diminishes the weight of the Appeal Reviewer's extensive qualifications and thorough analysis of Aetna's RTC network and of Sandhill as an out-of-network provider. *Hobson*, 574 F.3d at 85; *Hines*, 2016 WL 1246483, at *14. Per *Hobson*, the Appeal Reviewer was qualified and appropriately considered the full scope of the Administrative Record, including the arguments advanced and materials submitted by Plaintiff.

---

[6] As yet another supposed flaw in the November 11, 2025 Determination, Plaintiff takes issue with Aetna's nondisclosure of the identity of the Appeal Reviewer, but that accusation, like others made by Plaintiff, is untethered to any legal support for the proposition that Aetna was obligated to provide the Appeal Reviewer's name. (Pl. Mem., at 21-22.)

1106608327\8\AMERICAS

## **CONCLUSION**

The Court's remand in this case directed Aetna to provide a full and fair review of Plaintiff's claim for benefits, including Plaintiff's request for a single case agreement for Sandhill. The Administrative Record demonstrates that Aetna complied in full with that directive, but it came to the same conclusion on Plaintiff's benefits claim as before:

- multiple clinically appropriate in-network RTCs were available to accept A.D. for treatment directly from hospitalization;

- Plaintiff instead elected to admit A.D. to Sandhill;

- Sandhill was an out-of-network provider;

- the Plan does not provide benefits for services provided by an out-of-network provider;

- a single case agreement for Sandhill as an out-of-network provider was not appropriate because clinically appropriate, available in-network options existed; and

- even if there were no clinically appropriate in-network RTCs available to accept A.D. direct from hospitalization, approval of Sandhill on a single case agreement basis was not available or appropriate because Sandhill was not licensed and did not meet Aetna's Non-Contracted RTC Criteria.

Aetna's claim determination should be upheld. Defendant respectfully requests the Court deny Plaintiff's Motion for Summary Judgment and grant its cross-Motion for Summary Judgment.

DATED:  February 27, 2026

Respectfully submitted,

 */s/ Daniel B. Pasternak*
Daniel B. Pasternak (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, Arizona 85016
T:  (602) 528-4000
F:  (602) 253-8129
daniel.pasternak@squirepb.com

1106608327\8\AMERICAS

Paul D. Erian
SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, New York  10036
T:  (212) 872-9800
F:  (212) 872-9815
paul.erian@squirepb.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** contains 5,830 words (not including the case caption, table of contents, table of authorities, signature block, or required certificates), as indicated by the word count function of Microsoft Word, the word-processing program used to prepare the document, and therefore complies with the word-count limitation in Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

*/s/ Daniel B. Pasternak*

1106608327\8\AMERICAS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 27, 2026, I caused a copy of the foregoing

**DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** to be served via

ECF/CM filing on the ECF registrants for this case.

*/s/ Tammy Gougeon*