UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Doe,

                    Plaintiff,

v.

Deloitte LLP Group Insurance Plan,

                    Defendant.

Civil Action No. 1:23-cv-04743-JPC

**DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

**Judge John P. Cronan**

In accordance with Local Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendant Deloitte LLP Group Insurance Plan ("Defendant") responds to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Doc. 56-2) ("Plaintiff's SOF" or "Pl. SOF").

A.    <u>ERISA Plan</u>

1.    A.D. is a covered dependent under the Plan pursuant to his father's employment with the plan sponsor, Deloitte LLP. DGIP1651-1757.

**Defendant's Response**: Undisputed.

2.    The Plan is described in the "Aetna Open Access Select EPO Plan Summary Plan Description (SPD)" (hereinafter "SPD"). DGIP1651.

**Defendant's Response**: Undisputed. (Defendant also refers herein to the Aetna Open Access Select EPO Plan, DGIP001651-1757, as the "Plan.")

3.    The SPD provides general information about the Plan and does not cover all provisions, limitations, and exclusions. DGIP1655.

**Defendant's Response**: Defendant denies Paragraph 3 to the extent it mischaracterizes and misrepresents the Plan and its terms, which speak for themselves. DGIP001651-1757; *see also* Paragraphs 4 and 5 of Defendant Deloitte LLP Group Insurance Plan's Statement of Material Undisputed Facts Pursuant to Local Rule 56.1 (Doc. 57-2), filed with Defendant's Motion for Summary Judgment (Docs. 57; 57-1) (""Defendant's SOF" or "Def. SOF").

4.    The SPD states that it does not provide benefits for out-of-network providers except on a limited basis. *i.e.* DGIP1663, 1669.

**Defendant's Response**: Defendant denies Paragraph 4 to the extent it misstates the Plan's terms with respect to out-of-network coverage. The Plan expressly states: "<u>[o]ut-of-network care is not a covered expense in this Plan.</u>" DGIP001663 (emphasis in original). Neither page of the record cited in Paragraph 4 states that the Plan provides benefits for out-of-network providers "on a limited basis." *See also* Def. SOF at ¶¶ 16; 83.

5.    The SPD does not list services from out-of-network providers as an exclusion. DGIP1705-1706.

**Defendant's Response**: Defendant denies Paragraph 5 to the extent it misstates the Plan's terms with respect to out-of-network coverage, which speak for themselves. The Plan expressly states: "<u>[o]ut-of-network care is not a covered expense in this Plan.</u>" DGIP001663 (emphasis in original). *See also* Def. SOF at ¶ 16.

6.    The SPD provides benefits for residential treatment for patients of patients [sic] diagnosed with mental health disorders. DGIP1682.

**Defendant's Response**: Undisputed, but only to the extent such residential treatment is provided by an in-network provider and approved through the prior authorization process. *See* DGIP001663; 1665; 1668-69; 1682-84. *See also* Def. SOF at ¶¶ 17-26.

1106568954\4\AMERICAS

7.    The SPD requires that residential treatment facilities must be "appropriately licensed by the state Department of Health or its equivalent." DGIP1682.

**Defendant's Response**: Undisputed.

8.    The SPD defines a "provider" as "a facility licensed or certified by law to provide health care services to you." DGIP1752.

**Defendant's Response**: Undisputed.

9.    The SPD requires prior authorization before receiving services from an out-of-network provider and for residential treatment. DGIP1667, 1668.

**Defendant's Response**: Undisputed. *See also* Def. SOF at ¶¶ 18-19; 24-26.

B.    A.D.'s Mental Illness and Treatment History

**Defendant's Preliminary Response**: Preliminarily responding to the entirety of Section B of Plaintiff's SOF (specifically Paragraphs 10 through 54 therein), Defendant states that the facts alleged in this Section are not material to Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"). Paragraphs 27 through 31 of Defendant's SOF assert that it is undisputed that (1) prior to and continuing into 2022, A.D. had significant, complex, long-term mental health issues; (2) A.D. received treatment for these conditions from multiple health care providers; (3) A.D. was hospitalized in September 2022 for acute mental health issues; and (4) A.D.'s health care providers recommended A.D. receive continuing treatment at a residential treatment center ("RTC") following A.D.'s discharge from hospitalization in September 2022. *See* Def. SOF at ¶¶ 27-31. Accordingly, there is no genuine issue to be tried relating to A.D.'s medical history, the severity of A.D.'s mental health condition(s), A.D.'s treatment history, or whether RTC services for A.D. were medically necessary following his hospitalization in September 2022. This being the case, Plaintiff's inclusion of the extensive facts in Section B (Paragraphs 10 through 54) of Plaintiff's

1106568954\4\AMERICAS

SOF, exhaustively chronicling A.D.'s mental health history and treatment, is neither material to Plaintiff's Motion nor sets forth facts as to which there is a genuine issue to be tried.

10.      In October 2022, A.D. was a 10-year-old boy with mental health diagnoses including ASD, major depressive disorder, attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, mood dysregulation disorder, and oppositional defiant disorder. DGIP0130-0131, 0146, 0150.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

1.      Early Childhood Development and Diagnoses

11.      At age 3, A.D. was diagnosed with ASD and began receiving applied behavior analysis ("ABA") therapy 20 to 25 hours per week. DGIP0131, 1857.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

12.      At age 5, A.D. was diagnosed with ADHD. DGIP0131.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

13.      At age 7, A.D.'s aggressive incidents increased and much of ABA therapy became focused on maintaining safety. DGIP0131.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

2.      Hospitalizations

14.      In March 2019, Plaintiff and his wife took A.D. (age 7) to the emergency department due to increasing violence at home. DGIP0131, 0182.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

15.      A.D. was hospitalized in the general pediatric unit awaiting a psychiatric bed. DGIP0131, 0182.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

1106568954\4\AMERICAS

16.    A.D. was emotionally dysregulated and alternatively cried for and attached his mother: "Furniture and equipment had to be removed from his room. He attacked the social worker when she asked to speak with his mother outside the room." DGIP0131, 0182.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

17.    A.D. was transferred to a psychiatric hospital and hospitalized for nine weeks due to ongoing concerns about his ability to remain safe. DGIP0131, 0181.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

18.    A.D.'s outbursts gradually decreased but he "continued to endorse thoughts of killing certain staff members and made lists of those he wanted to hurt." DGIP0182.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

19.    Following hospitalization, A.D. was admitted to residential treatment for approximately six weeks. DGIP0131, 0182.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

20.    In residential treatment, A.D. did not act out. DGIP1816. However, "every time he spoke to his parents he would discuss how he wanted to kill certain staff members and would describe how he would do so." *Id.*

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

21.    Following residential treatment, in June 2019, A.D. was admitted to the University of Utah's Huntsman Center ("Huntsman") Comprehensive Assessment and Treatment ("CAT") Program for diagnostic assessment and recommendations for treatment. DGIP0131, 0181.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

22.    The reason for hospitalization was stated as: "Risk of harm toward others." DGIP0181.

1106568954\4\AMERICAS

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

23.    It was reported that over the past year, A.D.'s tantrums became so severe that his mother and brother had to lock themselves in their rooms to stay safe. DGIP0181.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

24.    A.D. hit, kick, bit, and tried to strangle others and threatened to kill his mother, brother, and in-home therapists. DGIP0181.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

25.    The behaviors occurred during emotional outbursts but A.D. also hurt others when he was calm. DGIP0181.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

