Elizabeth K. Green, admitted *pro hac vice*
GREEN HEALTH LAW APC
201 N. Brand Blvd., Suite 200
Telephone: (818 722-1164
E-mail: egreen@greenhealthlaw.com

Attorneys for Plaintiff
John Doe


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOHN DOE,                                              23-CV-04743-JPC

                        Plaintiff,            **PLAINTIFF'S OPPOSITION TO
                                              DEFENDANT'S MOTION FOR
            -against-                         SUMMARY JUDGMENT**

                                              ECF CASE

DELOITTE LLP GROUP INSURANCE PLAN,

                        Defendant.

-------------------------------------------------------------X


        Plaintiff John Doe, through his undersigned counsel and pursuant to Federal Rules of

Civil Procedure 56, submits the following Memorandum of Points and Authorities in support of

Plaintiff's Opposition to Defendant's Motion for Summary Judgment..

<u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................................. 1

II.   Response to Defendant's Summary of Facts ..................................... 3

III.  Arguments ................................................................................................. 4

      A.  Defendant Has Not Met Its Burden of Showing a Valid Grant of Discretionary
          Authority Sufficient to Support a Deferential Review ............................. 4

          1.  Defendant Forfeits Any Potential Discretionary Review Because
              Aetna Repeated Procedural Errors ....................................................... 4

          2.  Defendant Has Not Met Its Burden of Showing a Valid Grant of
              Discretionary Authority by the SPD ..................................................... 6

      B.  Aetna Failed to Provide a Full and Fair Review of Plaintiff's Appeal Which
          Showed that In-Network Facilities Were Inadequate ................................. 8

      C.  Aetna's Decision to Deny Plaintiff's Benefits for Sandhill Based on the Plan's
          Out-of-Network Exclusion was Arbitrary and Capricious ........................ 13

      D.  Aetna's Final Determination on Remand Was Arbitrary and Capricious and
          Must Be Reversed ...................................................................................... 19

          1.  Aetna's New Determination on Remand Is Not Supported by
              Substantial Evidence or the Plan Language........................................ 20

          2.  Aetna Did Not Respond to Plaintiff's Arguments Regarding
              Federal and State Insurance Laws and Defendant May Not Now
              Provide Such Belated Argument........................................................... 24

      E.  Plaintiff Also Prevails Under a De Novo Review .................................... 27

IV.   Requested Relief ...................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

*CASES*

*Abatie v. Alta Health & Life Ins. Co.*,
    458 F.3d 955 (9th Cir. 2006) ............................................................................. 20

*Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*,
    500 F.3d 834 (8th Cir. 2007) ............................................................................. 13

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 352 (2d Cir. 2016) .............................................................................. 18

*Andrew C. v. Oracle Am. Inc. Flexible Benefit Plan*,
    474 F. Supp. 3d 1066 (N.D. Cal. 2020) ............................................................ 10

*Anonymous Oxford Health Plan Member With Id No. 6023604\*01 v. Oxford Health
    Plans (N.Y.), Inc.*,
    No. 08CIV.943PAC, 2009 WL 667237 (S.D.N.Y. Mar. 16, 2009) ................... 23

*Aramony v. United Way Replacement Benefit Plan*,
    191 F.3d 140 (2nd Cir. 1999) ............................................................................ 21

*Barbu v. Life Ins. Co. of N. Am.*,
    987 F. Supp. 2d 281 (E.D.N.Y. 2013) ................................................................ 7

*Boyle v. Legacy Health Plan No. 504*,
    No. 6:20-CV-00705-AA, 2023 WL 6318923 (D. Or. Sept. 28, 2023) .............. 22

*Briscoe v. Health Care Serv. Corp.*,
    281 F. Supp. 3d 725 (N.D. Ill. 2017) ............................................................... 22

*Celardo v. GNY Auto. Dealers Health & Welfare Tr.*,
    318 F.3d 142 (2d Cir. 2003) .............................................................................. 20

*Condry v. UnitedHealth Grp., Inc.*,
    No. 17-CV-00183-VC, 2017 WL 7420997 (N.D. Cal. Aug. 15, 2017) ............ 22

*Conkright v. Frommert*,
    559 U.S. 506; 130 S. Ct. 1640; 176 L. Ed. 2d 469 (2010) ........................... 5, 20

*Curran v. Aetna Life Ins. Co.*,
    2016 No. 7:2013cv00289; 2016 WL 3843085 (2016) ...................................... 23

*D.K. v. United Behav. Health*,
    67 F.4th 1224 (10th Cir. 2023) .......................................................................... 11

*Daniel B. v. United Healthcare*,
  No. 220CV00606 *BBCMR*,
  2022 WL 4484622 (D. Utah Sept. 27, 2022) ................................................................. 26

*DeFrancis v. MVP Health Plan, Inc.*,
  No. 05CIV7086CMGAY, 2005 WL 8179331 (S.D.N.Y. 2005) ..................................... 23

*Delprado v. Sedgwick Claims Mgmt. Servs., Inc., No. 1:12-CV-00673 BKS*,
  2015 WL 1780883 (N.D.N.Y. Apr. 20, 2015) ................................................................. 25

*Dick v. Deseret Mut. Benefit Adm'rs*,
  No. 2:21-CV-01194-HL, 2023 WL 2071523 (D. Or. Feb. 17, 2023)............................. 17

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund*,
  609 F.3d 133 (2d Cir. 2010)........................................................................................... 10

*Egert v. Conn. General Life Ins. Co.*,
  900 F.2d 1032 (7th Cir. 1990) ....................................................................................... 16

*Elazouzi v. Aetna Life Ins. Co., No. EDCV 22-0858 JGB (SPX)*,
  2023 WL 8530010 (C.D. Cal. Dec. 7, 2023) ........................................................... 16, 17

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101; 109 S. Ct. 948; 103 L. Ed. 2d 80 (1989).............................................. 4, 27

*Gaither v. Aetna Life Ins. Co.*,
  394 F.3d 792 (10th Cir. 2004) ....................................................................................... 10

*Gallagher v. Empire HealthChoice Assurance, Inc.*,
  339 F. Supp. 3d 248 (S.D.N.Y. 2018)............................................................................ 19

*Grosz–Salomon v. Paul Revere Life Insurance Co.*,
  237 F.3d 1154 (9th Cir. 2001) .......................................................................................... 7

*Heasley v. Belden & Blake Corp.*,
  2 F.3d 1249 (3d Cir. 1993).............................................................................................. 15

*IUE-CWA v. Gen. Elec. Co.*,
  745 F. App'x 583 (6th Cir. 2018) ................................................................................... 21

*Jacobs v. Kaiser Found. Health Plan Inc.*,
  265 F. App'x 652 (9th Cir. 2008) ................................................................................... 22

*Jamie F. v. UnitedHealthCare Ins. Co.*,
  No. 19-CV-1111-YGR, 2020 WL 6802416 (N.D. Cal. Nov. 19, 2020).......................... 21

*Juliano v. Health Maint. Org. of New Jersey, Inc.*,
   221 F.3d 279 (2d Cir. 2000)....................................................................... 25

*Kinstler v. First Reliance Standard Life Ins. Co.*,
   181 F.3d 243 (2d Cir. 1999)..................................................................... 4, 7

*Krauss v. Oxford Health Plans, Inc.*,
   517 F.3d 614 (2d Cir. 2008)....................................................................... 23

*Lifson v. INA Life Ins. Co. of New York*,
   333 F.3d 349 (2d Cir. 2003)......................................................................... 7

*Locher v. Unum Life Ins. Co. of America*,
   389 F.3d 288 (2d Cir. 2004)....................................................................... 27

