UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| John Doe,<br><br>                Plaintiff,<br><br>v.<br><br>Deloitte LLP Group Insurance Plan,<br><br>                Defendant. | Civil Action No. 1:23-cv-04743-JPC<br><br>**DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Judge John P. Cronan** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

I.     Aetna's Benefit Denial Determination Is Entitled To Deferential Review. ........................1

II.    On-Point Precedent Establishes That Reference In An SPD To Other Plan Documents Does Not Invalidate An Otherwise Valid Delegation of Authority. .......2

III.   Aetna Provided Full and Fair Review of Plaintiff's August 13, 2025 Appeal. ..................4

IV.   The Plan's Terms Do Not Support Coverage of Sandhill Expenses. ...............................6

      1.    Plaintiff's Recycled Plan Language Arguments Remain Meritless. .......................6

      2.    Aetna Properly Applied Its Non-Contracted RTC Criteria. ...................................8

V.    Plaintiff's Parity Act Arguments Must Be Disregarded. .................................................11

VI.   Plaintiff's Preference for Sandhill Does Not Create a Network Inadequacy. ..................11

VII.  A Claims Administrator Need Not Brief Legal Arguments Raised In An Administrative Appeal. ............................................................................12

CONCLUSION....................................................................................................................13

1106842518\8\AMERICAS

## TABLE OF AUTHORITIES

**Cases**

*Barbu v. Life Ins. Co. of N. Am.*,
    987 F. Supp. 2d 281, 283 (E.D.N.Y. 2013) ...............................................................................3

*Blanck v. Consol. Edison Ret. Plan*,
    No. 02 CIV. 7718(LTS)(DC, 2004 WL 115199 (S.D.N.Y. Jan. 26, 2004) .............................7

*Boyle v. Legacy Health Plan No. 504*,
    No. 6:20-CV-00705-AA, 2023 WL 6318923 (D. Or. Sept. 28, 2023) ..................................12

*Briscoe v. Health Care Serv. Corp.*,
    281 F. Supp. 3d 725, 733, 734-36 (N.D. Ill. 2017) ................................................................12

*Callas v. S&P Global Inc.*,
    No. 19 Civ. 1478 (PGG), 2022 WL 255114 (S.D.N.Y. Jan. 26, 2022) ...................................9

*Condry v. UnitedHealth Grp., Inc.*,
    No. 17-CV-00183-VC, 2017 WL 7420997 (N.D. Cal. Aug. 15, 2017) ................................12

*Conkright v. Frommert*,
    559 U.S. 506, 506, 517-521 (2010) ....................................................................................1, 2

*DeFrancis v. MVP Health Plan, Inc.*,
    No. 05CIV7086CMGAY, 2005 WL 8179331 (S.D.N.Y. 2005) .............................................6

*Feifer v. Prudential Ins. Co. of Am.*,
    306 F.3d 1202, 1205-10 (2d Cir. 2002) ...............................................................................3, 4

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101, 111 (1989) .........................................................................................................2

*Hobson v. Metropolitan Life Ins. Co.*,
    574 F.3d 75, 87 (2d Cir. 2009) ................................................................................................5

*Israel Aircraft Indus. Int'l Inc. v. Bica*,
    No. 98 CIV. 5098(AJP), 2000 WL 352452 (S.D.N.Y. Apr. 5, 2000) .....................................7

*Jacobs v. Kaiser Found. Health Plan Inc.*,
    265 Fed. App'x 652 (9th Cir. 2008) .....................................................................................12

*Julie L. v. Excellus Health Plan, Inc.*,
    447 F. Supp. 3d 38, 58 (W.D. N.Y. 2020) ............................................................................11

*Krauss v. Oxford Health Plans, Inc.*,
    517 F.3d 614, 618-21, 623, 627-29 (2d Cir. 2008) ..............................................................9, 12

*Magee v. Metro. Life Ins. Co.*,
    632 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) ..............................................................................9