26.    A.D. reported seeing and hearing things that do not exist. DGIP0181-0182.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

27.    A.D. was hospitalized for his safety and the safety of others. DGIP0184.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

28.    During his treatment, A.D. did not demonstrate physical aggression but did make several statements about wanting to kill or harm staff or peers including wanting to shoot a staff member in the heart and writing a "death list" which described wanting to hurt specific staff members. DGIP0200.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

29.    Following the CAT Program, A.D. stepped down to the University of Utah's Kidstar partial hospitalization, followed by outpatient treatment, followed by hospitalization again. DGIP0131.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

1106568954\4\AMERICAS

30.    During this time, Plaintiff and his family relocated to Salt Lake City, Utah, for A.D. to attend the partial hospitalization while living at home. DGIP0131, 0208.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

31.    In February 2021, A.D.'s condition worsened and he was hospitalized at Huntsman three times over the following six months. DGIP0131.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

32.    When A.D. attempted to return to in-person school in the fall of 2021, he had multiple daily incidents of "out-of-control" and aggressive behaviors escalated continuously including property destruction, physical aggression, and threats toward peers and adults. DGIP0131-0132, 1786, 1812.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

33.    A.D. tried to cut a peer with scissors, punched other children at summer camp, tried to strangle his behavioral therapist, threw things at them, threw a four-year-old across a sport court, and hit a six-year-old while on vacation. DGIP0157, 1800.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

34.    A.D. had been eloping from his 1:1 aide at school and having outbursts of screaming and threatening to kill himself at recess. DGIP0156.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

35.    A.D. has also hit and tried to strangle babysitters. DGIP1800.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

36.    ABA therapy was inconsistently provided due to the provider being unable to locate staff that were willing to treat A.D. due to his aggression. DGIP0157, 1786, 1812.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

1106568954\4\AMERICAS

37.     According to the ABA therapist, A.D. "displayed malicious behavior and can often hold onto negative feelings for an extended period of time without indication or sign of anger; He does not display remorse once the malicious act has been committed." DGIP1858.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

38.     By September 2022, A.D.'s condition further escalated. DGIP0132, 0156, 1812.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

39.     A.D. was physically violent with his parents and brother and he had homicidal and suicidal ideation at home and school. DGIP0132, 0156, 1812.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

40.     A.D. had suicidal intent with a plan to drown himself in a pool, jump out a window, or strangle himself. DGIP0156, 0157.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

41.     A.D. regularly banged his head, punched and kicked his mother, threatened his brother with a knife, repeatedly slapped his mother and brother out of the blue, attempted to strangle his mother, and choked a child at school. DGIP1175, 0156, 0158.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

42.     A.D.'s brother, B.D. age 7, was psychiatrically hospitalized due to trauma from his brother's aggression, which included A.D. punching him in the face causing his nose to bleed. DGIP0156-0158, 1175, 1797.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

43.     Plaintiff and his wife were afraid of A.D. DGIP1797.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

1106568954\4\AMERICAS

44.    On September 6, 2022, A.D. was hospitalized at the University of Utah's Huntsman Mental Health Institute ("Huntsman"). DGIP0155, 1175.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

45.    This was A.D.'s seventh admission to Huntsman. DGIP0156.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

46.    Huntsman provided a timeline of the major milestones of A.D.'s life including treatment history, diagnosis, and interventions. DGIP0170-0172.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

47.    The Huntsman treatment team and outpatient providers unanimously recommended long-term residential treatment for A.D. DGIP0130, 0132, 0146, 0148, 0152, 0154, 0167.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

48.    A.D. reported that he was at Huntsman because "something really sudden happened and I got mad at my brother, and I got out a steak knife and told him I was going to kill him." DGIP0155.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

49.    At this time, A.D.'s providers and caregivers withdrew their services. DGIP0131.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

50.    The ABA provider withdrew its services because their staff did not feel safe after prior incidents with A.D. DGIP1786.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

51.    The ABA provider raised concerns that A.D.'s behavior may be a threat to B.D. as well as Plaintiff and his wife. DGIP1786.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

1106568954\4\AMERICAS

52.    A.D.'s nanny service determined that the nanny needed to leave the home for her safety. DGIP1787.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

53.    The treatment team at Huntsman and two outpatient clinical psychologists recommended that A.D. be admitted to residential treatment directly from the hospital, without any time at home, for the safety of A.D.'s family. DGIP0146, 0148, 0154.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

54.    The care plan was to have A.D. transferred and admitted to residential treatment within two weeks from September 15, 2022. DGIP1797.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

C.    <u>Aetna In-Network Providers Were Unavailable and/or Inappropriate for A.D.'s Residential Treatment</u>

56.    Plaintiff and his wife contacted Aetna for assistance locating a residential treatment facility. DGIP1812.[1]

**Defendant's Response**: Undisputed.

57.    Plaintiff and his wife informed Aetna that they were afraid that A.D. would hurt a family member. DGIP1812.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

58.    Plaintiff and his wife enlisted the aid of a placement consultant to assist in reviewing the residential treatment facilities offered by Aetna. DGIP0132.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

---

[1] Plaintiff's SOF does not contain a Paragraph 55.

1106568954\4\AMERICAS

59.     Plaintiff and his wife searched for a facility that would meet their son's immediate and long-term needs and satisfy the treatment recommendations: long-term residential treatment for a 10-year-old boy with several mental health diagnoses, including ASD, and history aggressive and violent behaviors towards family, peers, and staff. DGIP0132.

**Defendant's Response**: Undisputed.

60.     Plaintiff advised Aetna that A.D. is "highly triggered by children who have low IQ and are very low functioning and is likely to hurt them." DGIP1835.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

61.     Discovery Mood, TX (aka Center for Discovery) was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: 2-4 week wait, did not treat children with ASD, A.D. was too young for their program, did not accept children under age 11, short-term stabilization and assessment, not a long-term program, placed patients in mixed milieu (patients diagnosed mental health disorders placed with patients diagnosed with substance abuse disorder). DGIP0132, 1775, 1815, 1854.

**Defendant's Response**: Defendant denies Paragraph 61 to the extent it mischaracterizes and misstates the record and incorporates Paragraphs 40-41; 47; 49-51; 122-128; and 135-136 of Defendant's SOF and the citations to the record set forth in those paragraphs.

62.     Meridell, TX was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: A.D. was too young for their program, did not accept children under age 11, did not respond to telephone calls from Plaintiff. DGIP0132, 1825.

**Defendant's Response**: Defendant denies Paragraph 62 to the extent it mischaracterizes and misstates the record and incorporates Paragraphs 40-41; 47; 52-53; and 122-130 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

63.    Kennedy Krieger, MD was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: hospitalization only, not a residential treatment program. DGIP0132, 1817.

**Defendant's Response**: Undisputed that Aetna determined that Kennedy Krieger Institute was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

64.    Oak Plains Academy, TN was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: five week wait, short term program, allegations of children harmed in the facility, accepts patients with very low IQ which did not describe A.D. DGIP0132, 1765.

**Defendant's Response**: Defendant denies Paragraph 64 to the extent it mischaracterizes and misstates the record and incorporates Paragraphs 41; 47; 54-55; 122-128; and 131-132 of Defendant's SOF and the citations to the record set forth in those paragraphs.

65.    San Marcos Treatment Center was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: six to eight week wait, did not respond to telephone calls from Plaintiff, allegations of child abuse and riots. DGIP0133, 1764, 1765.