*M & G Polymers USA, LLC v. Tackett*,
   574 U.S. 427; 135 S. Ct. 926; 190 L. Ed. 2d 809 (2015)............................... 21

*Macalou v. First Unum Life Ins. Co., No. 22-CV-10439 (PKC)*,
   2024 WL 4867091 (S.D.N.Y. Nov. 22, 2024)............................................... 28

*Magee v. Metro. Life Ins. Co.*,
   632 F. Supp. 2d 308 (S.D.N.Y. 2009)......................................................... 15

*Martin v. Hartford Life & Acc. Ins. Co.*,
   478 F. App'x 695 (2d Cir. 2012).................................................................. 25

*McCauley v. First Unum Life Ins. Co.*,
   551 F.3d 126 (2d Cir. 2008)....................................................................... 19

*McDonald v. Western–Southern Life Ins. Co.*,
   347 F.3d 161 (6th Cir. 2003) ....................................................................... 9

*McDonnell v. First Unum Life Ins. Co.*,
   No. 10 CV 8140 RPP, 2013 WL 3975941 (S.D.N.Y. Aug. 5, 2013) ........... 7, 28

*N.C. v. Premera Blue Cross*,
   No. 23-35381, 2024 WL 2862586 (9th Cir. June 6, 2024).............................. 15

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
   980 F. Supp. 2d 527 (S.D.N.Y. 2013), *aff'd in part, vacated in part*, 798 F.3d
   125 (2d Cir. 2015)...................................................................................... 18

*Nolan v. Heald Coll.*,
   745 F. Supp. 2d 916 (N.D. Cal. 2010) ......................................................... 5

*Pirozzi v. Blue Cross-Blue Shield of Va.*,
    741 F. Supp. 586 (E.D. Va. 1990) ................................................................. 15

*Prolow v. Aetna Life Ins. Co.*,
    584 F. Supp. 3d 1118 (S.D. Fla. 2022) ........................................................ 16

*Redstone v. Empire Healthchoice HMO, Inc., No. 23-CV-2077 (VEC)*,
    2024 WL 967416 (S.D.N.Y. Mar. 5, 2024) .................................................. 23

*Romanchuk v. Bd. of Trs. of S. California United Food & Com. Workers Joint
    Pension Tr. Fund*,
    779 F. Supp. 3d 1097 (C.D. Cal. 2025) ........................................................ 5

*Rubio v. Chock Full O'Nuts Corp.*,
    254 F. Supp. 2d 413 (S.D.N.Y. 2003) ........................................................... 7

*Salomaa v. Honda Long Term Disability Plan*,
    642 F.3d 666 (9th Cir. 2011) ...................................................................... 19

*Shaw v. Connecticut Gen. Life Ins. Co.*,
    353 F.3d 1276 (11th Cir. 2003) .................................................................... 7

*Sheehan v. Metro. Life Ins. Co.*,
    368 F. Supp. 2d 228 (S.D.N.Y. 2005) ......................................................... 10

*Smith v. Bayer Corp. Long Term Disability Plan*,
    275 F. App'x 495 (6th Cir. 2008) .................................................................. 9

*T. E. v. Anthem Blue Cross & Blue Shield*,
    No. 25-5407, 2026 WL 172050 (6th Cir. Jan. 22, 2026) ............................... 11

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013) ...................................................................................... 13

*Washington v. Murphy Oil USA, Inc.*,
    497 F.3d 453 (5th Cir. 2007) ........................................................................ 7

*Winkler v. Metro. Life Ins. Co.*,
    170 F. App'x 167 (2d Cir. 2006) .................................................................. 10

*Zucca v. First Energy Serv. Co.*,
    642 F. Supp. 3d 621 (N.D. Ohio 2022) ........................................................ 22

### FEDERAL STATUTES

Title 29 U.S.C. § 118 .......................................................................................... 18

Title 29 U.S.C. § 1022(a)...................................................................................................... 14, 15

Title 29 U.S.C. § 1022(b)...................................................................................................... 15

Title 29 U.S.C. § 1102(b)...................................................................................................... 7

Title 29 U.S.C. § 1104(a)(1) ................................................................................................. 13

Title 29 U.S.C. § 1133 .......................................................................................................... 25

### *FEDERAL REGULATIONS*

29 C.F.R. § 2560.503 ............................................................................................................ 8, 20

45 C.F.R. § 146.136(c)(4)(i) ................................................................................................. 19

45 C.F.R. § 156.230(a)(1)(ii) ............................................................................................... 26

MEMORANDUM OF POINTS AND AUTHORITIES

I.    Introduction

This Court previously found that Defendant's denial of benefits for A.D.'s residential treatment was arbitrary and capricious. ECF No. 44. Aetna's new denial on remand repeats the same fundamental error: Refusing to approve out-of-network coverage for a critically ill child despite the absence of any available and appropriate in-network alternative. Defendant's Motion for Summary Judgment cannot be granted because it fails to justify Aetna's new denial with reasonable findings or substantial evidence.

A.D. is at the heart of this case and his treatment history is essential to understanding his unique need for residential treatment. A.D. was a 10-year-old boy who inflicted violence on his family, peers, caregivers, and healthcare providers. He did not display remorse for his violent acts. He threatened to kill himself by drowning in a pool, jumping out a window, or strangling himself. He was an indisputable danger to himself and others.

The residential treatment options for A.D. were slim and the timing was tight. The need to admit A.D. to residential treatment was accelerated by Aetna's decision to deny further approval for A.D.'s hospitalization. By all accounts, A.D. was unsafe to return home from the hospital before admitting to residential treatment so he required a direct transfer to residential treatment. Plaintiff and his wife did not have the luxury of time to wait on residential treatment facilities that had wait lists or did not return phone calls. Based on recommendations from A.D.'s treatment team, Plaintiff and his wife needed a residential treatment facility which would promptly admit a 10-year-old boy with diagnoses that included Autism Spectrum Disorder ("ASD"), who had a history of violence with providers, caregivers, family, and peers, and had a high IQ, and was willing to accept the safety risks that A.D. posed to staff and peers.

-1-

Aetna could not provide such a facility within its network. In the entire United States, Aetna was able to identify only four in-network residential treatment facilities for A.D., each of which was unresponsive, inappropriate, or unavailable. Plaintiff was able to locate Sandhill Treatment Center in New Mexico, a state licensed residential treatment center that satisfied the Plan's requirements and was willing to promptly accept A.D. Aetna's repeated denials of coverage for Sandhill are unsupported and unreasonable.

Defendant asks this Court to accept that Aetna's new denial was "thorough, detailed, and well-reasoned." It was certainly not. Aetna's new denial is based on the same flawed foundation as the original: a network adequacy argument that is unsupported by the record and the application of secret criteria to restrict coverage for residential treatment facilities, such as Sandhill, that otherwise qualify for coverage under the Plan. Aetna's new denial repeats the errors this Court already identified as arbitrary and capricious, including failing to address arguments raised in Plaintiff's appeal.

Defendant presents three primary arguments and each is unsupported by law and the factual record. First, Defendant argues that out-of-network care is categorically excluded under the Plan. It is not and this Court previously found that the "Plan provides for such an exception." ECF No. 44 at p. 7. A single case agreement ("SCA") is a mechanism that exists precisely for situations like this where there is a network inadequacy. The question is not whether out-of-network care was possible under the Plan but whether Aetna had a legitimate basis to withhold it here. It did not.