*McDonnell v. First Unum Life Ins. Co.*,
    No. 10 CV 8140 RPP, 2013 WL 3975941 (S.D.N.Y. Aug. 5, 2013) .......................................3

*N. Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*,
    No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) ...............................13

*Nolan v. Heald Coll.*,
    745 F. Supp. 2d 916, 922 (N.D. Ca. 2010) ..............................................................................2

*Romanchuk v. Bd. of Trustees of S. California United Food & Com. Workers Joint
    Pension Tr. Fund*,
    779 F. Supp. 3d 1097, 1108 (C.D. Cal. 2025) .........................................................................2

*Rubio v. Chock Full O'Nuts Corp.*,
    254 F. Supp. 2d 413, 422 (S.D.N.Y. 2003) ..............................................................................3

*Savage v. Sutherland Global Services, Inc.*,
    521 F. Supp.3d 308, 314 (W.D.N.Y. 2021) ...........................................................................12

*Shaw v. Connecticut Gen. Life Ins. Co.*,
    353 F.3d 1276, 1282-83 (11th Cir. 2003) ................................................................................3

*Sheehan v. Metro. Life Ins. Co.*,
    368 F. Supp. 2d 228, 254-55 (S.D.N.Y. 2005) ........................................................................5

*Thomas v. Egan*,
    1 F. App'x 52, 54 (2d Cir. 2001) ...........................................................................................11

*Washington v. Murphy Oil USA, Inc.*,
    497 F.3d 453 (5th Cir. 2007) ................................................................................................3, 4

*Winkler v. Metro. Life Ins. Co.*,
    170 F. App'x 167 (2d Cir. 2006) .............................................................................................5

*Zucca v. First Energy Serv. Co.*,
    642 F. Supp. 3d 621 (N.D. Ohio 2022) ..................................................................................12

-iv-

**Statutes/Regulations**

29 U.S.C. § 1022(a) ...........................................................................................................9, 10

29 U.S.C. § 1022(b) ..................................................................................................................3

29 U.S.C. § 1132(a)(1)(B) ......................................................................................................11

**INTRODUCTION**

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition" or "Pl. Opp.") (Doc. 61) in large part repeats previously raised but meritless arguments. Repetition does not make them any more persuasive.

Plaintiff's few new arguments are equally off-the-mark.

- Plaintiff contends the Court should apply a *de novo* standard of review. The U.S. Supreme Court's decision in *Conkright* dismantles Plaintiff's argument. The Plan validly delegates authority to Aetna to determine claims, making the deferential arbitrary and capricious standard the proper standard for review. That Aetna's final claim determination followed the Court's remand does not change the standard of review.

- There is no legal support for Plaintiff's position that a treating provider's post-remand opinion should be afforded more weight than that of a claim administrator's appeal reviewer when the insured's claim relates to whether a specific out-of-network provider, otherwise excluded from coverage, should nonetheless be covered under plan terms.

- Plaintiff's extensive reliance on cases from outside the Second Circuit do not undermine the in-Circuit precedent relied upon by Defendant that ERISA claims administrators may, in their discretion, rely upon criteria not expressly listed in a plan document when making claim determinations.

- Plaintiff's new claims based on the Mental Health Parity and Addiction Equity Act – claims Plaintiff did not raise at any point previously in this proceeding – should be disregarded. Abundant caselaw teaches that a party cannot raise new claims at this stage.

Each of these points is addressed in detail below.