**Defendant's Response**: Defendant denies Paragraph 65 to the extent it mischaracterizes and misstates the record and incorporates Paragraphs 41; 47; 122-128; and 133-134 of Defendant's SOF and the citations to the record set forth in those paragraphs..

66.    North Springs Behavioral Health, VA was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: did not accept children outside of Virginia, allegations of children harmed in the facility including a child who died during improper restraints, no response to Aetna's inquiry. DGIP0133, 1765, 1781, 1787.

1106568954\4\AMERICAS

**Defendant's Response**: Undisputed that Aetna did not identify North Springs Behavioral Health as an available in-network provider to provide residential treatment to A.D. but Defendant denies Paragraph 66 to the extent it mischaracterizes and misstates the record, which indicates that Aetna was unable to confirm North Springs Behavioral Health's availability to admit A.D. because Plaintiff refused to reach out to the facility. *See* Paragraphs 40 and 45-46 of Defendant's SOF and the citations to the record set forth in those paragraphs.

67.    Texas Neurorehab was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: would not accept because A.D.'s IQ was too high, facility worked with developmentally delayed patients and A.D. would not be appropriate. DGIP1764.

**Defendant's Response**: Undisputed that Aetna determined that Texas NeuroRehab was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

68.    Provo Canyon School was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: A.D. was too young for their program. DGIP1766.

**Defendant's Response**: Undisputed that Aetna determined that Provo Canyon School was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

69.    Willow Springs was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: A.D. was too young for their program, minimum age is 12. DGIP1768.

1106568954\4\AMERICAS

**Defendant's Response**: Undisputed that Aetna determined that Willow Springs was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

70.     Pathlight Mood and Anxiety Center was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: A.D. was too young for their program, minimum age is 12. DGIP1776.

**Defendant's Response**: Undisputed that Aetna determined that Pathlight Mood and Anxiety Center was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

71.     BellFaire was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: waitlist extends "well into 2023." DGIP1792.

**Defendant's Response**: Undisputed that Aetna determined that Bellfaire JCB was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

72.     Millcreek of Pontotoc was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: no response to Aetna's inquiry. DGIP1793.

**Defendant's Response**: Undisputed that Aetna did not identify Millcreek on Pontatoc as a suitable in-network provider to provide residential treatment to A.D because Aetna did not receive a response from the facility. *See* Paragraphs 40 and 45-46 of Defendant's SOF and the citations to the record set forth in those paragraphs.

73.     Harbor Point Behavioral Health Center was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: unable to accommodate a patient with an ASD diagnosis. DGIP1807.

1106568954\4\AMERICAS

**Defendant's Response**: Undisputed that Aetna determined that Harbor Point Behavioral Health Center was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

74.    Youthcare was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: A.D. was too young for their program, minimum age is 11. DGIP1818.

**Defendant's Response**: Undisputed that Aetna determined that Youthcare was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

75.    Great Circle was inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons: six to eight month wait. DGIP1839.

**Defendant's Response**: Undisputed that Aetna determined that Great Circle was either unsuitable or unavailable to admit A.D. for RTC care. *See* Paragraphs 40 and 45 of Defendant's SOF and the citations to the record set forth in those paragraphs.

76.    Aetna conceded it had no network provider within 100 miles of Plaintiff's home. DGIP 1797.

**Defendant's Response**: Defendant denies Paragraph 76 to the extent it misrepresents and misstates the cited portion of the record, which states that Aetna's Care Advocate ("CA"), Kevin Guitierrez Barrios, "was informed by [Plaintiff] that there are no INN [in-network] RTC facilities within 100 miles of member." *See* DGIP001797. Defendant does not dispute that no in-network RTCs suitable or available for A.D.'s care were located within 100 miles of Plaintiff's residence, but states that this fact is not material to Plaintiff's Motion.

1106568954\4\AMERICAS

77.     Then Aetna conceded it had no network provider within the entire state of Utah. DGIP1792.

**Defendant's Response**: Defendant denies Paragraph 77 to the extent it misrepresents and misstates the cited portion of the record, which states that Aetna's CA, Kevin Guitierrez Barrios, "sent an email to [Plaintiff] stating that the results of the provider search did not yield anything. CA asked if [Plaintiff] were willing to enroll [A.D.] out of state." *See* DGIP001792.

78.     Then Aetna emailed Plaintiff and his wife on September 20, 2023 stating that "the results of the provider search did not yield anything" and would they be "willing to enroll the member in RTC out of state." DGIP1792.

**Defendant's Response**: Undisputed that Aetna's CA, Kevin Guitierrez Barrios, "sent an email to [Plaintiff and his wife] stating that the results of the provider search did not yield anything. CA asked if [Plaintiff and his wife] were willing to enroll [A.D.] out of state." The date of this email is September 12, 2022, not September 20, 2023 as stated in Paragraph 78. *See* DGIP001792.

79.     Plaintiff found two residential facilities that were appropriate for A.D. and would accept him as a patient: Sandhill and Intermountain Academy. DGIP0133.

**Defendant's Response**: Denied to the extent Plaintiff asserts that Sandhill was "appropriate" for A.D., as that contention is not fact but rather is improper argument as well as inadmissible hearsay, and is supported only by citation to Plaintiff's first level claim appeal authored by Plaintiff's third-party appeal consultant. *See* Paragraphs 43; 58; 81-84; 137-143 of Defendant' SOF and citations to the record set forth in those paragraphs. Further denied to the extent Paragraph 79 asserts that Intermountain Academy would accept A.D. as a patient. *See* Paragraph 44 of Defendant' SOF and citations to the record set forth in that paragraph.

80. Intermountain Academy declined to accept A.D. because his level of violence was too high. DGIP0133.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion. *See also* Paragraph 44 of Defendant's SOF and citations to the record set forth in that paragraph.

81. Sandhill which would [sic] accept A.D. as a patient and was in New Mexico which was driving distance from their home in Utah. DGIP0133.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

82. Sandhill is fully licensed as a residential treatment center by the State of New Mexico. DGIP0136, 0890.

**Defendant's Response**: Paragraph 82 is supported by citation only to Plaintiff's first level claim appeal and second level claim appeal, each authored by Plaintiff's third-party appeal consultant, which state: "Sandhill is fully licensed as a residential treatment center by the state of New Mexico." That statement is hearsay and is not supported by any non-hearsay evidence outside of Plaintiff's own argument, and therefore it should be disregarded by the Court for purposes of Plaintiff's Motion. Further responding, Defendant states that Paragraph 82 does not establish when Sandhill was "licensed as residential treatment center by the State of New Mexico," and further states that evidence of Sandhill's licensure by the State of New Mexico provided by Plaintiff with Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand reflects that the State of New Mexico issued two licenses Sandhill to provide residential treatment services at two different addresses on November 19, 2023, more than one year after A.D.'s admission to Sandhill and more than one year Plaintiff's submission of a claim for benefits related to A.D.'s treatment at Sandhill. *See* DGIP001921; 1949-1950; *see also* Paragraphs 43; 58; 81-84; and 137-143 of Defendant's SOF and the citations to the record set forth in those paragraphs.