Second, Aetna did not have an in-network provider available or appropriate for A.D.'s critical healthcare needs. Aetna was extraordinarily challenged – and ultimately unsuccessful – in locating an adequate in-network residential facility for A.D. Indeed, in the entire United

States, Aetna was able to name only four in-network residential treatment facilities for A.D., each of which was unresponsive, inappropriate, and unavailable for A.D.'s critical healthcare needs. Aetna hastened the need for A.D. to be transferred to residential treatment by denying approval of additional inpatient hospitalization.

Third, Defendant ignores the clear Plan requirements for a residential treatment facility that were satisfied by Sandhill. Instead, Defendant argues that Sandhill failed to meet Aetna's secret criteria that restricts, and conflicts with, coverage for residential treatment facilities under the Plan. Despite Plaintiff's repeated argument in appeals that Sandhill satisfied the Plan requirements, Aetna failed to ever respond to the argument or even reference the applicable Plan language cited by Plaintiff in appeals, thereby continuing to deny Plaintiff a full and fair review.

The Court should apply a de novo standard of review because there is no evidence of plan documents delegating discretionary authority to Aetna. Under a de novo review, Plaintiff has proven his claim by a preponderance of the evidence and Aetna's denial was incorrect. Even under an abuse of discretion standard, a *second* arbitrary and capricious denial following remand does not merit deference. Under any standard of review, Aetna's denial was unreasonable.

Plaintiff requests that the Court deny Defendant's Motion in its entirety and requests that the Court enter judgment in Plaintiff's favor.

## II.    Response to Defendant's Summary of Facts

Plaintiff respectfully refers the Court to Plaintiff's Statement of Undisputed Material Facts submitted in support of Plaintiff's Cross-Motion for Summary Judgment (ECF No. 56-2), which is incorporated herein by reference, and to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, filed herewith.

III.    <u>Arguments</u>

    A.    <u>Defendant Has Not Met Its Burden of Showing a Valid Grant of Discretionary Authority Sufficient to Support a Deferential Review</u>

Defendant has not met its burden of demonstrating that it is entitled to deferential review. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) ("the party claiming deferential review should prove the predicate that justifies it"). Therefore, the default de novo standard of review must apply to the Court's determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).

    1.    <u>Defendant Forfeits Any Potential Discretionary Review Because Aetna Repeated Procedural Errors</u>

Defendant argues that Aetna's new decision should not be reviewed de novo simply because the Court has already determined that Aetna's initial determination was arbitrary and capricious. ECF No. 57-1 at p. 12. This Court previously found that Aetna's denial was arbitrary and capricious because when a plan administrator "has not even attempted to grapple with the beneficiary's argument that an exception should apply when basing the denial of coverage on the general rule, the denial letter itself falls short of satisfying ERISA's notice requirements." ECF No. 44 at pp. 9-10. Thus, "Aetna's 'decision to deny benefits to [Plaintiff] was arbitrary and capricious in that it was rendered, in effect, 'without reason.'" *Id.* at p. 12.

Rather than cure the procedural error identified by the Court, Aetna has repeated it. Plaintiff's appeal to Aetna stated that the Plan defines providers as "licensed or certified by law to provide health care services," requires a residential treatment facility to be "appropriately licensed by the state Department of Health or its equivalent," and that Sandhill meets the Plan requirements for a residential treatment provider because it is fully licensed as a residential

treatment center by the State of New Mexico. DGIP1921[1]. *Neither of Aetna's new denials on remand, nor Defendant's Motion, address these specific arguments raised in Plaintiff's appeal.*

Even if the standard of review were abuse of discretion, deference is forfeited when the administrator's conduct amounts to more than "a single honest mistake," and instead reflects a series of denials that fail to provide a full and fair review. *Nolan v. Heald Coll.*, 745 F. Supp. 2d 916, 926 (N.D. Cal. 2010) (abuse of discretion standard did not apply because "[t]his case involves not 'a single honest mistake,' but a number of deliberate actions by the plan administrator.").

Despite the Court's specific ruling, Aetna has failed to respond to arguments raised in Plaintiff's appeal, and in doing so, subverted the ERISA goals of efficiency, predictability, and uniformity. *Conkright v. Frommert*, 559 U.S. 506, 507, 130 S. Ct. 1640, 1643, 176 L. Ed. 2d 469 (2010). Nothing about this appeal process has been efficient, predictable, or uniform. Under principles of trust law, the Supreme Court holds that a trustee may be stripped of deference when he does not exercise his discretion "honestly and fairly." *Id.* at 521. As held by the *Conkright* Supreme Court: "Multiple erroneous interpretations of the same plan provision even if issued in good faith, might well support finding that a plan administrator is too incompetent to exercise his discretion fairly." *Id.* at 521. *Romanchuk v. Bd. of Trs. of S. California United Food & Com. Workers Joint Pension Tr. Fund*, 779 F. Supp. 3d 1097, 1119 (C.D. Cal. 2025) (holding the Board abused its discretion when it was given a "second bite at the apple" and the Board issued an unreasonable plan interpretation again).

---

[1] Plaintiff previously raised this argument with the Court in prior dispositive briefing. ECF No. 41 at pp. 7, 27. The Court found that Aetna did not address the issue. ECF No. 44, at p. 7.

Aetna's denial is not improved on remand. Defendant is not entitled to discretionary review because Aetna did not address Plaintiff's argument that Sandhill met the Plan requirements for a residential treatment facility, in addition to other arguments described below.

> 2.     Defendant Has Not Met Its Burden of Showing a Valid Grant of Discretionary Authority by the SPD

In its prior Order, this Court noted the difficulty in determining the applicable standard of review given that the SPD refers to an unknown "Plan document" whose terms purportedly govern coverage. ECF No. 44, fn. 6. This Court assumed that abuse of discretion review applied because the issue would not alter the disposition. *Id.* Defendant now asks the Court to resolve that open question in its favor. The Court should not.

Defendant incorrectly claims that the SPD properly confers discretionary authority to Aetna. Defendant's claim is unsupported by the record and Defendant's own prior position. While an SPD could serve as the operative plan document, there is no evidence that it does in this case. The SPD is self-described as providing only "general information" and "general explanation" about the Plan and "does not cover all provisions, limitations, and exclusions." DGIP1655. The SPD explicitly differentiates itself from the "Plan document," warning participants that any conflict between "the information presented here" and "the Plan document," the "Plan document" controls. *Id.* The referenced "Plan document" was never produced and therefore cannot be considered by the Court. *Id.* Additionally, "other Plan documents" referenced in the SPD were never produced in litigation. DGIP1739, 1741.

Defendant has represented to this Court that "the Plan" was comprised of both "the plan and the SPD," apparently recognizing the existence of an additional plan document beyond the SPD that exists and governs coverage. ECF No. 36-1 at p. 14 (emphasis added). Defendant's own inconsistent representations to this Court reflect the ambiguity surrounding the Plan

documents, an ambiguity that must be construed against Defendant and in favor of Plaintiff. *Lifson v. INA Life Ins. Co. of New York*, 333 F.3d 349, 353 (2d Cir. 2003) ("We construe ambiguities against the drafter and in favor of the beneficiary.").

The SPD is insufficient to serve as "the determinative document" for delegation of discretionary authority. For a valid delegation of discretionary authority under ERISA, the plan instrument must set forth the procedures and authority of the plan administrator to designate fiduciary responsibilities. 29 U.S.C. § 1102(b). The SPD here does neither.