**ARGUMENT**

**I.   Aetna's Benefit Denial Determination Is Entitled To Deferential Review.**

Plaintiff argues that *de novo* review should apply instead of the deferential arbitrary and capricious standard of review because Aetna's post-remand review supposedly contains procedural errors resulting in a failure to provide a full and fair review. However, in each of the

three cases cited by Plaintiff to support this contention – two of which are out-of-Circuit California cases – the court applied a deferential standard of review, not *de novo*:

- *Conkright v. Frommert*, 559 U.S. 506, 506, 521 (2010) ("Held: The District Court should have applied a deferential standard of review to the Plan Administrator's interpretation of the Plan on remand.") (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

- *Nolan v. Heald Coll.*, 745 F. Supp. 2d 916, 922 (N.D. Ca. 2010) (adopting the Magistrate Judge's report and confirming that "the report adopts the correct standard of review—abuse of discretion—toward MetLife's decisions").

- *Romanchuk v. Bd. of Trustees of S. California United Food & Com. Workers Joint Pension Tr. Fund*, 779 F. Supp. 3d 1097, 1108 (C.D. Cal. 2025) (rejecting the plaintiff's argument that *de novo* review should apply due to alleged "wholesale and flagrant violations of the procedural requirements of ERISA" by the defendant).

Plaintiff's further claim that *de novo* review should apply because Aetna failed to address Plaintiff's argument that Sandhill meets the Plan's requirements for a "residential treatment provider" is meritless. For starters, it is factually inaccurate, as Aetna did respond to this argument. *See* Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 59) ("Def. Opp."), 15-16. But even if Aetna had not (and it did), such failure would not warrant a determination that Aetna failed to provide a "full and fair review" or otherwise mandate *de novo* review. Full and fair review does not require a claims administrator to respond to every argument raised in an administrative appeal but rather, as discussed in Section III below, that it engage in a meaningful dialogue, which Aetna plainly did in response to Plaintiff's August 13, 2025 Appeal. *See* Def. Opp., 14-15; *see also Conkright*, 559 U.S. at 517-21.

  **II. On-Point Precedent Establishes That Reference In An SPD To Other Plan Documents Does Not Invalidate An Otherwise Valid Delegation of Authority.**

Plaintiff concedes that a plan document labeled as a summary plan description – as is the case here – can and often does function as the operative plan document for purposes of establishing

deferential review. (Pl. Opp., 8.) Plaintiff nonetheless argues the Plan's reference to other documents nullifies the Plan's designation of discretionary authority to Aetna for deferential review. Plaintiff's argument ignores *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002), which explained that a plan's reference to other plan documents, even those that do not exist, does not impact the plan's otherwise controlling terms. *Feifer,* 306 F.3d at 1205-10. Plaintiff's all-too-convenient failure to grapple with the consequences of that decision speaks volumes.

Instead, Plaintiff relies on inapplicable caselaw. Defendant already has addressed Plaintiff's repeated but erroneous reliance on *Rubio* and *McDonnell* (Def. Opp., at 5-6), and Plaintiff's reliance on *Barbu*, *Shaw, and Washington* in Plaintiff's Opposition fares no better.[1] In *Barbu*, the court determined one plan document which did not contain language granting discretionary authority to the claims administrator was the governing plan document and that an external appointment of claim fiduciary document which did contain language granting discretionary authority to the claims administrator could not be considered because it did not contain relevant plan terms and was excluded per the governing plan's integration clause. *Barbu v. Life Ins. Co. of N. Am.*, 987 F. Supp. 2d 281, 283 (E.D.N.Y. 2013). Similarly, in *Shaw*, the court considered the effect of a summary document separate from an ERISA disability plan that purported to grant discretionary authority to the claims administrator but concluded it could not be considered because the main plan document did not contain a grant of discretionary authority to the claims administrator and its integration clause required a certain amendment process for plan terms, which was not followed. *Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1282-83 (11th Cir. 2003) ). The *Washington*

---

[1] Plaintiff also cites without elaboration 29 U.S.C. § 1102(b). Defendant addressed Plaintiff's misplaced reliance on 29 U.S.C. § 1102(b) in prior dispositive motion briefing. (*See* Doc. 42, 2-4.)

case Plaintiff cites is simply not relevant, as the Fifth Circuit did not address any arguments concerning the proper standard of review. *Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453 (5th Cir. 2007).