83.     On October 3, 2022, Aetna denied further benefits for A.D.'s hospitalization at Huntsman. DGIP1826.

**Defendant's Response**: Paragraph 83 is supported by citation to an October 3, 2022 email sent by Plaintiff to Aetna's CA, Kevin Gutierrez Barrios, which states, in pertinent part, "Aetna has denied [A.D.'s] continued stay at Huntsman and the matter is going to peer-to-peer review today." That statement is not supported by any record evidence outside of Plaintiff's own argument, and therefore it should be disregarded by the Court for purposes of Plaintiff's Motion. Further responding, Defendant states that the fact asserted in Paragraph 83 is not material to Plaintiff's Motion.

84.     Plaintiff informed Aetna that A.D. was not safe out of the hospital and not safe to return home. DGIP1825-1826.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

85.     Plaintiff arranged for A.D.'s admission to Sandhill on October 11, 2022, the soonest he could be admitted. DGIP1826.

**Defendant's Response**: Undisputed that Plaintiff decided to admit A.D. to Sandhill on October 11, 2022. To the extent that Paragraph 85 asserts that October 11, 2022 was "the soonest [A.D.] could be admitted" to Sandhill, the cited portion of the record does not support that asserted fact, as it states only "Sandhill is accepting [A.D.] at 12 noon on Tuesday 11 October 2022." *See* DGIP001826; *see also* Paragraphs 59 and 60 of Defendant's SOF and the citations to the record set forth in those paragraphs.

D.     <u>A.D.'s Admission to Residential Treatment and Request for Benefits</u>

86.     On October 11, 2022, A.D. was discharged from Huntsman and admitted directly to Sandhill for residential treatment. DGIP0131.

1106568954\4\AMERICAS

**Defendant's Response**: Undisputed. *See also* Paragraphs 59 and 60 of Defendant's SOF and the citations to the record set forth in those paragraphs.

87.    Plaintiff requested Aetna approve benefits for A.D.'s residential treatment at Sandhill. DGIP0130.

**Defendant's Response**: Undisputed. *See also* Paragraph 61 of Defendant's SOF and the citations to the record set forth in that paragraph.

88.    Plaintiff also requested a single case agreement ("SCA") for Sandhill to be covered as an in-network provider due to the unavailability of a network provider. DGIP0136.

**Defendant's Response**: Undisputed to the extent Plaintiff's third-party appeal consultant requested that Aetna "approve a single case agreement with Sandhill Center, and authorize services." *See* DGIP000136. Defendant denies Paragraph 88 to the extent it asserts in-network RTCs were unavailable. *See* Paragraphs 49-50; 52; 54; 117-122; and 124-136 of Defendant's SOF and the citations to the record set forth in those paragraphs.

        1.    <u>Aetna's Denial of Benefits</u>

89.    In an October 17, 2022 letter, Aetna denied benefits for the sole reason that "this is not a covered service under the terms of the plan." DGIP0011-0012.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's claim for benefits for A.D.'s treatment at Sandhill by letter dated October 17, 2022 (DGIP000011-17), the contents of which speak for themselves.

90.    Aetna agreed residential treatment was medically necessary. DGIP0134, 1175.

**Defendant's Response**: Undisputed. *See also* Paragraph 63 of Defendant's SOF and the citations to the record set forth in that paragraph.

1106568954\4\AMERICAS

2.    Plaintiff's First Appeal

91.    On November 14, 2022, Plaintiff submitted a written expedited appeal. DGIP0126-0226.

**Defendant's Response**: Undisputed, with the clarification that the first level claim appeal was authored and submitted on Plaintiff's behalf by Plaintiff's third-party appeal consultant, Karen Fessel with Mental Health & Autism Insurance Project. *See* DGIP0000126-227. *See also* Paragraph 64 of Defendant's SOF and the citation to the record set forth in that paragraph.

92.    Plaintiff provided A.D.'s mental health and treatment history, letters of support from treatment providers, psychiatric evaluation and treatment records, correspondence with Aetna, and Sandhill treatment plan for A.D. DGIP0126-0226.

**Defendant's Response**: Undisputed that Plaintiff's first level claim appeal, submitted by Plaintiff's third-party appeal consultant, included attachments relating to A.D.'s mental health and treatment history, the contents of which speak for themselves. *See also* Paragraph 67 of Defendant's SOF and the citations to the record set forth in that paragraph.

93.    The appeal documented the above treatment history. DGIP0126-0226.

**Defendant's Response**: Undisputed that Plaintiff's first level claim appeal, submitted by Plaintiff's third-party appeal consultant, addressed A.D.'s mental health treatment history, the contents of which speak for themselves. *See also* Paragraph 67 of Defendant's SOF and the citations to the record set forth in that paragraph.

94.    In his appeal, Plaintiff explained that he researched and contacted the facilities provided by Aetna and none of the facilities were available or appropriate to provide residential treatment to A.D. for various reasons (detailed above), including: would not accept a child as young as 10 years old, would not accept a child with ASD diagnosis, not a residential program, a

short-term stabilization program and did not provide long-term care, did not return calls to Plaintiff, and/or would not accept treatment of a child who lived out-of-state. *i.e.* DGIP0132-0133.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal, the contents of which speak for themselves. *See also* Paragraphs 65 and 66 of Defendant's SOF and the citations to the record set forth in those paragraphs.

95.     Plaintiff requested that Aetna approve Sandhill for a single case agreement because it was a fully licensed residential treatment center, met A.D.'s treatment needs, was willing to accept him, and was located in a neighboring state. DGIP0133.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal, the contents of which speak for themselves. *See* DGIP0000126-227.

96.     Plaintiff provided letters from A.D.'s treatment providers. DGIP0126-0226.

**Defendant's Response**: Undisputed that Plaintiff submitted, through Plaintiff's third-party appeal consultant, a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraph 67 of Defendant's SOF and the citations to the record set forth in that paragraph.

97.     Plaintiff provided a letter from Dr. Ryan Cephas, Child Psychiatrist at Huntsman, and Maggie Blau, LCSW Youth Inpatient Social Worker at Huntsman. Dr. Cephas and Ms. Blau treated A.D. on an inpatient basis and in day treatment at Huntsman. DGIP0146.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were

1106568954\4\AMERICAS

from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

98.    Dr. Cephas and Ms. Blau wrote: "The inpatient treatment team is recommending that [A.D.] transition to a residential treatment facility to address aggression, mood, family relationships, and ASD. . . He is not safe to discharge home prior to finding next placement due to unsafe behaviors and danger to family members." DGIP0146.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

99.    Plaintiff provided a letter from Dr. Anne Tatti, Clinical Psychologist. Dr. Tatti wrote that A.D. had been in her care since October 2019 and she has seen him two times per week during the past three years. DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

100.    Dr. Tatti wrote that over the past three months A.D. had become increasingly aggressive and threatening. DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

101.    Dr. Tatti wrote that A.D.'s target when aggressive or violent had always been his family and particularly his younger brother. DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

102.    Dr. Tatti wrote that B.D. "endured numerous assaults at the hands of [A.D.], including being hit, pushed, choked and most recently threatened with a knife. DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs..

103.    Dr. Tatti wrote that during this most recent incident with the knife, [A.D.] reportedly stated to his brother, 'I am going to kill you in real life' and then secured a knife from the kitchen." DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

104.    Dr. Tatti wrote that she agreed with A.D.'s inpatient treatment team and outpatient ABA team that residential treatment was the appropriate level of care. DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were

1106568954\4\AMERICAS

from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

105.    Dr. Tatti wrote that while he needed to be hospitalized and not discharged back home because B.D.'s "physical as well as mental well being are at severe risk if [A.D.] is allowed to re-enter the home before a transfer to Residential Treatment is secured." DGIP0148.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

106.    Dr. Tatti wrote that although A.D. worked well in treatment and made progress, "his inclination towards aggression and violence has remained." DGIP0150.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

107.    In the summer of 2022, A.D. became "increasingly aggressive and threatening" which culminated in A.D. brandishing a knife in front of his family. DGIP0150.