In *Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413, 422 (S.D.N.Y. 2003), the court held that "although the delegation of fiduciary responsibilities is permissible, the authority of named fiduciaries to designate fiduciary responsibilities must be expressly provided for in the ERISA plan." *Id.* (citing *Grosz–Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154 (9th Cir. 2001)). Similarly, in *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 8140 RPP, 2013 WL 3975941, at *11 (S.D.N.Y. Aug. 5, 2013), the court held that "the delegation power is not inherent; a named fiduciary can delegate the discretionary authority provided to it by a benefits plan only when the plan sets out the authority and procedures for doing so and those procedures are followed." *See also Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1283 (11th Cir. 2003) (delegation of discretionary authority not enforced because plan procedures not followed). Where a plan fails to properly draft language sufficient to trigger a discretionary review, courts will "decline to search in semantic swamps for arguable grants of discretion." *Barbu v. Life Ins. Co. of N. Am.*, 987 F. Supp. 2d 281, 289 (E.D.N.Y. 2013) (quoting *Kinstler*, 181 F.3d at 251); *Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453 (5th Cir. 2007) (court refused to place burden of careless drafting of the SPD on the employee because "accuracy is not a lot to ask.").

Defendant has not identified (and none exists) language in the SPD which permits the plan administrator to delegate discretionary authority and the manner in which it must do so.

Defendant's citations do not compel a different result. The decisions cited by Defendant address whether a document labeled an "SPD" or "summary" can nonetheless function as the operative plan instrument which is not the issue here. The issue is not whether an SPD can ever serve as the operative plan document, but whether this SPD contains a sufficient and valid delegation of discretionary authority to Aetna. Defendant's citations therefore do not address the specific deficiency Plaintiff identifies and do not satisfy Defendant's burden of demonstrating a valid delegation of discretion.

Accordingly, the default de novo standard of review applies. Under de novo review, Plaintiff has proven his claim by a preponderance of the evidence. And as set forth above, even if abuse of discretion review applies, Aetna's repeated procedural errors forfeit any deference.

B.  Aetna Failed to Provide a Full and Fair Review of Plaintiff's Appeal Which Showed that In-Network Facilities Were Inadequate

Contrary to Defendant's claim, Aetna did not "reasonably evaluate[] each aspect of Plaintiff's arguments," but rather failed to credit facts supporting coverage and failed to address arguments raised by Plaintiff. ECF No. 57-1 at p. 19. ERISA requires a full and fair review in which the administrator "takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv). Aetna has again failed to comply with that requirement. Specifically, Aetna did not credit facts which showed the inadequacy of in-network facilities, dismissed the opinions of residential treatment specialists without offering contrary evidence, and ignored Plaintiff's argument that Sandhill met the Plan requirements for a residential treatment facility.

Defendant contends that its Appeal Reviewer considered Plaintiff's arguments and evidence and reasonably concluded that four in-network facilities were clinically appropriate and available to provide residential treatment to A.D. The record does not support that conclusion. Aetna's claim that its network was adequate is contradicted by undisputed facts in the record that Aetna either disregarded without explanation, minimized without reason, or dismissed with speculation.

Aetna's engagement of a psychiatrist to review the appeal does not excuse deficiencies in its decision or automatically render the decision reasonable. The Court must "review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008) (quoting *McDonald v. Western–Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)). The evidence does not support Aetna's decision, notwithstanding Aetna's engagement of a psychiatrist to conduct the review.

The Appeal Reviewer never met or evaluated A.D., never visited any of the proffered in-network facilities, never visited Sandhill, and never consulted with a residential treatment specialist. And yet the Appeal Reviewer dismissed the opinions of clinicians who had treated A.D. and placement specialists who personally evaluated the facilities at issue. Plaintiff presented opinions from residential specialists who had visited the in-network facilities and gave specific reasons why the facilities were inadequate. The Appeal Reviewer unreasonably dismissed the opinions of residential treatment specialists (*i.e.* Dr. Russell Hyken and Jennifer Taylor) without providing an explanation, offering contrary evidence, or consulting with a residential treatment specialist. ERISA administrators "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the

beneficiary's theory of entitlement." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004); *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 142 (2d Cir. 2010) (denial was arbitrary and capricious when a defendant "almost entirely ignored the report" of a claimant's expert that "was both detailed and particularized" where the defendant's own report was not.).

Particularly here, where a young boy was in a mental health crisis, the opinions of the treatment professionals who met, evaluated, or examined him are of utmost importance. There is no reasonable substitute for in-person evaluation, which is why courts routinely discount or entirely disregard the opinions of psychiatrists who did not examine the patient. *Sheehan v. Metro. Life Ins. Co.*, 368 F. Supp. 2d 228, 254-255 (S.D.N.Y. 2005) (finding Met Life erred in conducting a paper review of a patient's psychiatric condition). While treating physicians are not entitled to special deference in ERISA cases, courts consistently give greater weight to the opinions of providers who have examined the claimant over those who conduct only a paper review, particularly in cases involving mental illness and psychiatric conditions. *Winkler v. Metro. Life Ins. Co.*, 170 F. App'x 167, 168 (2d Cir. 2006) (finding that "exclusive reliance on second-hand opinions adds to the overall picture of [the] decision as less than fair."); *Andrew C. v. Oracle Am. Inc. Flexible Benefit Plan*, 474 F. Supp. 3d 1066, 1083 (N.D. Cal. 2020) ("Courts generally give greater weight to doctors who have examined the claimant versus those who only review the file.").

Providers with direct knowledge of A.D.'s specific condition and needs were in the best position to evaluate residential treatment facilities to meet those needs. Aetna's Appeal Reviewer offered no contrary clinical evidence, conducted no independent evaluation of A.D., and never visited any of the facilities. There was no reasonable basis for dismissing the detailed and

particularized opinions of providers and placement specialists with direct knowledge of A.D. and the facilities. These failures alone render Aetna's determination arbitrary and capricious.

Aetna did not dispute facts showing the in-network facilities were unavailable and inappropriate. Aetna did not dispute that Plaintiff received no return phone calls from Meridell or San Marcos. DGIP1957, 1959. Aetna did not dispute that Plaintiff was advised that Meridell and Center for Discovery did not accept children under age 11, and that A.D. was a newly turned 10-year-old who was emotionally immature for his age. DGIP1916, 1957, 1960. Aetna did not dispute that Plaintiff was informed that Oak Plains had a five-week wait and San Marcos had a six-to-eight week wait. DGIP1917, 1958-1959. Aetna did not dispute that the in-network facilities focused on short-term assessment and stabilization rather than the intensive long-term care A.D. required. DGIP1957-1960.

These undisputed facts contradict Aetna's conclusion that in-network care was available and appropriate for A.D. Where Aetna did address information that Plaintiff was given by facilities, Aetna simply substituted its Care Advocate's or Appeal Reviewer's contrary account without explaining why it was disregarding Plaintiff's report. For example, Aetna dismissed Plaintiff's report of a five-week wait at Oak Plains because "no five-week delay was noted" when Aetna's Care Advocate called the facility. DGIP1958. That is not a reasonable basis for rejecting Plaintiff's evidence. *D.K. v. United Behav. Health*, 67 F.4th 1224, 1242 (10th Cir. 2023) (a denial was arbitrary when it was based on conclusory statements); *T. E. v. Anthem Blue Cross & Blue Shield*, No. 25-5407, 2026 WL 172050, at *8 (6th Cir. Jan. 22, 2026) ("'bare conclusions are not' an 'explanation,'" for a denial of benefits). Information given by facilities to parents seeking immediate admission for their 10-year-old's mental health crisis is far more

probative than an inquiry by Aetna's representative or what a paper reviewer concluded years later.