Here, the Plan is the controlling plan document. It sets the terms for benefits, establishes Aetna as a fiduciary, and grants Aetna discretionary authority to construe Plan terms and make benefit determinations. (DGIP001655, 1667-68; 1682-83; 1710-15; 1733; 1739; 1745.) There are no other documents in the Administrative Record containing Plan terms or which contain conflicting processes for granting discretionary authority, and the parties long agreed that the Administrative Record governs this dispute. (Doc. 22-1.) The cases Plaintiff relies on simply cannot overcome the controlling holding in *Feifer*. The arbitrary and capricious standard of review applies. *See* Def. Opp., 2-6; *see also* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment (Doc. 57-1) ("Def. Mem."), 6-11.

### III. Aetna Provided Full and Fair Review of Plaintiff's August 13, 2025 Appeal.

Plaintiff's Opposition repeats Plaintiff's argument that Aetna failed to provide a full and fair review because Aetna's Appeal Reviewer purportedly ignored various arguments and documents submitted by Plaintiff with his August 13, 2025 Appeal. (Pl. Opp. 8; 11-13.) That argument not only is factually inaccurate, it gravely misapprehends what is required for a "full and fair review."

First, contrary to Plaintiff's claims, Aetna's November 11, 2025 Determination did consider Plaintiff's allegations regarding the purported unsuitability of the in-network facilities identified by Aetna (DIGP001956-1961), did consider the opinions of A.D.'s treating providers (DGIP001952; 1956-60; 1962), did consider Plaintiff's arguments with regard to Plan requirements for residential treatment facilities (DGIP001953; 1962-64), and did consider the

necessity of A.D.'s direct transfer from hospitalization to residential treatment facility care (DGIP001956; *see also* Def. Opp., 16, n. 4). Although Plaintiff obviously disagrees with the Appeal Reviewer's conclusions on these points (other than the need for direct transfer, on which the Appeal Reviewer and Plaintiff agreed), there can be no serious debate that the November 11, 2025 Determination reflects that these arguments were each considered by the Appeal Reviewer.

The requirements for a "full and fair review" are set forth at Def. Mem., 11-12 and Def. Opp., 13-19, and will not be restated here, other than to note that the cases cited by Defendant therein firmly establish that a "full and fair review" need not be an exhaustive compendium. Aetna's detailed, 15-page single spaced November 11, 2025 Determination "reasonably took up" Plaintiff's arguments. *Hobson v. Metropolitan Life Ins. Co.,* 574 F.3d 75, 87 (2d Cir. 2009).

Plaintiff also takes issue with the fact that Aetna's Appeal Reviewer (a Board-certified psychiatrist specializing in child and adolescent psychiatry) did not physically examine A.D. (Pl. Opp., 9-10.) Plaintiff cites *Sheehan v. Metro. Life Ins. Co.*, 368 F. Supp. 2d 228, 254-55 (S.D.N.Y. 2005) and *Winkler v. Metro. Life Ins. Co.*, 170 F. App'x 167 (2d Cir. 2006) in support of his position that this fact is purportedly meaningful. (Pl. Opp., 10.) But neither case suggests Sandhill expenses should be covered because the Appeal Reviewer did not personally treat A.D. Critically, *Sheehan* and *Winkler* each involved plan administrator assessments of whether an insured was medically disabled, which is not a disputed issue in this case. *Sheehan*, 368 F. Supp. 2d at 259, 264; *Winkler*, 170 F. App'x at 167. Neither *Sheehan* nor *Winkler* involved a claims administrator's review of whether a particular provider was the only facility in the country suitable for treatment of an

insured's medical condition, which is the situation framed by Plaintiff's arguments in his August 13, 2025 Appeal.[2]