**Defendant's Response**: Undisputed, but not material to Plaintiff's Motion.

108.    Dr. Tatti wrote that A.D.'s propensity towards aggression and threats remained a serious concern and "needs to be addressed in a higher level of care" and recommended that he be transferred to residential treatment. DGIP0150.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were

1106568954\4\AMERICAS

from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

109.    Plaintiff provided a letter from Lavere Harward, Board Certified Behavior Analyst, an ABA therapist for A.D. Mr. Harward recommended that A.D. be committed to a residential treatment facility due to the severity of behaviors witnessed during treatment, and safety concerns for A.D. and his family. DGIP0152.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

110.    Mr. Harward wrote that he observed "[m]ultiple instances of calculated, patient, and malicious behavior" by A.D. DGIP0152.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

111.    Mr. Harward further wrote that A.D. "is extremely patient and selective when he decides to act with ill intent, and can often hold onto negative/malicious feelings for extended periods of time without indication or sign of anger, nor remorse once the act has been committed." DGIP0152.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were

1106568954\4\AMERICAS

from A.D.'s health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

112.    Plaintiff provided a letter from B.D.'s psychologist, Pamela C. Wilkison, Licensed Psychologist. DGIP0154.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s (and B.D.'s) health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

113.    Ms. Wilkison treated B.D. due to the traumatic experiences living with this brother. DGIP0154.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s (and B.D.'s) health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

114.    Ms. Wilkison wrote that she witnessed some of A.D.'s interactions with his brother and that B.D. "was assaulted numerous times over the years, including being choked, threatened with a knife, pushed down. hit, and bit. He's endured verbal threats of harm, put downs, and comments about fears to believe." DGIP0154.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s (and B.D.'s) health care providers, the contents of which speak for themselves. *See*

*also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

115.     She wrote that it "is imperative that [A.D.] remain hospitalized until he can enter residential treatment, without any time at home, for [B.D.'s] safety and psychological well-being." DGIP0154.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal which included attachments, some of which were from A.D.'s (and B.D.'s) health care providers, the contents of which speak for themselves. *See also* Paragraphs 67 and 68 of Defendant's SOF and the citations to the record set forth in those paragraphs.

116.     Plaintiff requested that Aetna immediately approve benefits for A.D.'s residential treatment at Sandhill and approve a SCA for Sandhill. DGIP0136.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a first level claim appeal, the contents of which speak for themselves.

3.     <u>Aetna's Denial of Plaintiff's First Appeal</u>

117.     In a December 14, 2022 letter, Aetna denied Plaintiff's first appeal for the sole reason that "your plan does not cover out of network benefits." DGIP0871.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's first level claim appeal by letter dated December 14, 2022 (DGIP000870-80), the contents of which speak for themselves. Defendant denies Paragraph 117 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 72 and 73 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

118.    Aetna denied the request for a single case agreement without explanation. DGIP0871.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's first level claim appeal by letter dated December 14, 2022 (DGIP000870-80), the contents of which speak for themselves. Defendant denies Paragraph 118 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 72 and 73 of Defendant's SOF, and the citations to the record set forth in those paragraphs.

4.      Plaintiff's Second Appeal

119.    On February 22, 2023, Plaintiff submitted a written second level appeal. DGIP0881-1000.

**Defendant's Response**: Undisputed, with the clarification that the second level claim appeal was authored and submitted on Plaintiff's behalf by Plaintiff's third-party appeal consultant, Karen Fessel with Mental Health & Autism Insurance Project. *See* DGIP0000881-1002. *See also* Paragraph 75 of Defendant's SOF and the citations to the record set forth in that paragraph.

120.    Plaintiff explained that Aetna does approve services with out-of-network providers when an in-network provider is unavailable, as demonstrated by Aetna's approval of A.D.'s out-of-network psychologist, Dr. Tatti, for several years. DGIP0882, 0888.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a second level claim appeal, the contents of which speak for themselves. *See also* Paragraphs 75-78 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

121.    Plaintiff wrote that the Plan did not disclose how it complied with Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") despite Plaintiff's request. DGIP0883.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a second level claim appeal, the contents of which speak for themselves. *See also* Paragraphs 75-78 of Defendant's SOF and the citations to the record set forth in those paragraphs.

122.    Plaintiff further wrote that the ACA required Aetna to provide a sufficient provider network without unreasonable delay. DGIP0882.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a second level claim appeal, the contents of which speak for themselves. *See also* Paragraphs 75-78 of Defendant's SOF and the citations to the record set forth in those paragraphs.

123.    Plaintiff explained that the facilities offered by Aetna were unavailable or inappropriate for A.D. DGIP0885-0886.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a second level claim appeal, the contents of which speak for themselves. *See also* Paragraphs 75-78 of Defendant's SOF and the citations to the record set forth in those paragraphs.

124.    Plaintiff requested that Aetna immediately approve benefits for A.D.'s residential treatment at Sandhill. DGIP0890.

**Defendant's Response**: Undisputed that Plaintiff, through Plaintiff's third-party appeal consultant, submitted a second level claim appeal, the contents of which speak for themselves. *See*

1106568954\4\AMERICAS

*also* Paragraphs 75-78 of Defendant's SOF and the citations to the record set forth in those paragraphs.

125.    Subsequently, Plaintiff emailed Aetna and wrote that A.D. "is at Sandhill because his entire medical team recommended it, and none of the programs on Aetna's in-network list were appropriate, and you haven't given us any reasonable alternatives." DGIP1789.

**Defendant's Response**: Undisputed that on or about February 27, 2023, Plaintiff sent an email to Aetna CA Kevin Gutierrez Barrios which includes the quote contained in Paragraph 125. However, to the extent Plaintiff asserts Paragraph 125 for the truth of the matters asserted therein, that statement is hearsay (and double hearsay to the extent it asserts recommendations made by A.D.'s medical team) and is not supported by any record evidence outside of Plaintiff's own argument, and therefore it should be disregarded by the Court for purposes of Plaintiff's Motion. *See also* Paragraph 69 of Defendant's SOF and the citations to the record set forth in that paragraph, addressing the relevant content of the recommendations of A.D.'s health care providers.

> 5.    Aetna's Denial of Plaintiff's Second Appeal

126.    In a February 28, 2023 letter, Aetna denied Plaintiff's second and final appeal for the sole reason that "the plan does not cover services performed by out-of-network providers." DGIP1132-1134.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's second level claim appeal by letter dated February 28, 2023 (DGIP001132-1140), the contents of which speak for themselves. Defendant denies Paragraph 126 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 79-80 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

127.    Again, Aetna did not acknowledge, address, or dispute arguments raised in Plaintiff's appeal, including Plaintiff's contention that the facilities Aetna recommended to Plaintiff were inappropriate and/or unavailable for residential treatment for A.D. and that the Plan did approve out-of-network providers for A.D., *e.g.* Dr. Tatti. DGIP1132-1134.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's second level claim appeal by letter dated February 28, 2023 (DGIP001132-1140), the contents of which speak for themselves. Defendant denies Paragraph 127 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 79-80 of Defendant's SOF and the citations to the record set forth in those paragraphs.