Aetna unreasonably dismissed safety concerns regarding Oak Plains. Plaintiff cited a published news article reporting the fatal overdose of two female adolescent patients at Oak Plains during the period Aetna recommended it for A.D. DGIP1917. Aetna claimed these deaths were not "substantiated by any authority" – a factually incorrect assertion, as the deaths were confirmed by the Montgomery County Sheriff's Office. DGIP1917. Rather than address this evidence, Aetna speculated that Oak Plains had "appropriate de-escalation and restraint procedures, if needed," without any acknowledgment of A.D.'s documented history of violent behaviors toward peers of lower IQ, which was precisely the population Oak Plains served.[2] DGIP1958. Aetna's speculation cannot serve as the substantial evidence necessary to sustain a denial.

Aetna incorrectly claimed there was "no clinical evidence" that A.D.'s transfer to residential treatment was needed immediately. That claim is directly contradicted by Aetna's actions as set forth in Plaintiff's appeal: "[A.D.'s] need to transfer to residential treatment was accelerated when Aetna denied further benefits for [A.D.'s] hospitalization at Huntsman on October 3, 2022, and Huntsman unequivocally stated that [A.D.] was unsafe to return home." DGIP1917. Aetna did not address these facts in its decision.

Contrary to Defendant's claim, Aetna did not address Plaintiff's arguments that the federal Affordable Care Act ("ACA") and New York State Department of Financial Services

---

[2] Defendant also dismisses the deaths at Oak Plains as occurring after A.D.'s admission to Sandhill. Plaintiff raised safety concerns about Oak Plains before A.D.'s admission to Sandhill. DGIP1765 ("I am very concerned to learn that two of the places recommended (Oak Plains and North Spring) seem to have multiple allegations of harming children in their care."). The subsequent death of two patients at Sandhill confirms Plaintiff's fears were justified.

regulations regarding network adequacy independently required approval of a SCA for Sandhill. Plaintiff argued that because Aetna uses the same provider network for both self-funded and insured plans, this standard applies to the network available to members of the Deloitte benefit plan. DGIP1915. And, as an ERISA fiduciary, the Deloitte benefit plan must ensure that the provider network promised to plan members is sufficient in number and type of providers and can be accessed without unreasonable delay. *Id.* Aetna repeated its conclusion that "the regulatory requirements you reference are inapplicable to self-funded plans like the Plan," without addressing Plaintiff's specific point that Aetna's use of a shared network of providers brings it within the scope of the regulations. DGIP1953. By failing to address Plaintiff's argument, Aetna failed to provide a full and fair review.

C.    Aetna's Decision to Deny Plaintiff's Benefits for Sandhill Based on the Plan's Out-of-Network Exclusion was Arbitrary and Capricious

Defendant ignores the Plan requirements for residential treatment facilities, instead relying on Aetna's application of secret criteria that imposes unreasonable and unduly restrictive additional requirements for residential treatment facilities. ERISA requires a fiduciary to consider all potential bases for coverage under the Plan and discharge its duties solely in the interests of participants and beneficiaries. 29 U.S.C. § 1104(a)(1). Defendant has failed to meet its fiduciary obligations by ignoring bases for coverage under the Plan and not administering the Plan in the interests of participants and beneficiaries.

First, Aetna completely ignored the Plan requirements for a provider and residential treatment facility. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) ("The plan, in short, is at the center of ERISA."); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 838 (8th Cir. 2007) ("Among the primary purposes of ERISA is to ensure the integrity of written plans and to protect the expectations of participants and

-13-

beneficiaries."). The Plan provides benefits for residential treatment for patients diagnosed with

mental health disorders. DGIP1682. The Plan defines "Providers" as:

> A physician, health professional, person, or facility, licensed or certified by law to
> provide health care services to you. If state law does not specifically provide for
> licensure or certification, they must meet all Medicare approval standards even if
> they don't participate in Medicare.

DGIP1752. The Plan defines "Treatment Center" as:

> A facility that provides a program of effective Mental Disorder Treatment and
> meets all of the following requirements:
> - It is established and operated in accordance with any applicable statelaw
> - It provides a program of treatment approved by a Physician and the
>   Claims Administrator
> - It has or maintains a written, specific, and detailed regimen requiring
>   full-time residence and full-time participation by the patient
> - It provides at least the following basic services:
>   - Room and Board (if this Plan provides inpatient benefits at a
>     Treatment Center)
>   - Evaluation and diagnosis
>   - Counseling
>   - Referral and orientation to specialized community resources
>   - A Treatment Center which qualifies as a Hospital is covered as
>     a Hospital and not as a Treatment Center

DGIP1754-1755. The Plan requires that a residential treatment facility is "appropriately licensed

by the state Department of Health or its equivalent." DGIP1682. The Plan provides no other

requirements for a residential treatment facility. An ERISA plan must be written in a manner

calculated to be understood by the average plan participant. 29 U.S.C. § 1022(a). The Plan is

correctly understood to mean that a residential treatment facility satisfies the Plan terms if it is

fully licensed by the state and meets the requirements for a Treatment Center. Plaintiff explained

in his appeal that Sandhill met the Plan requirement for a residential treatment provider because

it is a fully licensed residential treatment center in New Mexico. DGIP1921. Aetna entirely

ignored Plaintiff's appeal on this point. Aetna has never disputed that Sandhill met the Plan

requirements for a Provider, Treatment Center, and residential treatment facility.

Second, Aetna may not impose new requirements for coverage that do not exist in the Plan; Aetna must apply the Plan terms for coverage, as provided to the members. The Plan does not include, reference, or incorporate Aetna's secret criteria. 29 U.S.C. § 1022(b) (plans must contain a description of any circumstance which "may result in . . . denial or loss of benefits"). Without question, Aetna's 42 pages of criteria are clearly secret – confirmed by the large "Confidential and Proprietary" watermark across every page[3] – and provided without the foundation for its development or scope of its application. DGIP1868-1910. The criteria were never meant to be viewed by Plan participants and regardless, the criteria are indecipherable to the average plan participant. 29 U.S.C. § 1022(a).

Aetna's secret criteria – not disclosed to the public or Plan participants, not referenced or incorporated in the Plan – are not Plan terms and cannot be applied to reduce coverage. ERISA requires that an administrator inform plan participants of the criteria to be applied. *Magee v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 308, 318–19 (S.D.N.Y. 2009); *N.C. v. Premera Blue Cross*, No. 23-35381, 2024 WL 2862586, at *1 (9th Cir. June 6, 2024) ("Because the plan does not reference the InterQual criteria, let alone necessitate their application, it was reasonable for N.C. to expect that treatment deemed medically necessary by A.C.'s treating physicians would be covered under the plan."); *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1261 (3d Cir. 1993) (finding that courts refuse criteria "where the plan has not explicitly referenced them"); *Pirozzi v. Blue Cross-Blue Shield of Va.*, 741 F. Supp. 586, 591 (E.D. Va. 1990) (refusing to uphold coverage denial based on finding the health plan's internal criteria are not part of the Plan").

---

[3] Further, the criteria include footers stating: "Confidential and Proprietary," "Not to be Reproduced or Disclosed to Others Without Prior Written Approval Not subject to disclosure under FOIA, including exemption 4, or otherwise." *i.e.* DGIP1869.

Aetna "cannot adopt *any* guidelines [it] chooses and then rely upon these guidelines with impunity; rather, they may rely only upon those guidelines that reasonably interpret their plans." *Prolow v. Aetna Life Ins. Co.*, 584 F. Supp. 3d 1118, 1138 (S.D. Fla. 2022) (*quoting Egert v. Conn. General Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir. 1990)). By imposing criteria with accreditation and staffing requirements that conflict with Plan requirements for coverage, and restrict coverage otherwise available under the Plan, Aetna unreasonably substituted its own criteria for the Plan's clear terms.