Defendant is unaware of any caselaw – and Plaintiff cites none – suggesting a treating provider's opinion is entitled to more weight than an administrator's qualified appeal reviewer under the present circumstances. Indeed, courts within this Circuit routinely defer to claim administrators in their determination of whether providers must be covered under governing plan terms, considering the condition at issue and the clinical treatment needed. *See, e.g., DeFrancis v. MVP Health Plan, Inc.*, No. 05CIV7086CMGAY, 2005 WL 8179331, at *3 (S.D.N.Y. 2005) (denying claim for out-of-network care because plan terms required prior authorization and the administrator determined an in-network provider was capable of providing treatment, even if it was more invasive and required a multi-week wait versus the out-of-network option which was physician-recommended, less invasive, and immediately available).

### IV. The Plan's Terms Do Not Support Coverage of Sandhill Expenses.

#### 1. Plaintiff's Recycled Plan Language Arguments Remain Meritless.

Plaintiff says, yet again, that Sandhill expenses must be paid because Sandhill meets the definitions of "residential treatment facility" and "provider" under the Plan. (Pl. Opp., 14.) Defendant has already explained why this position is unsupported by facts or law. (Def. Mem., 17-18; Def. Opp., 10-11.)

---

[2] Plaintiff also cites a federal case from California that is equally irrelevant. In *Andrew C. v. Oracle America Inc. Flexible Benefit Plan*, 474 F.Supp.3d 1066 (N.D. Cal. 2020), the court considered a plan administrator's determination that residential treatment facility care was not medically necessary because a lower level of care (outpatient services) was more appropriate given the plaintiff's medical records. Here, Aetna agreed that residential treatment facility care was medically necessary for A.D. (Def. 56.1 ¶¶ 31-34.)

Moreover, Plaintiff's insistence that the Plan's definitions of these terms be read in isolation and to the exclusion of all other Plan terms is contradicted by applicable caselaw. *See, e.g., Blanck v. Consol. Edison Ret. Plan*, No. 02 CIV. 7718(LTS)(DC, 2004 WL 115199, at *6-8 (S.D.N.Y. Jan. 26, 2004) (courts "should interpret a [plan] so as to give meaning to all its terms; where one interpretation renders a provision meaningless and another gives meaning to all provisions of the Plan, the latter interpretation should be utilized") (quoting *Israel Aircraft Indus. Int'l Inc. v. Bica*, No. 98 CIV. 5098(AJP), 2000 WL 352452, *8 (S.D.N.Y. Apr. 5, 2000), *vacated in part on other grounds*).

Plaintiff's myopic interpretation of the Plan's definitions of "residential treatment facilities" and "providers" would render other Plan terms meaningless. The parties agree the Plan states a residential treatment facility is a facility "appropriately licensed by the state Department of Health or its equivalent" as a form of "Inpatient Treatment" under the category of "Mental Health Services" listed under "What is Covered." (DGIP001682, 1669.) The Plan also defines "Treatment Center" by various requirements, including that it provide "a program of treatment approved by a Physician and the Claims Administrator." Plaintiff asks the Court to stop there, arguing the Plan must reimburse expenses for all "residential treatment facility" care provided at a "Treatment Center." (Pl. Opp., 14.) Such reading would require complete disregard of other Plan provisions, including, for example: (1) the only underlined text in the entire Plan, which reads "<u>Out-of-Network care is not a covered expense in this Plan</u>" (DGIP001663); (2) the language in the Plan stating only "medically necessary" services listed under "What is Covered" are in fact covered by the Plan (DGIP001669), and (3) the Prior Authorization section (DGIP001667.).[3]

---

[3] Furthermore, even accepting Plaintiff's argument for an incomplete reading of the Plan as valid, it is undisputed that Sandhill does not satisfy the definition of a "Treatment Facility" because Sandhill did not provide a program of treatment approved by Aetna. (DGIP001962) (disapproving

Plaintiff's "Provider" argument also fails. Although the Plan does broadly define "Provider" as a "facility [] licensed or certified by law to provide health care services to you" (DGIP001752), accepting Plaintiff's argument that the Plan requires coverage of a facility based solely on satisfaction of this general definition would render meaningless the Plan's other provisions further defining and differentiating "network provider" (DGIP001749) and "out-of-network provider" (DGIP001750). It further ignores the fact that the Administrative Record contains no admissible evidence that Sandhill was in fact licensed as of the date of A.D.'s admission.