128.    On March 1, 2024, A.D. discharged from Sandhill. Plaintiff paid the cost of A.D.'s treatment at Sandhill. Green Decl., ¶ 2.

**Defendant's Response**: Defendant denies Paragraph 128 to the extent it purports to place into evidence materials outside of the Administrative Record. Plaintiff's claim for benefits at issue in this litigation is the claim as reviewed by Aetna through the administrative appeal process, for the period October 11, 2022 – April 13, 2023. DGIP001862-1867; 1951-1956.

E.    The Court's Order and Remand to Aetna

129.    On February 24, 2025, this Court issued a Memorandum Opinion and Order ("Order") denying Defendant's Motion for Summary Judgment and granted Plaintiff's Cross-Motion in part. ECF No. 44.

**Defendant's Response**: Undisputed. *See also* Paragraphs 92-95 of Defendant's SOF and the citations to the record set forth in those paragraphs.

130.    The Court determined Aetna's decision to deny benefits was arbitrary and capricious and rendered "without reason," and remanded for a new review by Aetna. *Id.* at p. 6.

**Defendant's Response**: Undisputed. *See also* Paragraphs 92-95 of Defendant's SOF and the citations to the record set forth in those paragraphs.

<u>Aetna Denied Benefits on Remand</u>

A.    <u>Aetna's Denial</u>

131.    Aetna issued a new decision denying benefits on May 1, 2025. DGIP1862-1910.

**Defendant's Response**: Undisputed. *See also* Paragraph 99 of Defendant's SOF and the citation to the record set forth in that paragraph.

132.    Aetna claimed there were "multiple suitable in-network residential treatment facilities available to promptly accept" A.D. for treatment and named three facilities: Meridell Achievement Center, Oak Plains Academy, and Center for Discovery.[2] DGIP1863.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's benefit claim following remand by letter dated May 1, 2025 (DGIP001862-1910), the contents of which speak for themselves. Defendant denies Paragraph 132 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 102-104 of Defendant's SOF and the citations to the record set forth in those paragraphs.

133.    Aetna did not cite or address the Plan language describing the requirements for coverage of mental health services at residential treatment facilities[3], or the Plan definition of a

---

[2] Aetna would include fourth facility, San Marcos Treatment Center, in its appeal denial. DGIP1959-1960.

[3] DGIP1682 ("This Plan covers room and board at the semi-private room rate and other services and supplies provided during your stay in a psychiatric hospital or residential treatment facility, appropriately licensed by the state Department of Health or its equivalent.").

1106568954\4\AMERICAS

healthcare provider[4] despite Plaintiff specifically quoting the applicable Plan language in his appeals. DGIP0134, 0887.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's benefit claim following remand by letter dated May 1, 2025 (DGIP001862-1910), the contents of which speak for themselves. Defendant denies Paragraph 133 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. More specifically, Defendant states that, contrary to Paragraph 133, Aetna's May 1, 2025 claim determination following remand specifically stated that Aetna "reviewed all available information in the administrative record, including" the Plan, as well as extensively cited relevant Plan terms. *See* DGIP001862-1867. *See also* Paragraphs 102-104 of Defendant's SOF and the citations to the record set forth in those paragraphs.

134.    Aetna claimed that it would not authorize Sandhill for A.D.'s residential treatment because it contended Sandhill did not meet Aetna's criteria in "Aetna Criteria for Recognizing Non-Contracted Residential Treatment Facilities: ALIC (Traditional Plans) – Residential Treatment Facility (Mental Disorders) – ALIC (Traditional), effective for Plan year 2022" ("Aetna ALIC Criteria"). DGIP1863.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's benefit claim following remand by letter dated May 1, 2025 (DGIP001862-1910), the contents of which speak for themselves. Defendant denies Paragraph 134 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also*

---

[4] DGIP1752 ("A physician, health professional, person, or facility, licensed or certified by law to provide health care services to you. If state law does not specifically provide for licensure or certification, they must meet all Medicare approval standards even if they don't participate in Medicare.").

1106568954\4\AMERICAS

Paragraphs 102-104 of Defendant's SOF and the citations to the record set forth in those paragraphs.

135.    Aetna did not explain its application of the Aetna ALIC Criteria instead of the Plan terms. DGIP1863.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's benefit claim following remand by letter dated May 1, 2025 (DGIP001862-1910), the contents of which speak for themselves. Defendant denies Paragraph 135 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 102-104 of Defendant's SOF and the citations to the record set forth in those paragraphs.

136.    Aetna claimed it had no obligation to comply with the Affordable Care Act ("ACA"). DGIP1863.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's benefit claim following remand by letter dated May 1, 2025 (DGIP001862-1910), the contents of which speak for themselves. Defendant denies Paragraph 136 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. More specifically, Defendant states that, contrary to the assertion in Paragraph 136 that Aetna's May 1, 2025 claim determination following remand "claimed [Aetna] had no obligation to comply with the Affordable Care Act," the May 1, 2025 claim determination following remand explained that the Affordable Care Act is "inapplicable to self-funded plans like this Plan." *See* DGIP0011863; *see also* Paragraphs 102-104 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

137.    Aetna claimed the Plan did not specifically provide for SCAs and that it made the correct decision to not offer a SCA based on Aetna's "National Clinical Services (NCS) 512 Non-Participating Provider Requests for In-Network Benefits Policy and Procedure." ("Aetna NCS Criteria"). DGIP1863.

**Defendant's Response**: Undisputed that Aetna denied Plaintiff's benefit claim following remand by letter dated May 1, 2025 (DGIP001862-1910), the contents of which speak for themselves. Defendant denies Paragraph 137 to the extent it misstates, mischaracterizes, and incompletely summarizes the record and to the extent it constitutes improper argument. *See also* Paragraphs 102-104 of Defendant's SOF and the citations to the record set forth in those paragraphs.

B.    Plaintiff's Appeal

138.    Plaintiff appealed Aetna's decision on August 13, 2025. DGIP1911-1950.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraph 108 of Defendant's SOF and the citation to the record set forth in that paragraph.

139.    Plaintiff wrote that the Plan provides for SCAs, citing this Court's Order: "The Plan provides for such an exception, *see* DGIP 1667-1668 (discussing procedures for the receipt of "Covered Health Services from an Out-of-Network provider"). . ." ECF No. 44 at p. 7.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

140.    Plaintiff wrote that Aetna routinely approved SCAs for A.D.'s outpatient psychologist. DGIP1915, fn 3.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

141.    Plaintiff wrote that the ACA requires insurers, such as Aetna, to maintain sufficient provider networks. DGIP1915.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

142.    Plaintiff wrote that the ACA requirements apply to Aetna's provider network which has the same provider network for insured plans and self-funded plans. DGIP1915.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

143.    Plaintiff wrote that the New York State Department of Financial Services ("DFS"), which regulates health insurance policies issued in New York, provides guidance as to the network adequacy requirements. DGIP1915.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the

1106568954\4\AMERICAS

contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

144.    Plaintiff wrote that the facilities named by Aetna were unavailable and/or inappropriate for A.D., as confirmed by Plaintiff, his wife, and A.D.'s treatment team. DGIP1916.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

145.    Plaintiff provided a detailed explanation of the research of, and communications with, each in-network facility named by Aetna, confirming that none were available and/or appropriate to treat A.D. DGIP1916-1918.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

146.    Plaintiff's [sic] provided letters from Dr. Russell Hyken and Ms. Jennifer Taylor, residential treatment specialists, who have years of experience assisting with the placement of patients into residential facilities. DGIP1942-1943 (Dr. Hyken: "I am deeply knowledgeable about Sandhill and other treatment programs. . . I have visited and worked with multiple facilities that were recommended on this list."); DGIP1947 (Ms. Taylor: "We are a residential specialist and therapeutic educational advocacy group for children between the ages of 6 and 24. Our practice has been consulting since 2016. Our practice visits and tours over 120 programs a year including some of the noted programs below.").