Third, Defendant relies on the Plan's "utilization review process" to justify Aetna's application of secret criteria that restricts and conflicts with coverage provided under the Plan. The Plan's only reference to the "utilization review process" is under the heading Prior Authorization. DGIP1667-1668. There is no language in the Plan that permits Aetna to conduct the "utilization review process" to circumvent and substitute the Plan terms for more restrictive criteria that reduces coverage for participants. The utilization review process is described as "a set of formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness, efficacy, or efficiency of, health care services, procedures, or settings." DGIP1668. The "utilization review process" does not authorize Aetna to impose additional requirements on residential treatment facilities beyond what is already clearly set forth in the Plan. Aetna's secret criteria imposes additional requirements beyond the Plan terms, such as accreditation by specific organizations and staffing ratios as conditions of coverage. Aetna's unauthorized expansion of the utilization review process beyond its defined scope is arbitrary and capricious.

The court's evaluation of this issue in *Elazouzi v. Aetna Life Ins. Co.*, No. EDCV 22-0858 JGB (SPX), 2023 WL 8530010 (C.D. Cal. Dec. 7, 2023) is instructive. In *Elazouzi*, Aetna relied

on its clinical policy bulletins ("CPBs") to deny plaintiff's claim as experimental. The court

found Aetna's CPBs were not explicitly referenced in the plan definition of experimental and

were therefore not incorporated into the plan for purposes of evaluating experimental treatment.

*Id.* at 6-7. The court held that if defendant intended to define experimental using the CPBs, "it

could have explicitly referred to the CPBs in that part of the Plan, as it did in other parts." *Id.* at

6. Similarly, in *Est. of Dick by & through Dick v. Deseret Mut. Benefit Adm'rs*, No. 2:21-CV-

01194-HL, 2023 WL 2071523, at *5 (D. Or. Feb. 17, 2023), the court held that medical policy

not referenced in the plan could not be used to deny benefits:

> Because the Medical Policy was not a Plan document, Deseret Mutual could only
> rely on the Medical Policy if there was some silence or ambiguity that the
> Medical Policy cured. *Bergt*, 293 F.3d at 1143-44. Even if the Medical Policy
> were a plan document, Deseret Mutual could still only exclude coverage based on
> this policy if the Master Plan Document's provision did not unambiguously cover
> the procedure. *Id.* No such silence or ambiguity exists here.

*Id.* There is no "silence or ambiguity" here regarding the Plan requirements for coverage at a

residential treatment facility. Aetna's secret criteria are not referenced in the Plan, nor cure a

deficiency in the Plan, and were therefore improperly applied to deny coverage for A.D.'s

residential treatment at Sandhill.

Fourth, Aetna failed to address Plaintiff's evidence on appeal that Aetna's secret criteria

were unreasonable because they do not reflect the standard of care for mental health residential

treatment in the treatment of mental illness in children. DGIP1921-1922, 1942-1944. Plaintiff's

appeal provided a letter from Dr. Hyken, a specialist in mental health treatment for children, who

wrote that Sandhill does not need to be accredited by additional organizations to be residential

treatment center licensed by the state and that many insurance companies and school districts

fund placements for children at Sandhill. DGIP1943. Dr. Hyken wrote that Aetna has paid claims

for treatment of other patients at Sandhill. *Id.* Dr. Hyken wrote that the Sandhill Medical Director

is a psychiatrist and it is typical that residential treatment clinical staff are not on site 24/7, as opposed to hospital. DGIP1944. Aetna never addressed Plaintiff's argument or Dr. Hyken's letter that the Aetna criteria do not reflect the standard of care.

Fifth, Aetna improperly applied accreditation and staffing criteria to deny coverage for treatment of a mental illness with no comparable criteria applied to deny coverage for treatment of a physical illness. Residential treatment is a level of care offered exclusively for the treatment of mental illness and substance use disorders. The record does not reflect, and Aetna has not identified, any equivalent criteria applied to analogous levels of care for physical illness. The Federal Mental Health Parity and Addiction Equity Act, 29 U.S.C. § 1185a, ("Parity Act") prohibits group health plans from imposing treatment limitations on mental health benefits that are more restrictive than the predominant limitations applied to substantially all medical benefits.[4] The Parity Act aims to "end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016). Essentially, the Parity Act requires group plans to "treat sicknesses of the mind in the same way that they would a broken bone." *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F.Supp.2d 527, 542 (S.D.N.Y. 2013), *aff'd in part, vacated in part*, 798 F.3d 125 (2d Cir. 2015). A plan violates the Parity Act when it applies more stringent facility criteria to mental health levels of care than to comparable medical levels of care. *Id.*

---

[4] Plaintiff twice appealed to Aetna arguing that Aetna's undisclosed criteria violated the Parity Act and requesting Parity Act disclosures and twice Aetna ignored the argument entirely and did not provide disclosures. DGIP0135, 0224-0226, 0889, 0978-0980. Aetna cannot now claim it lacked notice or an opportunity to respond. Aetna simply chose not to engage.

The criteria used by Aetna are specific to the residential treatment of a patient suffering mental illness. The record does not contain any equivalent requirements for medical care, which raises a disparity in the treatment limitations for mental health care versus medical care. For example, Aetna's requirement that there be a clinician on site 24/7 is only found in Aetna's criteria for residential treatment. The Plan does not have any requirement that there be a clinician on site 24/7 for skilled nursing care which is the comparable level of care to residential treatment for a mental health condition. Parity Act Final Rules 78 FR 68240-01(II)(D); *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 257 (S.D.N.Y. 2018). Thus, the Parity Act requires that "any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation" to treatment at a residential treatment center must be "comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to" treatment at a skilled nursing facility. *See* 45 CFR 146.136(c)(4)(i). This issue weighs against the reasonableness of Aetna's decision to impose criteria solely targeting mental health treatment.

D.    Aetna's Final Determination on Remand Was Arbitrary and Capricious
and Must Be Reversed

Even under an abuse of discretion standard, Aetna's final determination on remand must be reversed. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011) ("even an unqualified abuse of discretion standard of review does not mean that the administrator necessarily prevails on the merits, because 'no talismanic words. . . can avoid the process of judgment.'"). Under an abuse of discretion review, the Court considers whether the administrator's decision was made "without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citation omitted). "Substantial evidence is such evidence that a reasonable mind might

accept as adequate to support the conclusion reached . . . [and] requires more than a scintilla but less than a preponderance." *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation omitted).

This Court ruled that Aetna's original denials were arbitrary and capricious because Aetna violated ERISA by failing to adequately explain the basis for denial by not addressing the requested SCA for the out-of-network provider. ECF No. 44 at p. 8 (citing 29 C.F.R. § 2560.503–1(g)). Aetna's misconduct is not erased by the Court affording Aetna another review on remand. Aetna's arbitrary and capricious prior decisions must be weighed within the totality of the circumstances in evaluating the reasonableness of Aetna's new appeal decision. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006) ("A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it.").

As set forth above, even if abuse of discretion review applies, Aetna has forfeited any entitlement to deference through its repeated failure to provide a full and fair review. Aetna's repeated denials confirm that Aetna cannot exercise its discretion fairly. *Conkright*, 559 U.S. at 521. For the same reasons, and as demonstrated below, Aetna's determination fails under an abuse of discretion standard. Aetna's new appeal decision fares no better than the original. Aetna has again issued a decision which is unreasonable, nonresponsive to issues raised on appeal, and not supported by substantial evidence.

       1.    <u>Aetna's New Determination on Remand Is Not Supported by Substantial Evidence or the Plan Language</u>

Defendant's first argument is that out-of-network care is not covered under the Plan and therefore should not be approved here. The problem with the argument is that the record establishes that Aetna's in-network residential treatment facilities were inadequate for A.D.'s

unique and critical mental health needs. As such, Plaintiff was forced to turn to an out-of-network facility for his son's critical care.