Plaintiff's selective reading of the Plan is simply wrong. The Plan must be read as a whole.

### 2. Aetna Properly Applied Its Non-Contracted RTC Criteria.

Plaintiff accuses Aetna of using "secret" criteria to improperly deny Plaintiff's claim. Not so.

First, it is uncontroverted that Plaintiff was informed of those criteria in September 2022 (DGIP001772) and received a hard copy of them with Aetna's first post-remand determination (DGIP001862-1910), as referenced in the November 11, 2025 Determination (DGIP001961-62).

Second, it is not only permissible but entirely reasonable that a plan may rely on criteria outside the four corners of a plan document when exercising its discretion to make a claim determination. Plaintiff's citation to a handful of out-of-Circuit cases does not change the Second Circuit's well-settled position that a plan administrator may rely upon criteria not listed in the plan so long as the administrator has discretion to generally use its own methods in making benefit

---

of Sandhill's program "basing all aspects of patient care on the Neurosequential Model of Therapeutics (NMT)").

determinations.[4] *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 620-21, 623, 627-28 (2d Cir. 2008) (expressly permitting use of criteria not listed or referenced in the plan because claims administrator had discretion in determining which sources to rely upon in determining claims). The *Magee* case cited by Plaintiff in no way limits *Krauss*. In *Magee*, there was no consideration of criteria external to the plan, but rather an absence of consideration of *any* criteria whatsoever by the plan administrator in assessing whether the plaintiff suffered from a disabling impairment. *Magee v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 308, 319 (S.D.N.Y. 2009). *See also Callas v. S&P Global Inc.*, No. 19 Civ. 1478 (PGG), 2022 WL 255114, *16 (S.D.N.Y. Jan. 26, 2022) (distinguishing *Magee* and rejecting a plaintiff's assertion that a claims administrator failed to provide a full and fair review where the determination was based on substantial evidence in the record and its "interpretations of that evidence were 'rational' and therefore 'must be allowed to control'" (citation omitted)).

Nor does application of the Non-Contracted RTC Criteria conflict with ERISA requirements or Plan terms. Plaintiff cites 29 U.S.C. § 1022(a) without elaboration. The informational

---

[4] For example, Plaintiff completely ignores the Second Circuit's findings in *Krauss* and asks the Court to instead follow two unreported district court cases out of the Ninth Circuit. (Pl. Opp., 16-17.) In *Deseret Mut. Benefit Adm'rs*, an Oregon court found the plan could not rely on an external "medical policy" that was never given to the plaintiff and which excluded coverage when other evidence showed coverage was proper. *Est. of Dick by & through Dick v. Deseret Mut. Benefit Adm'rs*, No. 2:21-CV-01194-HL, 2023 WL 2071523, at *5 (D. Or. Feb. 17, 2023). Here, Plaintiff received the Non-Contracted RTC Criteria through the appeal process (and made arguments with respect thereto in his August 13, 2025 Appeal), but unlike *Deseret Mut. Benefit Adm'rs*, those criteria demonstrated that claim denial was proper under the Plan's terms. In *Elazouzi*, the court declined to consider external interpretations of "experimental and investigational" plan terms for a medical necessity determination because the plan itself set five specific criteria for determining whether a procedure is "experimental or investigational." *Elazouzi v. Aetna Life Ins. Co.*, No. EDCV 22-0858 JGB (SPX), 2023 WL 8530010, at *6-8 (C.D. Cal. Dec. 7, 2023). Here, the Plan does not list specific criteria for assessing whether prior authorization must be provided for out-of-network care otherwise excluded under Plan terms – rather, the Plan is intentionally broad in tasking Aetna as claims administrator to employ its own techniques in making such determinations.

requirements for summary plan descriptions summarized in 29 U.S.C. § 1022(a) in no way suggest Aetna's Non-Contracted RTC Criteria cannot be utilized, and Plaintiff cites no support for his conclusory allegation otherwise.