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

147.    Dr. Hyken and Ms. Taylor provided information about each in-network facility identified by Aetna and confirmed that none were available and/or appropriate to treat A.D. DGIP1942-1944, 1947-1948.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

148.    Plaintiff explained that A.D.'s treatment team recommended Sandhill as the only viable and appropriate treatment option and provided letters of support from his treatment team. DGIP1918-1920.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

149.    Dr. Tatti, A.D.'s longstanding outpatient clinical psychologist, wrote:

> Sandhill works exclusively with children 8-13 years old, with diagnoses/concerns being Autism Spectrum Disorder, emotional dysregulation, unsafe behaviors, manipulative behaviors, depression and anxiety disorders and resistance to adult care just to name a few. This program was tailor-made for a child with [A.D.'s] level of complexity as well as need.

1106568954\4\AMERICAS

> The other programs Aetna offered were not, in any way, appropriate to address [A.D.'s] needs.

DGIP1937.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

150. Lavere Harward, A.D.'s therapist from Advanced Behavior Analysis, wrote:

> As a team, Sandhill Center was specifically selected due to its specialization in treating children aged 8–13 with emotional and behavioral dysregulation. No in-state facilities provided equivalent expertise or staffing models to address the complexity of [A.D.'s] case at the time. This placement prevented repeated hospitalizations, preserved family stability, and allowed [A.D.] to make measurable progress in a safe, structured environment.

DGIP1941.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

151. Plaintiff disputed Aetna's claim that Sandhill did not qualify for a SCA. DGIP1920-1922.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

152.    Plaintiff again cited the Plan language defining a healthcare provider and residential treatment facility and asserted that Sandhill satisfied the Plan requirements because it was licensed by the state as a residential treatment facility (and enclosed certificates of licensure). DGIP1921, 1949-1950.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

153.    Plaintiff wrote that Aetna has approved benefits for residential treatment of other patients at Sandhill, as confirmed by Dr. Hyken and Ms. Taylor. DGIP1920.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

154.    Plaintiff wrote that the Aetna ALIC and NCS Criteria were undisclosed to participants, applied new requirements for coverage that do not exist in the Plan, and not reflective of the standard of care for residential treatment of children. DGIP1921.

**Defendant's Response**: Undisputed that on August 13, 2025, Plaintiff, through Plaintiff's counsel, submitted an appeal to Aetna's May 1, 2025 claim determination following remand, the contents of which speak for themselves. *See also* Paragraphs 108-112 of Defendant's SOF and the citations to the record set forth in those paragraphs.

C.    Aetna's Appeal Denial

155.    Aetna denied the appeal on November 11, 2025. DGIP1951-1966.

- 40 -

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. *See also* Paragraph 113 of Defendant's SOF and the citation to the record set forth in that paragraph.

156.    Aetna claimed there was no network deficiency, no basis for consideration of a SCA for Sandhill, and regardless, Sandhill did not meet Aetna's ALIC Criteria. DGIP1952-1953.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speaks for themselves. Defendant denies Paragraph 156 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

157.    Aetna reiterated that the ACA does not apply to "self-funded plans like the Plan" but Aetna did not address the argument made in Plaintiff's appeal that the ACA requires insurers, such as Aetna, to maintain sufficient provider networks and Aetna uses the same provider network for both self-funded and insured plans. DGIP1915.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speaks for themselves. Defendant denies Paragraph 157 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument.

1106568954\4\AMERICAS

*See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

158.    Aetna did not address Plaintiff's argument regarding the New York State DFS regulations. DGIP1915.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 158 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

159.    Aetna did not address the Court's Order finding that the Plan provides for SCAs. ECF No. 44 at p. 7.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 159 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

160.    Aetna disagreed with Plaintiff's statement that it was a challenge for Aetna to locate an available and appropriate residential treatment facility that would accept A.D. as a patient. DGIP1954.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 160 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

161.    Yet, for the entire United States, Aetna was able to identify only four in-network facilities that it claimed would have provided residential treatment to A.D. DGIP1954.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 161 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

162.    Aetna admitted that it initially offered several other in-network facilities which Aetna later "removed from consideration." DGIP1954, 1931-1934.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 162 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See*

*also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

163.    Aetna did not dispute facts provided in Plaintiff's appeal which demonstrated that in-network facilities were unavailable and/or inappropriate for A.D. Aetna did not dispute that Plaintiff did not receive return phone calls from Meridell (DGIP1916) and San Marcos (DGIP1917). DGIP1957, 1959.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 163 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

164.    Aetna did not dispute that Plaintiff received information that Meridell and Center for Discovery did not accept children under age 11 and A.D. was newly age 10 and emotionally immature for his age. DGIP1916, 1957, 1960.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 164 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

165.    Aetna did not provide evidence to support its claim that Ms. Taylor confirmed information with Center for Discovery. DGIP1960.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 165 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

166.    Aetna did not dispute that Plaintiff received information that the in-network facilities focused on short-term assessment and stabilization and A.D. required intensive long-term residential care. DGIP1957-1960[.]

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 166 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

167.    Aetna did not dispute that Plaintiff received information that multiple facilities cited long waitlists for admission (*i.e.* five week wait for Oak Plains (DGIP1917); six to eight week wait for San Marcos (DGIP1917)). DGIP1958-1959.

1106568954\4\AMERICAS

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 167 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

168.    Aetna did not dispute that Plaintiff received information that Oak Plains was unavailable to accept A.D. because it was not taking new referrals until April 1, 2023, more than six months after A.D. was discharged from Huntsman. DGIP001769, 1918.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 168 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

169.    Aetna disputed Plaintiff's safety concerns regarding Oak Plains and Plaintiff citing a published news article and law enforcement officials who confirmed the fatal overdose of two female adolescent patients at Oak Plains during the time which Aetna recommended placement for A.D. DGIP1917, 1958.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand

1106568954\4\AMERICAS

(DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 169 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. Defendant further states that the news article cited by Plaintiff in Paragraph 169 is dated December 1, 2022, and addresses the death of two individuals on November 29 and 30, 2022, which was more than six weeks *after* Plaintiff arranged for A.D.'s admission at Sandhill on October 11, 2022 (*see* Paragraphs 85 and 86, *supra*) and five weeks *after* Aetna's initial denial of Plaintiff's benefit claim on October 17, 2022 (*see* Paragraph 89, *supra*). Defendant thus denies that the facts alleged in Paragraph 169 are material to Plaintiff's Motion because they could not have been considered by Aetna when identifying in-network RTC placement options for A.D. following his discharge from Huntsman in September 2022 nor could they have been relied upon by Plaintiff at the time Plaintiff rejected Oak Plains as an in-network RTC option and instead made arrangements for A.D.'s admission at Sandhill. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

170.    Aetna claimed the deaths were not "substantiated by any authority," despite confirmation of the deaths by the Montgomery County Sheriff's Office. DGIP1917. https://www.wdbj7.com/2022/12/01/two-teens-die-benadryl-overdoes-treatment-facility-sheriffs-office-says/.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 170 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument.