This Court also held that the Plan "provides for such an exception." ECF No. 44 at p.7 (citing DGIP1667-1668). Indeed, the Plan provides that Aetna may approve out-of-network services when in-network services are unavailable (DGIP1667-1668, 1739), and Aetna has approved out-of-network services for A.D. through SCAs. DGIP0882, 1771, 1915. Aetna's care manager agreed that if an in-network facility was not available, he would "help the family obtain a single case agreement or network exception." DGIP0888; *Jamie F. v. UnitedHealthCare Ins. Co.*, No. 19-CV-1111-YGR, 2020 WL 6802416, at *1 (N.D. Cal. Nov. 19, 2020) (claims administrators arrange SCAs with out-of-network providers to ensure that members can access Plan benefits when there is network inadequacy). Plaintiff raised these arguments in his appeal to Aetna. DGIP1914-1915. In response, Aetna did not disagree that a SCA was available but rather, that it chose not to approve a SCA. DGIP1953-1954. Therefore, Defendant's stance that out-of-network coverage is never available is not credible and contradicted by the record.

Absent such accommodation, the plan benefit becomes illusory because it is effectively inaccessible to the plan participants. "[T]he provisions of an ERISA plan should be construed so as to render all provisions meaningful and to avoid illusory promises." *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 150 (2nd Cir. 1999) (internal quotation marks and citations omitted). The illusory promises doctrine "instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440, 135 S. Ct. 926, 936, 190 L. Ed. 2d 809 (2015); *IUE-CWA v. Gen. Elec. Co., 745 F. App'x* 583, 600 (6th

Cir. 2018) (Stranch, J., concurring) ("Broken promises matter. They matter in ordinary contract law, and they matter in ERISA law.").

Courts have found that health coverage is illusory when not supported by sufficient in-network providers. In *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 733–34 (N.D. Ill. 2017), the plaintiffs claimed that in-network benefits should apply to out-of-network providers because there were no available in-network providers. *Id.* at 732. The court found that healthcare services must be "meaningfully available to plan participants," relying on the reasoning in *Condry v. UnitedHealth Grp., Inc.*, No. 17-CV-00183-VC, 2017 WL 7420997, at *2 (N.D. Cal. Aug. 15, 2017). In *Condry*, the court rejected the defendant's argument that it could show network availability under the Affordable Care Act ("ACA") "so long as it has at least one provider of lactation counseling services, no matter how far that provider is from the patient, and no matter how difficult it is to identify and get an appointment with that provider." *Id.* at *3. The court dismissed the argument as "absurd" because "[t]here is no 'coverage' for a service if a patient can't find the service. . ." *Id.* The court held that healthcare services "must be available in a meaningful way" to comply with the ACA. *Id.* An analogous ERISA plan can be found in the Ninth Circuit decision *Jacobs v. Kaiser Found. Health Plan Inc.*, 265 F. App'x 652, 654 (9th Cir. 2008). The Ninth Circuit held that Kaiser was required to approve coverage for services with an out-of-network provider if an in-network provider was not available. *Id.*; *see also Boyle v. Legacy Health Plan No. 504*, No. 6:20-CV-00705-AA, 2023 WL 6318923, at *12 (D. Or. Sept. 28, 2023); *Zucca v. First Energy Serv. Co.*, 642 F.Supp.3d 621, 630 (N.D. Ohio 2022) (requiring Anthem to pay benefits for an out-of-network provider when the in-network providers could not provide the necessary specialized treatment).

Plaintiff was entitled to out-of-network coverage due to the inadequacy of Aetna's network and the decisions cited by Defendant do not change that result. The decision *Anonymous Oxford Health Plan Member With Id No. 6023604\*01 v. Oxford Health Plans (N.Y.), Inc.*, No. 08CIV.943PAC, 2009 WL 667237 (S.D.N.Y. Mar. 16, 2009) is inapplicable because here the Plan provides for an exception by way of a SCA, Aetna confirmed the exception by approving out-of-network services for A.D. through SCAs, and Aetna's care manager agreed that if an in-network facility was not available, he would "help the family obtain a single case agreement or network exception." ECF No. 44 at p.7; DGIP0882, 0888, 1667-1668, 1771, 1915. Likewise, the decision *DeFrancis v. MVP Health Plan, Inc.*, No. 05CIV7086CMGAY, 2005 WL 8179331, at \*3 (S.D.N.Y. 2005) is not comparable because the *DeFrancis* plaintiff sought different treatment with an out-of-network provider than the treatment that was available with an in-network provider. Here, Plaintiff seeks the same treatment – residential treatment – for his son regardless of whether provided in-network or out-of-network.[5]

Defendant cites the decision *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) which concerns the plaintiff's claim for a healthcare service which was excluded from coverage. Here, residential treatment is not excluded from coverage, it is a covered healthcare service under the Plan. The issue is the lack of a healthcare provider within Aetna's network and Plaintiff's argument that to provide meaningful access to coverage, a SCA is required. Thus, the *Krauss* decision is unhelpful to the issues presented in this case.

Defendant cites the decision *Redstone v. Empire Healthchoice HMO, Inc.*, No. 23-CV-2077 (VEC), 2024 WL 967416, at \*2 (S.D.N.Y. Mar. 5, 2024) which is inapplicable because it

---

[5] An additional decision relied on by Defendant, *Curran v. Aetna Life Ins. Co.*, No. 7:2013cv00289, 2016 WL 3843085 (S.D.N.Y. 2016), is even further afield from the facts here. For the same reasons as the discussion of *Anonymous* above, the *Curran* decision lacks relevance or assistance to understanding the arguments presented here.

concerns the plaintiff's lack of allegations at the pleading stage about the unavailability of in-network providers. Here, the case is at the dispositive motion stage and Plaintiff has presented ample evidence regarding the unavailability of in-network providers. More relevant to the Court's review are the decisions in *Jacobs*, *Boyle*, *Zucca*, *Briscoe*, and *Condry* in which courts evaluated health plans which provided only in-network coverage and the courts awarded benefits for out-of-network coverage due to lack of availability of in-network providers.

Defendant claims that "Aetna may consider" its "formal techniques" to deny claims, and cites the "utilization review process" discussed above. ECF No. 57-1 at p. 28. As explained above, the utilization review process does not permit Aetna to circumvent and substitute the Plan terms with more restrictive criteria that reduces coverage for participants. Defendant provides no authority either, only stating that Aetna "may consider" such techniques, not use them as a basis to contradict the Plan and deny benefits. *Id.*

As explained above, Aetna's review was deficient in failing to respond to Plaintiff's argument that Aetna's secret criteria do not reflect the standard of care for mental health residential treatment in the treatment of mental illness in children. DGIP1921-1922, 1942-1944. Defendant claims Aetna's final denial letter was "exhaustive" (ECF No. 57-1 at p. 25), yet it failed to address critical arguments raised in Plaintiff's appeal. There is no foundation, no explanation, no justification for applying the Aetna criteria at all, much less for the overly restrictive requirements they impose on participants.

        2.      <u>Aetna Did Not Respond to Plaintiff's Arguments Regarding Federal and State Insurance Laws and Defendant May Not Now Provide Such Belated Argument</u>

Defendant contends that Plaintiff's citations to the ACA and New York Insurance Law are inapplicable and describes "QHP issuers" and cites decisions supporting its argument.