As to Plan terms, the Plan explicitly states out-of-network care expenses are not covered (DGIP001663) and that if a participant chooses to receive an otherwise covered service from an out-of-network provider, the participant must obtain advance "prior authorization." (DGIP001667.) To seek prior authorization, the participant is directed to contact the number on the back of their ID card (Aetna) to start the utilization review process. (DGIP001662; 1667.) Aetna, as the entity performing the utilization review process, is charged with employing "formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness, efficacy, or efficiency of, health care services, procedures, or settings." (DGIP001668.) The Plan grants Aetna discretion to make factual determinations as to benefits under the Plan, and to interpret other terms, conditions, limitations, and exclusions of the Plan. (DGIP001739.) Here, Aetna properly exercised that discretion in considering its Non-Contracted RTC Criteria as a "technique" to determine the clinical appropriateness of an out-of-network provider. Consideration of the Non-Contracted RTC Criteria was proper under Plan terms and this Court's binding precedent.

Finally, even without consideration of the Non-Contracted RTC Criteria, Aetna's benefit determination must be upheld as reasonable. As Aetna articulated in its November 11, 2025 Determination, independent of Sandhill's failure to satisfy the Non-Contracted RTC Criteria (or the basic requirement of state licensure), Aetna reasonably determined there was no network deficiency requiring consideration of Sandhill in the first instance, as it identified at least four in-network facilities available to provide A.D. with clinically appropriate RTC care. (DGIP001954-1961.)

### V. Plaintiff's Parity Act Arguments Must Be Disregarded.

Plaintiff's Complaint does not allege a claim under the Mental Health Parity and Addiction Equity Act ("Parity Act"), nor does it allege facts establishing the elements of a Parity Act claim.[5] Nonetheless, Plaintiff argues for the first time in his Opposition that Aetna's benefit determination violates the Parity Act. (Pl. Opp., 18-19.) Second Circuit precedent is well settled that a new claim cannot be raised "for the first time in submissions in opposition to a summary judgment motion." *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (finding a claim must be set forth in the pleadings and cannot defeat the other party's motion for summary judgment) (summary order).

But even if it was properly raised (and it is not), Plaintiff's eleventh-hour request that the Court consider a Parity Act violation is woefully deficient of the high bar set for establishing a valid Parity Act claim. *See, e.g., Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 58 (W.D. N.Y. 2020) (finding "conclusory allegations, absent evidence that [defendant] applied more rigorous medical necessity criteria when evaluating claims for mental health benefits, cannot survive summary judgment"). Nor has Plaintiff even attempted to cite legal support for the conclusory allegation that an improperly raised Parity Act violation can "weigh against the reasonableness" of Aetna's claim determination under 29 U.S.C. § 1132(a)(1)(B). (Pl. Opp., 19.) None exists. Plaintiff's Parity Act arguments must be disregarded.

### VI. Plaintiff's Preference for Sandhill Does Not Create a Network Inadequacy.

Plaintiff casually dismisses as "unhelpful" a multitude of Second Circuit and New York district court precedent denying ERISA benefit claims for out-of-network coverage when plan terms limit or exclude out-of-network benefits, as is precisely the case here. Plaintiff's analysis-

---

[5] For example, Plaintiff does not contend that the Plan fails to provide comparable benefits, or that the Plan imposes more restrictions on coverage, for mental health services as compared to medical or surgical services, which is an essential element of a Parity Act claim.

free declaration is no more than an attempt to deflect from the fact that this caselaw is only "unhelpful" to the legitimacy of Plaintiff's legal claim. The comparable cases decided within this Circuit cited by Defendant should be deemed controlling, or at minimum, afforded significant weight. *See, e.g., Krauss,* 517 F.3d at 618-20, 628-29 (upholding administrator's denial of plaintiff's claim for out-of-network provider expenses because the administrator determined "in-network providers could have performed the surgery."); *see also* Def. Opp., 8-9 (collecting cases). The out-of-Circuit decisions Plaintiff cites do not save Plaintiff's claim.