Defendant further states that the news article cited by Plaintiff in Paragraph 169 is dated December 1, 2022, and addresses the death of two individuals on November 29 and 30, 2022, which was more than six weeks *after* Plaintiff arranged for A.D.'s admission at Sandhill on October 11, 2022 (*see* Paragraphs 85 and 86, *supra*). Defendant thus denies that the facts alleged in Paragraph 169 are material to Plaintiff's Motion because they could not have been considered by Aetna when identifying in-network RTC placement options for A.D. following his discharge from Huntsman in September 2022 nor could they have been relied upon by Plaintiff at the time Plaintiff rejected Oak Plains as an in-network RTC option and instead made arrangements for A.D.'s admission at Sandhill. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

171.    Plaintiff received information that Oak Plains accepted children with an IQ as low as 65, and Plaintiff advised Aetna that A.D. was triggered by, and exhibited violent behavior toward, children of low IQ. DGIP1958.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 171 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

172.    Aetna dismissed Plaintiff's concern by speculating as to the facility's approach and assuming the facility to have "appropriate de-escalation and restraint procedures, if needed," without acknowledging the A.D.'s history of violent behaviors. DGIP1958.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 172 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

173.    Aetna dismissed the opinions of residential treatment specialists (*i.e.* Dr. Russell Hyken and Jennifer Taylor), who provided specific knowledge of the in-network facilities identified by Aetna. DGIP1956.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 173 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

174.    The information provided by Dr. Hyken and Ms. Taylor was based on their years of experience in assisting with the placement of patients in residential facilities. DGIP1942-1943; DGIP 1947.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand

1106568954\4\AMERICAS

(DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 174 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

175.    Dr. Hyken reported that San Marco is more of a hospital program, a statement that Aetna dismissed without reason. DGIP1959.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 175 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

176.    Ms. Taylor reported that Center for Discovery did not treat patients with ASD (a statement confirmed by Dr. Tatti) and verified her statement by reporting that she had toured Center for Discovery. DGIP1948, 1960.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 176 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11,

2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

177.     Aetna rejected Ms. Taylor's reports without offering contrary evidence. DGIP1960.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 177 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

178.     Aetna did not provide any contrary evidence from a residential treatment specialist. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 178 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

179.    The denial letter was signed by Patricia Roode, Senior Manager, Complaints and Appeals, a non-clinician with no identifiable experience evaluating residential treatment facilities and who did not consult with a residential treatment specialist. DGIP1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Undisputed that Aetna's November 11, 2025 response to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand was signed by Patricia Roode, Senior Manager, Complaints and Appeals and that Ms. Roode is a non-clinician, but states that these facts are not material to Plaintiff's Motion. Defendant denies Paragraph 179 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, including that the November 11, 2025 response specifically explains that the determination was made by a Board-certified pediatric psychiatrist, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

180.    Although Ms. Roode referenced an unnamed physician reviewer, Aetna did not disclose the reviewer's qualifications, the physician's review, or the physician's identity. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Undisputed that Aetna's November 11, 2025 response to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand did not disclose the reviewing physician's identity but states that

the identity of the reviewing physician is not material to Plaintiff's Motion. Defendant denies Paragraph 180 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, including that the November 11, 2025 response specifically explained that the determination was made by a Board-certified pediatric psychiatrist*, *Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

181.    Aetna dismissed the timing of A.D.'s transfer to residential treatment, contending "there was no clinical evidence" suggesting a transfer from Huntsman to residential treatment was "needed immediately." DGIP1956.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 181 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

182.    That contention is directly contradicted by Plaintiff's appeal: "[A.D.'s] need to transfer to residential treatment was accelerated when Aetna denied further benefits for [A.D.'s] hospitalization at Huntsman on October 3, 2025, and Huntsman unequivocally stated that [A.D.] was unsafe to return home." DGIP1917. Aetna did not address these facts. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand

(DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 182 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

183.    Aetna claimed that Sandhill did not qualify for a SCA because it did not meet Aetna's requirements for a residential treatment facility. DGIP1961-1963.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 183 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

184.    Aetna did not address or acknowledge the Plan language that only required residential treatment facilities to be "appropriately licensed by the state Department of Health or its equivalent," or the Plan language that defined healthcare providers as facilities "licensed or certified by law to provide health care services to you." DGIP1921, 1961-1963.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 184 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See*

1106568954\4\AMERICAS

*also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

185.     Aetna did not address Plaintiff's contention that he satisfied the terms of the Plan because he requested residential treatment for his son with a state licensed provider. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 185 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

186.     Aetna ignored Plaintiff's contention that Aetna may not impose new requirements for coverage that do not exist in the Plan and Aetna must apply to the Plan terms for coverage. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 186 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

1106568954\4\AMERICAS

187.    Aetna ignored Plaintiff's contention that the Aetna ALIC and NCS Criteria are undisclosed additional requirements for residential treatment. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 187 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

188.    Aetna did not identify any Plan provision that permitted it to impose the Aetna ALIC or NCS Criteria in denying Plaintiff's benefit request. DGIP1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 188 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

189.    Aetna ignored the specific reasons cited by Dr. Hyken to support finding that Sandhill is an appropriately licensed residential treatment center. DGIP1943-1944, 1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 189

1106568954\4\AMERICAS

to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

190.    Aetna claimed that its "standards and requirements" were not met, without citing any such requirements set forth by the Plan. DGIP1962.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 190 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response and the record in this matter, and to the extent it constitutes improper argument. *See also* Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

191.    Aetna ignored confirmed reports from Dr. Hyken and Ms. Taylor that Aetna has approved and paid for residential treatment at Sandhill. DGIP1920, 1951-1966.

**Defendant's Response**: Undisputed that on November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 appeal to Aetna's May 1, 2025 claim determination following remand (DGIP001951-1966), the contents of which speak for themselves. Defendant denies Paragraph 191 to the extent it misstates, mischaracterizes, and incompletely summarizes Aetna's November 11, 2025 response, Plaintiff's August 13, 2025 appeal and supporting materials submitted therewith, and the record in this matter, and to the extent it constitutes improper argument. *See also*

1106568954\4\AMERICAS

Paragraphs 113-144 of Defendant's SOF and the citations to the record set forth in those paragraphs.

DATED: February 27, 2026                   Respectfully submitted,

                                            */s/ Daniel B. Pasternak*
                                            Daniel B. Pasternak (admitted *pro hac vice*)
                                            SQUIRE PATTON BOGGS (US) LLP
                                            2325 East Camelback Road, Suite 700
                                            Phoenix, Arizona 85016
                                            T:  (602) 528-4000
                                            F:  (602) 253-8129
                                            daniel.pasternak@squirepb.com

                                            Paul D. Erian
                                            SQUIRE PATTON BOGGS (US) LLP
                                            1120 Avenue of the Americas, 13th Floor
                                            New York, New York  10036
                                            T:  (212) 872-9800
                                            F:  (212) 872-9815
                                            paul.erian@squirepb.com

1106568954\4\AMERICAS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 27, 2026, I caused a copy of the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1** to be served via ECF/CM filing on the ECF registrants for this case.

*/s/ Tammy Gougeon*