-24-

Plaintiff moves to strike and exclude Defendant's arguments in Section III(B)(1) of its Motion from the Court's consideration because Aetna failed to address Plaintiff's argument during the appeal process. ECF No. 57-1 at pp. 29-30.

Plaintiff's appeal argued the ACA's requirement for a sufficient network applied to Aetna. DGIP1915. Plaintiff argued that because Aetna uses the same provider network for both self-funded and insured plans, its network available to members of the Deloitte benefit plan must comply with the ACA. *Id.* And, as an ERISA fiduciary, the Deloitte benefit plan must ensure that the provider network promised to plan members is sufficient in number and type of providers and can be accessed without unreasonable delay. *Id.* Plaintiff's appeal further argued that Aetna issues and administers health insurance policies in the State of New York and must meet the State's network adequacy requirements. *Id.* Aetna's response to Plaintiff's argument was limited to a single sentence: "However, as we explained previously, the regulatory requirements you reference are inapplicable to self-funded plans like the Plan." DGIP1953.

The Court should reject Defendant's attempt to present a substantive response to Plaintiff's argument that was not provided in any denial letters. None of the arguments in Section III(B)(1) of Defendant's Motion were provided during the appeal process and as such, should be excluded from the Court's consideration. ERISA requires that denials set forth specific reasons for denial, not withhold reasons until litigation. 29 U.S.C. § 1133. Otherwise, participants risk being "sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 287 (2d Cir. 2000); *Delprado v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 1:12-CV-00673 BKS, 2015 WL 1780883, at *31 (N.D.N.Y. Apr. 20, 2015) (refused to consider new reason for denial in litigation, stating "any after-the-fact rationale is not relevant to reviewing the Administrator's decision."); *Martin v.*

*Hartford Life & Acc. Ins. Co.*, 478 F. App'x 695, 698 (2d Cir. 2012) ("Hartford failed to provide Martin with the 'adequate notice . . . setting forth the specific reasons for such denial' and the 'full and fair review' to which she is entitled."); *Daniel B. v. United Healthcare*, No. 220CV00606DBBCMR, 2022 WL 4484622 at *17-18 (D. Utah Sept. 27, 2022) (refused to credit arguments not raised in the denial letter).

Even if considered, Defendant's arguments fail. Defendant claims it is a self-funded health plan and not an insurer and therefore is not required to comply with the ACA requirements. 45 C.F.R. § 156.230(a)(1)(ii). Aetna is a health insurance company which qualifies as a "QHP issuer" under the ACA and Aetna is required to provide a sufficient network for members in the Deloitte benefit plan. It is irrelevant that Aetna served only as claims administrator and not the insurer, because Aetna's provider network is the same for both insured plans and self-funded plans it administers. Aetna was operating at the behest of the Plan and was responsible for ensuring that the Plan provided a sufficient network for members.

Defendant's argument regarding New York law rests on the theory that Plaintiff must reference the law in his Complaint. Plaintiff's claims are based under ERISA, not an independent action under New York law. Plaintiff argues that Aetna's denial was unreasonable on multiple grounds, including its failure to comply with New York law and the ACA. Pursuant to New York Insurance Law, health insurers such as Aetna are required to ensure that its provider networks are adequate to meet the health needs of members and provide an appropriate choice of providers sufficient to render the services covered under the health plan. NY Ins L § 3241. Section 3241 requires that companies that issue "a health insurance policy or contract with a network of health care providers shall ensure that the network is adequate to meet the health needs of insureds and

provide an appropriate choice of providers sufficient to render the services covered under the policy or contract." NY Ins L § 3241(a).

Defendant relies on the decision *N. Jersey Plastic Surgery Ctr.*, LLC v. 1199SEUI Nat'l Benefit Fund, No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) which held that the amended complaint provided conclusory allegations "that there were no adequate participating providers." *Id.* at *7. The court held that the allegations were not plausible and did not give rise to a private right of action. *Id.* The decision is inapplicable because here, Plaintiff provided specific details about the in-network providers identified by Aetna and how they were inappropriate or unavailable for A.D.'s residential treatment, and Plaintiff does not seek a private right of action under New York law.

Defendant's final argument is self-contradictory. Defendant argues both that out-of-network coverage is not available under the Plan, and that SCAs are available and have been approved. ECF No. 57-1 at pp. 31-32. Plaintiff was entitled to a SCA here because of the inadequacy of Aetna's network. The fact that Aetna approved a SCA for A.D.'s outpatient provider is evidence that out-of-network coverage is available under the Plan.

### E.    Plaintiff Also Prevails Under a De Novo Review

Under de novo review, the Court is called upon to determine whether Plaintiff is entitled to benefits under the terms of the Plan without deference to either party's interpretation. *Firestone*, 489 U.S. at 112; *see also Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 296 (2d Cir. 2004) ("[U]pon de novo review, a district court may render a determination on a claim without deferring to an administrator's evaluation of the evidence."). The Court "interprets the terms of the benefits plan, . . . determines the proper diagnostic criteria, . . . reviews the medical evidence, and reaches its own conclusion about whether the plaintiff has shown, by a

preponderance of the evidence, that she is entitled to benefits under the plan." *McDonnell*, 2013 WL 3975941 at *12 (citations omitted). "The question for the Court is simply whether the decision to deny Plaintiff's claim was correct." *Macalou v. First Unum Life Ins. Co.*, No. 22-CV-10439 (PKC), 2024 WL 4867091, at *1 (S.D.N.Y. Nov. 22, 2024).

Plaintiff establishes an entitlement to Plan benefits and for brevity and to avoid repetition, incorporates arguments made above on these issues. First, in-network residential treatment facilities were inadequate for A.D.'s unique and critical mental health needs. DGIP0132-0133, 0885-0888, 1916-1918. Second, the Plan provides that Aetna may approve out-of-network services when in-network services are unavailable and thus a SCA was appropriate because of the network inadequacy. DGIP1667-1668, 1739. Third, Plaintiff satisfied the terms of the Plan for benefits for A.D.'s residential treatment at Sandhill because it was a state licensed residential treatment facility as required by the Plan.

IV.    Requested Relief

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion for summary judgment, grant Plaintiff's motion for summary judgment and enter judgment in Plaintiff's favor. Plaintiff requests an award of benefits, attorney's fees, costs, and prejudgment interest, to be determined by separate motion.

Dated: February 27, 2026          By: /s/ *Elizabeth K. Green*
                                      Elizabeth K. Green, admitted *pro hac vice*
                                      California State Bar No. 199634
                                      GREEN HEALTH LAW, APC
                                      201 N. Brand Blvd., Suite 200
                                      Telephone: (818 722-1164
                                      E-mail: egreen@greenhealthlaw.com

                                      Eugene Killian, Jr., Esq. (Attorney ID 2043289)
                                      Dimitri Teresh, Esq. (Attorney ID 5125281)
                                      THE KILLIAN FIRM, P.C.
                                      48 Wall Street, 11th Floor,
                                      New York, NY 10005
                                      (732) 912-2100
                                      E-mail: ekillian@tkfpc.com
                                      E-mail: dteresh@tkfpc.com

                                      Attorneys for Plaintiff
                                      John Doe

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2</u>

The undersigned, counsel of record for Plaintiff John Doe, certifies that this brief contains

8,653 words which complies with the word limit of Local Civil Rule 7.1(c).


Dated: February 27, 2026                    By:  <u>/s/ *Elizabeth K. Green*</u>
                                            Elizabeth K. Green, admitted *pro hac vice*
                                            California State Bar No. 199634
                                            GREEN HEALTH LAW, APC
                                            201 N. Brand Blvd., Suite 200
                                            Telephone: (818 722-1164
                                            E-mail: egreen@greenhealthlaw.com