- For *Jacobs v. Kaiser Found. Health Plan Inc.*, 265 Fed. App'x 652 (9th Cir. 2008) (summary order) and *Boyle v. Legacy Health Plan No. 504*, No. 6:20-CV-00705-AA, 2023 WL 6318923 (D. Or. Sept. 28, 2023): *see* Def. Opp., 9-10.

- Unlike in *Zucca v. First Energy Serv. Co.*, 642 F. Supp. 3d 621 (N.D. Ohio 2022), there are no medical records establishing that A.D. required a specific treatment that in-network RTC providers could not provide.

- There was no ERISA benefits claim even at issue in *Briscoe*, and *Condry* is cited in *Briscoe* for an Affordable Care Act claim, which has not been pled here. *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 733, 734-36 (N.D. Ill. 2017) and *Condry v. UnitedHealth Grp., Inc.,* No. 17-CV-00183-VC, 2017 WL 7420997 (N.D. Cal. Aug. 15, 2017).

**VII.   A Claims Administrator Need Not Brief Legal Arguments Raised In An Administrative Appeal.**

Plaintiff accuses Aetna of not adequately responding to his legal arguments raised in his administrative appeals concerning the Affordable Care Act ("ACA") and New York Insurance law. (Pl. Opp., 24-25.) But claims administrators are not attorneys and are not tasked with interpreting statutes or legal arguments. *See Savage v. Sutherland Global Services, Inc.*, 521 F. Supp.3d 308, 314 (W.D.N.Y. 2021) ("[W]hile plan fiduciaries may have expertise in interpreting the terms of the plan itself, statutory interpretation is the province of the judiciary.") (citation omitted).

As to the substance of Plaintiff's ACA and New York Insurance law arguments, Defendant notes that after multiple rounds of extensive briefing, Plaintiff has yet to cite a single case to rebut

*N. Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 22-CV-6087 (PKC), 2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) or to otherwise establish that such insurance law-based legal arguments can substantiate an ERISA Section 1132(a)(1)(B) benefits claim. Thus, Plaintiff's insurance law-based arguments still fail.

## CONCLUSION

For all of the reasons stated above, as well as in Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Defendant respectfully requests that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's cross-motion for summary judgment.

DATED: March 13, 2026                    Respectfully submitted,

                                         /s/ Daniel B. Pasternak
                                         Daniel B. Pasternak (admitted *pro hac vice*)
                                         SQUIRE PATTON BOGGS (US) LLP
                                         2325 East Camelback Road, Suite 700
                                         Phoenix, Arizona 85016
                                         T:  (602) 528-4000
                                         F:  (602) 253-8129
                                         daniel.pasternak@squirepb.com

                                         Paul D. Erian
                                         SQUIRE PATTON BOGGS (US) LLP
                                         1120 Avenue of the Americas, 13th Floor
                                         New York, New York  10036
                                         T:  (212) 872-9800
                                         F:  (212) 872-9815
                                         paul.erian@squirepb.com

-14-

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** contains 3,494 words (not including the case caption, table of contents, table of authorities, signature block, or required certificates), as indicated by the word count function of Microsoft Word, the word-processing program used to prepare the document, and therefore complies with the word-count limitation in Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

                                            */s/ Daniel B. Pasternak*

-15-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2026, I caused a copy of the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be served via ECF/CM filing on the ECF registrants for this case.

*/s/ Tammy Gougeon*
