UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

John Doe,

                    Plaintiff,

          v.

Deloitte LLP Group Insurance Plan,

                    Defendant.

Civil Action No. 1:23-cv-04743-JPC

**DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

**and**

**DEFENDANTS DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

**Judge John P. Cronan**

On January 30, 2026, Defendant Deloitte LLP Group Insurance Plan ("Defendant") moved for summary judgment in this case. (Docs. 57; 57-1; "Defendant's Motion" or "Def. Mot."). In accordance with Local Civil Rule 56.1(a), Defendant submitted with Defendant's Motion a Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (Doc. 57-2) ("Defendant's SOF" or "Def. SOF").

On February 27, 2026, Plaintiff John Doe ("Plaintiff") filed a Response to Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Doc. 61-1; "Plaintiff's SOF Response" or "Pl. SOF Resp.") in which Plaintiff responded to each of the undisputed material facts set forth in Defendant's SOF. In that same pleading, Plaintiff also included 191 separately numbered paragraphs of additional facts under the heading "Plaintiff's Statement of Additional Undisputed Material Facts." *See* Doc. 61-1 at 50-72 ("Plaintiff's SOAF" or "Pl. SOAF"). As discussed below, these 191 paragraphs of "additional" facts are the same, verbatim, as the 191

paragraphs in Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 submitted by Plaintiff in support of his cross-motion for summary judgment. *See* Doc. 56-2.

Defendant (1) replies herein to Plaintiff's SOF Response; and (2) responds to the additional facts alleged in Plaintiff's SOAF.

## I. DEFENDANT'S REPLY TO PLANTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Defendant replies below to those undisputed material facts asserted in Defendant's SOF (Doc. 57-2) which Plaintiff purports to dispute in Plaintiff's SOF Response (Doc. 61-1). No reply is required as to those facts asserted by Defendant in Defendant's SOF which Plaintiff does not dispute. Paragraphs of Defendant's SOF as to which Defendant replies to Plaintiff's purported controversion of the undisputed material fact in Plaintiff's SOF Response are highlighted below to assist the Court in identifying those paragraphs of Defendant's SOF which Plaintiff alleges are in dispute, in whole or in part, and Defendant's replies thereto.

### A. Plan Information.

1.     Deloitte LLP sponsors multiple ERISA-governed health and welfare benefit plans through which it offers medical and other insurance coverage to its employees. (DGIP001655-56; 1738.)[1]

**Plaintiff's Response**: Undisputed.

---

[1] Citation to "DGIP00_____" refers to Bates-labeled pages in Exhibit A to Defendant's Unopposed Motion for Leave to File Under Seal (Doc. 55). Because Plaintiff's Complaint alleges a single claim for a denial of benefits under Section 1132(a)(1)(B) of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Exhibit A (DGIP00001 – DGIP001966), which is the administrative record of Plaintiff's benefit claim (as supplemented with 105 additional pages of post-remand documents), constitutes the complete factual record in this case (the "Administrative Record").

1106835699\2\AMERICAS

2.      Defendant is the legal entity through which Deloitte LLP provides health and welfare benefits to eligible individuals under the plans it sponsors. (DGIP001655-56; DGIP001738.)

**Plaintiff's Response**: Undisputed.

3.      One of the ERISA-governed health and welfare benefit plans sponsored by Deloitte LLP and offered through DGIP is the self-funded Aetna Open Access Select EPO Plan. (DGIP001655; 1733; 1738.)

**Plaintiff's Response**: Undisputed.

4.      The Aetna Open Access Select EPO Plan Summary Plan Description (the "Plan") is an ERISA plan document that sets forth and describes in detail medical benefit options, coverage, and claims administration for Plan participants. (DGIP001651-1757.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

5.      More specifically, the Plan is the ERISA plan document that comprises both the plan itself as well as the summary plan description setting forth its terms. (DGIP001655: "This summary represents the Aetna Open Access Select EPO medical benefit option, herein 'the Plan', for eligible Partners, Principals, and employees of Deloitte LLP and its subsidiaries (the "Deloitte Firms") effective January 1, 2022.")

**Plaintiff's Response**: Disputed. There is no evidence that the SPD comprises "both the plan itself as well as the summary plan description," particularly when the SPD states: "This summary provides general information about the Plan, who is eligible to receive benefits under the Plan, what those benefits are, and how to obtain benefits. It does not cover all provisions, limitations, and exclusions. No general explanation can adequately give you all the details of the Plan." DGIP1655

<mark>**Defendant's Reply**</mark>: Plaintiff's response does not fairly meet the substance of the fact asserted in Paragraph 5 and instead is improper argument. *See Alliance Security Products, Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007) ("plaintiffs respond to many of defendant's statements by making legal arguments…[L]egal arguments…belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact."); *Nowlin v. Mount Sinai Health System*, No. 20 Civ. 2470 (JPC), 2022 WL 992289 at n.1 (S.D.N.Y. Mar. 31, 2022) (Court disregards a non-moving party's counter-Rule 56.1 statement where the non-moving party "simply seeks to add his own 'spin' on the fact or otherwise dispute the inference from the stated fact."). Accordingly, Plaintiff's response to Paragraph 5 should be disregarded and Paragraph 5 of Defendant's SOF should be deemed undisputed.

6.      The Plan designates Aetna Life Insurance Company ("Aetna") as the Claims Administrator. (DGIP001733; 1745.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

7.      References to "We" in the Plan refer to the Plan Sponsor, Deloitte LLP. (DGIP001655.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

8.      The Plan invests Aetna, as Claims Administrator, with discretionary authority to interpret the Plan, determine benefits, and construe Plan terms:



**Interpretation of Benefits**

We and the Claims Administrator have sole and exclusive discretion to do all of the following:

- Interpret Benefits under the Plan
- Interpret the other terms, conditions, limitations, and exclusions of the Plan, including this SPD and any Riders and Amendments
- Make factual determinations related to the Plan and its Benefits

We and the Claims Administrator may delegate this discretionary authority to other persons or entities that provide services in regard to the administration of the Plan.

(DGIP001739.)

**Plaintiff's Response**: Disputed. There is no evidence that the Plan administrator had the authority to delegate discretion to Aetna or that the SPD contained specific procedures for delegation.

**Defendant's Reply**: Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 8 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 8 should be disregarded, and Paragraph 8 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 743-74 (2d Cir. 2001) ("district courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that 'where there are no[ ] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion'") (citations omitted); *Alliance Security Products, Inc.*, 471 F. Supp.2d at 454 (responses to moving party's fact statements "without reference to admissible evidence…are deemed undisputed…"). Further responding, Plaintiff's purported controversion of the facts asserted in Paragraph 8 does not fairly respond to the substance of those facts – which are a direct excerpt of the Plan's language – and is instead improper argument. *See Alliance Security Products, Inc.*; *Nowlin*, *supra.* For this additional reason, Plaintiff's response to Paragraph 8 should be disregarded, and Paragraph 8 of Defendant's SOF should be deemed undisputed.

9.      The Plan contains a detailed description of the claims administration process, including that the Claims Administrator (Aetna) makes final benefit claims and appeals determinations. (DGIP001710-15.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

**B.      Plaintiff Doe is a Plan Participant.**

10.      Plaintiff is a participant in the Plan. (Complaint (Doc. 1), ¶ 2.)

**Plaintiff's Response**: Undisputed.

11.      Plaintiff's dependent son, A.D., is a beneficiary eligible for medical benefits pursuant to the terms of the Plan by virtue of Plaintiff's participation in the Plan. (Complaint (Doc. 1), ¶ 2.)

**Plaintiff's Response**: Undisputed.

**C.      The Plan Covers Medically Necessary Residential Treatment Center Care Expenses, But Not For Out-of-Network Providers.**

12.      The Plan distinguishes between network, or "participating," providers and out-of-network providers. (DGIP001663; 1749-50.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

13.      A "network provider" is defined in the Plan as "[a] provider listed in the directory for your plan. . . . A network provider can also be referred to as an in-network provider." (DGIP001749.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

14.      An "out-of-network provider" is defined in the Plan as "[a] provider who is not a network provider." (DGIP001750.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

15.      Medical expenses incurred by Plan participants or beneficiaries from network or "participating" providers are potentially covered by the Plan under a defined Schedule of Benefits and description of what services are covered. (DGIP001663-66; 1669-1704.)

**Plaintiff's Response**: Undisputed as to the SPD's contents. Disputed as to Defendant's characterization of the SPD.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the Plan," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 15 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 15 should be disregarded, and Paragraph 15 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*, *supra*; *see also PharmacyChecker.com v. Nat'l Assoc. of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, *7, n.11 (S.D.N.Y. Mar. 28, 2023) ("Plaintiff disputes the characterization of this evidence, but does not dispute its factual basis. As such, the Court deems this fact admitted.") (citation omitted).

16.     The Plan expressly states: "Out-of-Network care is not a covered expense in this Plan." (DGIP001663 (emphasis in original).)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

17.     The Plan covers listed health care-related services, including mental health services for Plan participants and beneficiaries, so long as Plan requirements are met, including that the service is provided by an in-network provider (*i.e.*, a member of the "network of participating physicians, specialist, and hospitals that meet Aetna's requirements for quality and service" and "are monitored for quality of care, patient satisfaction, cost-effectiveness of treatment, office standards and ongoing training") and the service is "medically necessary for the prevention, diagnosis or treatment of [the individual's] illness or condition." (DGIP001663;1665;1668-69; 1682-84.)

**Plaintiff's Response**: Undisputed as to the SPD's contents. Disputed as to Defendant's characterization of the SPD.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the Plan," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 17 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 17 should be disregarded, and Paragraph 17 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

18.     Some health care-related services require that a Plan participant or beneficiary request and receive from the Claims Administrator prior authorization for those services to be "Covered Health Services" under the Plan. (DGIP001667-68.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

19.     Mental health care-related services at a "Residential Treatment Facility"[2] are a type of service that requires prior authorization to be a "Covered Health Service" under the Plan. (DGIP001667-68.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

20.     Mental health care services consisting of Residential Treatment Facility care generally refers to "treatment of mental health disorders by behavioral health providers" and "room and board at a semi-private room rate and other services and supplies provided" during a stay at a

---

[2] The term "Residential Treatment Facility" is also referred to as a "Residential Treatment Center," or an "RTC," throughout the Administrative Record and the parties' briefing.

1106835699\2\AMERICAS

Residential Treatment Facility "appropriately licensed by the state Department of Health or its equivalent." (DGIP001682.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

21.     The Plan defines a "Treatment Center" as "[a] facility that provides a program of effective Mental Disorder Treatment and meets all of the following requirements: it is established and operated in accordance with any applicable state law; it provides a program of treatment approved by a Physician and the Claims Administrator; it has or maintains a written, specific, and detailed regimen requiring full-time residence and full-time participation by the patient; [and] it provides at least the following basic services: Room and Board (if this Plan provides inpatient benefits at Treatment Center; Evaluation and Diagnosis; Counseling; Referral and orientation to specialized community resources. A Treatment Center which qualifies as a Hospital is covered as a Hospital and not a Treatment Center." (DGIP001754-55.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

22.     Residential Treatment Facility care expenses incurred by a Plan participant or beneficiary are covered as Covered Health Services by the Plan if the Residential Treatment Facility is in-network, the services provided are medically necessary, and the participant or beneficiary obtains prior authorization prior to receiving services from the Residential Treatment Facility. (DGIP001663; 1665; 1667-69; 1682-83.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

23.     The Plan states, "[y]our mental health/substance use disorder benefits will be provided by participating behavior health providers," and "[y]ou are encouraged to contact the Mental Health/Substance Abuse Disorder Administrator for referrals to providers and coordination of care." (DGIP001682-83.)

1106835699\2\AMERICAS

**Plaintiff's Response**: Undisputed as to the SPD's contents.

24.    Regarding out-of-network care, the Plan states, "if you choose to receive Covered Health Services from an Out-of-Network provider, you are responsible for obtaining prior authorization before you receive the services. . . . To obtain prior authorization, call the toll-free telephone number on the back of your I.D. card. This call starts the utilization review process." (DGIP001667.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

25.    The contact information on the I.D. card directs participants to Aetna, the Claims Administrator responsible for reviewing out-of-network prior authorization requests and conducting the utilization review process. (DGIP001662; 1667-68.)

**Plaintiff's Response**: Undisputed as to the SPD's contents.

26.    The utilization review process on a request for prior authorization for services provided by an out-of-network Residential Treatment Facility provider entails Aetna assessing the safety and adequacy of the facility through "formal techniques designed to monitor the use of, or evaluate the clinical necessity, appropriateness, efficacy, or efficiency of, health care services, procedures, or settings. Such techniques may include ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review or similar programs." (DGIP001667-68.) (*See also, infra* at ¶ 58.)

**Plaintiff's Response**: Undisputed as to the SPD's contents. Disputed as to Defendant's characterization of the SPD.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the Plan," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 26 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 26 should be disregarded, and Paragraph 26 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

> **D.    Plaintiff's Dependent, A.D., Has a Long and Complex Medical History.**

27.    A.D.'s medical records show significant complex, long-term mental health issues beginning as a young child and continuing into 2022, which is the timeframe relevant to this matter. (DGIP0000037.)

**Plaintiff's Response**: Undisputed.

28.    A.D. has been diagnosed with disruptive mood dysregulation disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, and autism spectrum disorder. (DGIP000037.)

**Plaintiff's Response**: Undisputed.

29.    Prior to 2022, A.D. had utilized a variety of health care services and Plaintiff had worked extensively with Aetna regarding coverage and coordination of care under the terms of the Plan. (*See generally,* DGIP001758-1861.)

**Plaintiff's Response**: Undisputed.

30.    On or around September 6, 2022, A.D. was admitted to Huntsman Mental Health Institute ("Huntsman") based on "danger of harm to himself and others and inability to function in a less restrictive setting." (DGIP000037; 46-58.)

**Plaintiff's Response**: Undisputed.

31.     On or about September 21, 2022, Huntsman as well as A.D.'s treating clinical psychologist (Dr. Anne Tatti), his behavior therapist (Lavere Harward), and another treating psychologist (Pamela C. Wilkison) each recommended A.D.'s admission into a Residential Treatment Facility (a/k/a "RTC" (see note 2, *supra*)) upon discharge from Huntsman. (DGIP00037-45.)

**Plaintiff's Response**: Undisputed.

32.     A.D.'s health care providers recommended RTC care at a facility that would accept A.D., but none recommended for or against any specific RTC facility. (DGIP00037-45.)

**Plaintiff's Response**: Disputed. DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer  Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs. They came up with two facilities that they felt were appropriate: Sandhill Center and InterMountain Academy in Montana. InterMountain felt that [A.D.'s] level of violence was too high and did not admit him. Sandhill meets nearly all of the needs described in Dr Tatti's letter."); DGIP0885 ("Everyone on the team wanted to find an in-network residential treatment center but it was not possible.").

**Defendant's Reply**:  Two facts are asserted in Paragraph 32: that (1) that A.D's health care providers recommended RTC care at a facility that would accept A.D.; and (2) none of these providers recommended for or against any specific RTC facility. Plaintiff does not appear to dispute that A.D.'s providers recommended RTC care for him, but disputes Paragraph 32 only

insofar as it asserts that none of A.D.'s health care providers recommended for or against any specific RTC facility. Plaintiff's controversion of this fact asserted in Paragraph 32 is however not supported by the Administrative Record and is improper argument.

First, the health care providers that submitted recommendations for A.D.'s RTC treatment were Anne Tatti, Psy.D., a clinical psychologist (*see* DGIP000039-42); Lavere Haward, M. Ed., a Board-certified behavioral analyst (*see* DGIP000043-44); and Maggie Blau, a licensed clinical social worker at Huntsman Mental Health Institute (*see* DGIP000037). Each of these providers supplied a letter in September 2022 in which they recommended that A.D. move to RTC care following his discharge from hospitalization at Huntsman.

- Dr. Tatti's letter stated: "I, along with [A.D.'s] inpatient team as well as outpatient ABA team are in agreement that Residential Treatment is the appropriate level of care at this time." Dr. Tatti's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32. *See* DGIP000039; 41.

- Mr. Haward's letter stated: "It is my recommendation, as well as the recommendation of our clinic admin team, that [A.D.] be committed to a residential facility…" Mr. Haward's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32. *See* DGIP000043.

- Ms. Blau's letter stated: "The inpatient team is recommending that [A.D.] transition to a residential treatment facility to address aggression, mood, family relationships, and ASD." Ms. Blau's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32. *See* DGIP000037; *see also* DGIP001825 ("CA spoke to discharge planner Maggie Blau. She stated that the facility support [sic] an RTC stepdown," with no reference to any specific RTC.).

Pamela Wilkison, Ph.D., a licensed psychologist who treats A.D.'s brother, additionally provided a letter in September 2022 in which she stated: "It is imperative that [A.D.] remain hospitalized until he can enter residential treatment…" (*see* DGIP000045). However, like A.D.'s providers, Dr. Wilkison's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32.

Plaintiff asserts that Meagan Heilman, a psychologist at Huntsman, also was part of A.D.'s treatment team, but the only references in the Administrative Record to Dr. Heilman are in Plaintiff's first and second level claim appeals (see below), and the Administrative Record does not reflect any recommendation from Dr. Heilman as to RTC care in the first instance, much less as to any specific RTC facility. Plaintiff's response also asserts Jennifer Taylor, a "placement consultant," also was part of A.D.'s treatment team, but as with Dr. Heilman, the Administrative Record contains no records showing Ms. Taylor ever opining on whether A.D. required RTC care or her providing any recommendation about any specific RTC to provide such care.

Thus, none of the medical records or other information provided by A.D.'s health care providers ever recommended for or against RTC treatment at any specific RTC facility – only that A.D. transition from inpatient hospitalization to RTC care. Plaintiff's disputing the fact asserted in Paragraph 32 relating to the absence of any RTC recommendation from A.D.'s providers therefore lacks support in the Administrative Record and should be disregarded. *See Holtz*, *supra.*

Second, the portions of the Administrative Record that Plaintiff cites to controvert the facts asserted in Paragraph 32 consist of the November 14, 2022 first level appeal to Aetna's claim denial (DGIP000130-137, with attachments at DGIP000138-229) and Plaintiff's second level appeal to Aetna's claim denial (DGIP000881-892, with attachments at DGIP000893-1002), each of which were authored by Plaintiff's third-party appeal consultant. A party's own statement regarding medical records, when contradicted by actual medical records, does not create a genuine issue of material fact. *Sepulveda v. City of New York*, No. 15CV5187RRMCLP, 2020 WL 2836952, at *8 (E.D.N.Y. May 29, 2020). Plaintiff's statements purporting to summarize the statements of certain health care providers contained in medical records should be disregarded for purposes of Defendant's SOF and Defendant's Motion.

Last, Plaintiff's controversion of the fact asserted in Paragraph 32 that none of A.D.'s providers recommended for or against any specific RTC facility relies solely on after-the-fact arguments advanced by Plaintiff's third-party appeal consultant in post-claim denial appeals. As such, Plaintiff's response to Paragraph 32 is improper argument and as well as Plaintiff's improper effort to "add his own 'spin' on the fact or otherwise dispute the inference from the stated fact." *See Nowlin, supra. See also, Alliance Security Products, Inc.*, *supra.*

For each and all of these reasons, Plaintiff's response to Paragraph 32 should be disregarded and the facts asserted in Paragraph 32 of Defendant's SOF should be deemed undisputed.

33.    At the time relevant for his admission into RTC care, A.D. was 10 years old (date of birth ███). (DGIP00037.)

**Plaintiff's Response**: Undisputed.

**E.    Aetna Agrees RTC Care is Appropriate for A.D. in September 2022 and Provides Multiple In-Network Options, Which Plaintiff Rejects.**

34.    Shortly after A.D.'s admission to Huntsman and his health care providers' recommendation that A.D. transition directly to RTC care after discharge, Aetna agreed to provide in-network RTC care options covered by the Plan. (DGIP001846-51.)

**Plaintiff's Response**: Undisputed.

35.    Kevin Gutierrez Barrios, Aetna's designated Care Advocate ("CA") liaison between Plaintiff and Aetna, assisted Plaintiff in identifying in-network RTCs to allow for A.D.'s RTC expenses to be covered in accordance with the terms of the Plan. (*See generally* DGIP001758-1861.)

**Plaintiff's Response**: Undisputed except for the additional qualification "to be covered in accordance with the terms of the Plan" which is not supported by the citations.

==Defendant's Reply==: To the extent Plaintiff disputes Paragraph 35 of Defendant's SOF, Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 35 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 35 should be disregarded, and Paragraph 35 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*, *supra*. Further replying, Defendant avers that the citations to the record in Paragraph 35 plainly demonstrate that Mr. Gutierrez Barrios provided extensive and ongoing assistance to Plaintiff over a period of six months for the express purpose of identifying in-network RTCs that could provide services to A.D. that would be covered in accordance with the terms of the Plan.

36.     Mr. Gutierrez Barrios worked extensively with Plaintiff between September 2022 and March 2023 to locate and to refer Plaintiff to appropriate in-network RTCs for A.D.'s treatment. The communication log between Mr. Gutierrez Barrios and Plaintiff is included in the Administrative Record, with the majority of these communications located at DGIP001758-1861.

**Plaintiff's Response**: Undisputed as to the record at DGIP001758-1861. Disputed as to Defendant's characterization including Mr. Gutierrez Barrios "worked extensively" with Plaintiff.

==Defendant's Reply==: To the extent Plaintiff disputes "Defendant's characterization including Mr. Gutierrez Barrios 'worked extensively' with Plaintiff," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 36 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to

Paragraph 36 should be disregarded, and Paragraph 36 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

37.     On or around September 12, 2022, while A.D. remained in-patient at Huntsman, Aetna, through Mr. Gutierrez Barrios, began researching in-network RTCs and contacting those facilities on behalf of Plaintiff. (DGIP001851.)

**Plaintiff's Response**: Undisputed as to the contents of the record at DGIP001851.

38.     Plaintiff informed Aetna on September 13, 2022 that Plaintiff had hired an educational consultant separate from Aetna to independently assist in locating an RTC for A.D.'s treatment. (DGIP001857.)

**Plaintiff's Response**: Undisputed as to the record stating at DGIP001857: "The family hired an educational consultant to assist with locating an RTC."

39.     Neither Aetna nor Plaintiff (or Plaintiff's separately engaged consultant) identified any RTC located in Utah suitable for or available to admit A.D. and thus Plaintiff indicated a willingness to consider in-network but out-of-state RTCs (*See generally*, DGIP001758-1861, and specifically DGIP001794; 1846.)

**Plaintiff's Response**: Undisputed.

40.     Aetna vetted more than fifteen in-network RTCs for suitability and availability to admit A.D. Although the majority were unable to admit A.D. after discharge from Huntsman principally due to age limitations and waitlists, those RTC facilities that were presented as viable in-network options were rejected by Plaintiff based on Plaintiff's own considerations. (DGIP001764-69; 1775-81; 1787; 1791-96; 1803; 1807-11; 1813-22; 1824-25; 1828-30; 1835; 1838-40; 1854-55.)

1106835699\2\AMERICAS

**Plaintiff's Response**: Disputed as Defendant's characterization that Aetna "vetted" facilities for "suitability and availability" as legal argument. Disputed that Aetna provided any residential treatment facilities that were viable options. Disputed that Plaintiff "rejected" facilities based on "Plaintiff's own considerations."

The record shows that in-network facilities identified by Aetna were all inappropriate and/or unavailable to provide residential treatment to A.D. for the following reasons:

• Discovery Mood, TX (aka Center for Discovery): 2-4 week wait, did not treat children with ASD, A.D. was too young for their program, did not accept children under age 11, short-term stabilization and assessment, not a long-term program, placed patients in mixed milieu (patients diagnosed mental health disorders placed with patients diagnosed with substance abuse disorder). DGIP0132, 1775, 1815, 1854.

• Meridell, TX: A.D. was too young for their program, did not accept children under age 11, did not respond to telephone calls from Plaintiff. DGIP0132, 1825.

• Kennedy Krieger, MD: hospitalization only, not a residential treatment program. DGIP0132, 1817.

• Oak Plains Academy, TN: 5 week wait, short term program, allegations of children harmed in the facility, accepts patients with very low IQ which did not describe A.D. DGIP0132, 1765.

• San Marcos Treatment Center: 6-8 week wait, did not respond to telephone calls from Plaintiff, allegations of child abuse and riots. DGIP0133, 1764, 1765.

• North Springs Behavioral Health, VA: did not accept children outside of Virginia, allegations of children harmed in the facility including a child who died during improper restraints, no response to Aetna's inquiry. DGIP0133, 1765, 1781, 1787.

1106835699\2\AMERICAS

- Texas Neurorehab: would not accept because A.D.'s IQ was too high, facility worked with developmentally delayed patients and A.D. would not be appropriate. DGIP1764.

- Provo Canyon School: A.D. was too young for their program. DGIP1766.

- Willow Springs: A.D. was too young for their program, minimum age is 12. DGIP1768.

- Pathlight Mood and Anxiety Center: A.D. was too young for their program, minimum age is 12. DGIP1776.

- BellFaire: waitlist extends "well into 2023." DGIP1792.

- Millcreek of Pontotoc: no response to Aetna's inquiry. DGIP1793.

- Harbor Point Behavioral Health Center: unable to accommodate a patient with an ASD diagnosis. DGIP1807.

- Youthcare: A.D. was too young for their program, minimum age is 11. DGIP1818.

- Great Circle: 6-8 month wait. DGIP1839.

The facilities were found to be inappropriate or unavailable based on thorough review by Plaintiff, his wife, and A.D.'s treatment team. DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs. They came up with two facilities that they felt were appropriate: Sandhill Center and InterMountain Academy in Montana. InterMountain felt that [A.D.'s] level of violence was too high and did not admit him. Sandhill meets nearly all of the needs described in Dr Tatti's letter."); DGIP0885 ("Everyone on

the team wanted to find an in-network residential treatment center but it was not possible.")
(emphasis added).

**Defendant's Reply**:  Paragraph 40 asserts that the majority of in-network RTCs Aetna vetted were unable to admit A.D. after discharge from Huntsman principally due to age limitations and waitlists. Plaintiff's response needlessly disputes that assertion by detailing the specific reasons Plaintiff did not select those RTCs for A.D.'s care, which Defendant itself set forth in Paragraph 45 of Defendant's SOF. It is undisputed that the following in-network RTC were either unsuitable or unavailable to admit A.D. (or were non-responsive to admission inquiries): Kennedy Krieger; North Springs Behavioral Health; Texas Neurorehab; Provo Canyon School; Willow Springs; Pathlight Mood and Anxiety Center; BellFaire; Millcreek of Pontotoc; Harbor Point Behavioral Health Center; Youthcare; and Great Circle, again, as is specifically asserted in Paragraph 45 of Defendant's SOF.

To the extent Plaintiff disputes that the remaining in-network RTCs identified by Aetna were viable options, as to Center for Discovery, *see* Defendant's Reply to Paragraphs 49-51;135-136, *infra*; as to Meridell, *see* Defendant's Reply to Paragraphs 52-53; 129-130, *infra*; as to Oak Plains Academy, *see* Defendant's Reply to Paragraphs 54-55; 131-132 *infra*; and as to San Marcos Treatment Center, see Defendant's Reply to Paragraphs 133-134, *infra*.

Regarding Plaintiff's argument that the RTCs identified by Aetna were "found to be inappropriate or unavailable based on thorough review by Plaintiff, his wife, and A.D.'s treatment team," Defendant incorporates by this reference its Response to Paragraph 32, *supra*, as if fully restated herein.

- 20 -

For the reasons set forth above and incorporated into this reply by reference, Plaintiff's response to Paragraph 40 should be disregarded and the facts asserted in Paragraph 40 should be deemed undisputed.

41.    Aetna recommended at least three in-network RTCs covered by the Plan that were available to accept A.D. for admission following discharge from Huntsman, in accordance with the recommendations from A.D.'s health care providers (*see infra* ¶¶ 47-57), however Plaintiff rejected each of these RTCs. (*Id.*)

**Plaintiff's Response**: Disputed. The record shows that in-network facilities identified by Aetna were all inappropriate and/or unavailable to provide residential treatment to A.D. for the reasons cited in response to statement No. 40 above.

==**Defendant's Reply**==: Defendant incorporates by this reference Defendant's Reply to Paragraphs 32 and 40, *supra*, and Paragraphs 42; 47-55; and 129-136 *infra*, as if fully restated herein. Further responding, Plaintiff's response is improper argument. *See Alliance Security Products, Inc.*; *Nowlin*, *supra.*

For the reasons set forth above and incorporated into this reply by reference, Plaintiff's response to Paragraph 41 should be disregarded and the facts asserted in Paragraph 41 should be deemed undisputed.

42.    The only RTCs Plaintiff expressed a willingness to consider for A.D.'s admission were Sandhill Center ("Sandhill") and Intermountain Academy. (Pl. Mot., at 10.)

**Plaintiff's Response**: Disputed. Defendant cites no evidence to support the statement. Plaintiff expressed a willingness to consider any in-network residential facility available and appropriate for A.D. but Aetna was unable to identify such facilities. DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on

mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs. They came up with two facilities that they felt were appropriate: Sandhill Center and InterMountain Academy in Montana. InterMountain felt that [A.D.'s] level of violence was too high and did not admit him. Sandhill meets nearly all of the needs described in Dr Tatti's letter."); DGIP0885 ("Everyone on the team wanted to find an in-network residential treatment center but it was not possible.") (emphasis added).

==Defendant's Reply==: Responding to Plaintiff's argument that "Defendant "cites no evidence to support the statement" in Paragraph 42, that paragraph cites page 10[3] of Plaintiff's Motion, which states as follows: "Plaintiff found two residential facilities that were appropriate for A.D. and would accept him as a patient: Sandhill and Intermountain Academy." Plaintiff's Motion is an admission which is admissible evidence to support – and indeed supports – the fact asserted in Paragraph 42. *See Bellefonte Re Insurance Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").

To the extent Plaintiff's response contends that Aetna "was unable to identify" any "in-network residential facility available and appropriate for A.D.," Plaintiff's controversion of the facts asserted in Paragraph 42 is not supported by the Administrative Record and is improper argument.

---

[3] Defendant notes that the correct citation is page 11, not page 10 of Plaintiff's Motion.

The Administrative Record demonstrates that Aetna identified at least three in-network RTCs suitable and available to admit A.D. upon discharge from hospitalization: Center for Discovery, Meridell, and Oak Plains Academy. *See* Paragraphs 47-55; 129-136, *infra*. Plaintiff's disputing of these facts is based solely upon, and cites only, the first and second level claim appeals submitted by Plaintiff's third-party appeal consultant. As discussed above in Defendant's Reply to Paragraph 32, which is incorporated by this reference as if fully restated herein, Plaintiff's statements attributed to A.D.'s health care providers relating to the suitability of RTCs in those appeals are contradicted by medical records and are improper argument. *See Alliance Security Products, Inc.*; *Nowlin*; *Sepulveda, supra.*

For these reasons, Plaintiff's response to Paragraph 42 should be disregarded and the facts asserted in Paragraph 42 should be deemed undisputed.

43.    Neither Sandhill nor Intermountain Academy is an in-network provider under the Plan. (DGIP001784; 1795; 1816-17.)

**Plaintiff's Response**: Undisputed.

44.    Intermountain Academy advised Plaintiff that it was not a suitable facility based on A.D.'s needs, and that it would not admit A.D. (Pl. Mot. at 10.)

**Plaintiff's Response**: Undisputed.

45.    Of the in-network RTCs offering residential treatment care covered by the Plan, the following were determined to be not suitable for A.D.: Kennedy Krieger Institute (primarily a long-term hospitalization center) (DGIP001777, 1817); Pathlight Mood and Anxiety Center (A.D. too young to be admitted) (DGIP001776); Provo Canyon School (A.D. too young to be admitted) (DGIP001766); Texas NeuroRehab (A.D. did not meet admission profile due to higher IQ than patients cared for at that facility) (DGIP001764); San Marcos Treatment Center (unable to accept

A.D. without a substantial delay) (DGIP001764); Willow Springs (A.D. too young to be admitted) (DGIP001768); Bellfaire JCB (unable to accept A.D. without substantial delay) (DGIP001792); Harbor Point Behavioral Health Center (A.D. not a candidate for services based on diagnosis) (DGIP001807); Youthcare (A.D. too young to be admitted) (DGIP001818); CHNK (unable to accept A.D. without substantial delay) (DGIP001830); and Great Circle (unable to accept A.D. without substantial delay) (DGIP001839).

**Plaintiff's Response**: Undisputed that Aetna did not identify any in-network residential treatment facilities available or appropriate for A.D. In addition to the list above, the following in-network residential facilities were unavailable and/or inappropriate and/or unresponsive: Discovery Mood (DGIP0132, 1775, 1815, 1854); Meridell (DGIP0132, 1825); Oak Plains Academy (DGIP0132, 1765); North Springs Behavioral Health (DGIP0133, 1765, 1781, 1787); Millcreek of Pontotoc (DGIP1793).

**Defendant's Reply**: Defendant does not dispute that North Springs Behavioral Health and Millcreek of Pontotoc were in-network RTCs also determined to be unsuitable or unavailable for A.D.'s post-hospitalization admission, in addition to those RTCs listed in Paragraph 45. *See* Defendant's Reply to Paragraph 40, *supra*.

Regarding Plaintiff's controversion of Paragraph 45 to the extent Plaintiff claims Discovery Mood (Center for Discovery), Meridell, and Oak Plains Academy were unsuitable or unavailable for A.D.'s post-hospitalization admission, Defendant incorporates by this reference, as to Discovery Mood (Center for Discovery), Defendant's Reply to Paragraphs 49-51; 135-136, *infra*; as to Meridell, Defendant's Reply to Paragraphs 52-53; 129-130, *infra*; and as to Oak Plains Academy, Defendant's Reply to Paragraphs 54-55; 131-132, *infra*, as if each were fully restated herein.

46.     Aetna also identified North Spring Behavioral Healthcare and Millcreek on Pontotoc as potential in-network RTC facilities for A.D. but Aetna was unable to confirm availability to admit A.D. because, as to North Spring Behavioral Healthcare, Plaintiff refused to reach out to the facility, and, as to Millcreek on Pontotoc, Aetna did not receive a response from the facility. (DGIP001765, 1793.)

**Plaintiff's Response:** Disputed. North Springs Behavioral Health did not accept children outside of Virginia, there were allegations of children harmed in the facility including a child who died during improper restraints, and there was no response to Aetna's inquiry. DGIP0133, 1765, 1781, 1787. Undisputed as to Millcreek not responding to Aetna's inquiry.

**Defendant's Reply**: Plaintiff's response as to North Springs Behavioral Health does not respond to the fact asserted – that "Plaintiff refused to reach out to the facility." Instead, Plaintiff cites portions of the Administrative Record which demonstrate only that Plaintiff and Plaintiff's third-party appeal consultant "researched" that RTC and disqualified it from consideration based on purported (and anecdotal) safety considerations. Moreover, to the extent that Plaintiff disputes the facts alleged concerning North Springs Behavioral Health insofar as it purportedly not accepting children outside of Virginia by citing DGIP000133, the citation is to a portion of the claim denial appeal authored by Plaintiff's third-party appeal consultant which states "Mrs. [D.] was informed they don't take out of state kids." That statement is not admissible evidence under Fed. R. Civ. 56(c)(1)(B) and (2) and Local Rule 56.1(d) and therefore it should be disregarded by the Court for purposes of Defendant's SOF and Defendant's Motion.

For these reasons, Plaintiff's response to Paragraph 46 should be disregarded, and the facts asserted in Paragraph 46 should be deemed undisputed.

1106835699\2\AMERICAS

47.    Of the Plan's in-network RTC facilities, the following were determined to be suitable for A.D. and were able to admit A.D. without substantial delay: Center for Discovery, Meridell Achievement Center ("Meridell"), and Oak Plains. (DGIP001775; 1808-09; 1854.)

**Plaintiff's Response:** Disputed for the reasons cited in response to statement No. 40 above.

==**Defendant's Reply**==: Defendant incorporates by this reference Defendant's Reply to Paragraphs 40 and 42, *supra*, and Defendant's Reply to Paragraphs 47-55 and 128-136, *infra*, as if each was fully restated herein.

48.    Explained in detail below, Plaintiff rejected each of these in-network RTC facilities based on Plaintiff's preference that A.D. instead receive treatment at Sandhill. (DGIP001816-17.)

**Plaintiff's Response:** Disputed for the reasons cited in response to statement Nos. 40 and 42 above.

==**Defendant's Reply**==: Defendant incorporates by this reference Defendant's Reply to Paragraphs 40 and 42, *supra*, and Defendant's Reply to Paragraphs 49-55 and 128-136, *infra*, as if each was fully restated herein.

49.    On September 19, 2022 (and again later on), Aetna advised Plaintiff that Center for Discovery was an in-network RTC that could admit A.D., accounting for A.D.'s specific needs and age, with admission available within a few weeks. (DGIP001775; 1815; 1821; 1845-46.)

**Plaintiff's Response:** Disputed for the reasons cited in response to statement Nos. 40 and 42 above.

==**Defendant's Reply**==: Plaintiff's response refers to his response to Paragraph 40. In that response, with respect to Center for Discovery, Plaintiff contends that this RTC was unsuitable or unavailable because it had a "2-4 week wait, did not treat children with ASD, A.D. was too young for their program, did not accept children under age 11, short-term stabilization and assessment,

not a long-term program, placed patients in mixed milieu (patients diagnosed mental health disorders placed with patients diagnosed with substance abuse disorder)." The Administrative Record does not support Plaintiff's positions.

First, as to the two to four-week wait time, that was not an unreasonable or disqualifying period to wait for admission. *See* DGIP001809, an admission by Plaintiff's educational consultant: "As [A.D.'s] consultant, if a month of waiting will ensure he is the [sic] most appropriate place, then my advice is that is small number of weeks for possibly a year of treatment."

Second, as for Plaintiff's contention that Center for Discovery "did not treat children with ASD," that too is not supported by the Administrative Record. *See* DGIP001815, a record from CA Kevin Gutierrez Barrios reflecting his call with Center for Discovery: "CA spoke to the admission department of Center for Discovery…His age and ASD diagnosis are not exclusionary."

Third, as for Plaintiff's contention that A.D. was" too young for their program, [and] did not accept children under age 11," again, the Administrative Record shows that to be incorrect. *See* DGIP001715, an admission by Plaintiff's education consultant: "I called them and they told me that they'll take [A.D.] even though he's 10." *See also* DGIP001815, a record from CA Kevin Gutierrez Barrios reflecting his call with Center for Discovery: "CA spoke to the admission department of Center for Discovery…His age and ASD diagnosis are not exclusionary."

Fourth, regarding Plaintiff's claim that Center for Discovery was for "short-term stabilization and assessment, not a long-term program, [and] placed patients in mixed milieu (patients diagnosed mental health disorders placed with patients diagnosed with substance abuse disorder," that was a concern raised by Plaintiff's third-party educational consultant. Nothing in the Administrative Record, including any recommendations from A.D.'s actual treating healthcare

providers, indicated that Center for Discovery's program structure or therapeutic milieu were inappropriate for A.D.'s care. *See also* Defendant's Reply to Paragraphs 50-51;135-136, *infra*.

Plaintiff cannot create a disputed issue of material fact by at best disregarding, or worse, intentionally misrepresenting, evidence in the Administrative Record that expressly contradicts Plaintiff's position. For this reason, as well as that the evidence cited by Plaintiff does not support his contravention of the facts asserted in Paragraph 49 (*see Holtz*, *supra*), Plaintiff's response to Paragraph 49 of Defendant's SOF should be disregarded, and the facts asserted in Paragraph 49 should be deemed undisputed.

50.    Plaintiff's separately engaged consultant confirmed that Center for Discovery indicated it would accept A.D. and that A.D. could be admitted within a few weeks of September 19, 2022. (DGIP001775: "I called them and they told me that they'll take him even though he's 10. There is a 3-4 week waitlist.")

**Plaintiff's Response:** Disputed for the reasons cited in response to statement No. 40 above.

**Defendant's Reply**: The fact asserted in Paragraph 50 quotes directly from the Administrative Record. Plaintiff cannot create a disputed issue of material fact by at best disregarding, or worse, intentionally misrepresenting, evidence in the Administrative Record that expressly contradicts Plaintiff's position. For this reason, as well as that the evidence cited by Plaintiff does not support his contravention of the facts asserted in Paragraph 50 (*see Holtz*, *supra*), Plaintiff's response to Paragraph 50 of Defendant's SOF should be disregarded, and the facts asserted in Paragraph 50 should be deemed undisputed.

51.    Through communications between September 19 and 23, 2022, Plaintiff refused to admit A.D. to Center for Discovery because Plaintiff and/or Plaintiff's separately engaged consultant "[did] not believe it is a good environment for the member" based upon beliefs that it

is a "short-term stabilization and assessment" facility, it was a "mixed milieu" environment, and because it "contracts with insurance companies." (DGIP001775; 1795; 1825; 1835; 1854.)

**Plaintiff's Response:** Disputed. Center for Discovery was inappropriate and unavailable for residential treatment of A.D. because there was a 2-4 week wait, the facility did not treat children with ASD, A.D. was too young for their program, did not accept children under age 11, the facility was only short-term stabilization and assessment, not a long-term program, and the facility placed patients in mixed milieu (patients diagnosed mental health disorders placed with patients diagnosed with substance abuse disorder). DGIP0132, 1775, 1815, 1854; *see also* DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs.").

**Defendant's Reply**: Defendant incorporates by this reference Defendant's Reply to Paragraphs 32; 40; 47-50, *supra,* and 135-136, *infra,* as if each was fully restated herein. *See also* DGIP0001795: "Mother will not contact Center for Discovery because she does not believe it is a good environment for the member." Plaintiff cannot create a disputed issue of material fact by at best disregarding, or worse, intentionally misrepresenting, evidence in the Administrative Record that expressly contradicts Plaintiff's position. For this reason, as well as that the evidence cited by Plaintiff does not support his contravention of the facts asserted in Paragraph 51 (*see Holtz, supra*),

Plaintiff's response to Paragraph 51 of Defendant's SOF should be disregarded, and the facts asserted in Paragraph 51 should be deemed undisputed.

52.    On September 19, 2022 (and again on September 21, 2022 and later in March 2023), Aetna advised Plaintiff that Meridell was an in-network RTC that could admit A.D. in two weeks (and thus in early October 2022), factoring into consideration A.D.'s specific needs and age. (DGIP001769; 1775; 1791; 1815; 1821; 1846; 1854: "CA emailed parents stating that he had spoken to the facility and the member's age does not exclude him. There is a 2-week waitlist and they are willing to interview him. CA informed them that this is not short-term and is a residential facility. There is availability in the next 2 weeks.".)

**Plaintiff's Response:** Disputed. Meridell was inappropriate and unavailable for residential treatment of A.D. because A.D. was too young for their program, did not accept children under age 11, did not respond to telephone calls from Plaintiff. DGIP0132, 1825.

**Defendant's Reply**: Plaintiff's response is not supported by portions of the Administrative Record cited in Plaintiff's response. DGIP001825 is a portion of an email (set forth in full at DGIP001824-85) sent by Plaintiff on September 19, 2022 in which Plaintiff responded to a previous email from Aetna's CA, Kevin Gutierrez Barrios, expressing uncertainty as to whether Meridell would accept A.D. based on his age. However, later that same day (September 19, 2022), Mr. Gutierrez Barrios received an email from Plaintiff's educational consultant, who had been researching RTCs on Plaintiff's behalf (*see* DGIP001825: "The member's mother prefers to have the educational consultant reach out to RTC's") stating: "I called Meridell and they confirmed that his age is fine. They'll take a 9 or 10 year old, as long as they are in 4th or 5th grade." *See* DGIP001775 (noting that the educational consultant's email also was copied to Plaintiff). Also that same day, Mr. Gutierrez Barrios communicated to Plaintiff that he had himself called Meridell

and "they confirmed that his age is fine." *See* DGIP001821; *see also* DGIP001854 (noting in a record dated September 22, 2022 that on September 19, 2022, Mr. Gutierrez Barrios emailed Plaintiff advising that he had spoken to Meridell and that A.D.'s "age does not exclude him.").

To the extent Plaintiff claims Meridell was "unavailable," the Administrative Record shows that it had only a two-week waitlist. *See* DGIP001815. As admitted by Plaintiff's educational consultant, two weeks was not an unreasonable or disqualifying period to wait for admission. *See* DGIP001809 ("As [A.D.'s] consultant, if a month of waiting will ensure he is the [sic] most appropriate place, then my advice is that is small number of weeks for possibly a year of treatment."). *See also* Defendant's Reply to Paragraphs 53; 129-130, *infra*.

Plaintiff cannot create a disputed issue of material fact by at best disregarding, or worse, intentionally misrepresenting, evidence in the Administrative Record that expressly contradicts Plaintiff's position. For this reason, as well as that the evidence cited by Plaintiff does not support his contravention of the facts asserted in Paragraph 52 (*see Holtz, supra*), Plaintiff's response to Paragraph 52 of Defendant's SOF should be disregarded, and the facts asserted in Paragraph 52 should be deemed undisputed.

53.    Through communications between September 19 and 22, 2022, Plaintiff refused to admit A.D. for RTC care at Meridell, despite Meridell being fully accredited and vetted by Aetna and approved as an in-network RTC under the Plan, based on Plaintiff's expressed concern that Meridell would not be a good fit due to A.D.'s age and IQ and because Plaintiff's separately engaged consultant believed it was a short-term facility, notwithstanding Aetna's clarification to the contrary. (DGIP001825; 1835; 1854.)

**Plaintiff's Response:** Disputed. Meridell was inappropriate and unavailable for residential treatment of A.D. because A.D. was too young for their program, did not accept children under

age 11, did not respond to telephone calls from Plaintiff. DGIP0132, 1825; *see also* DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer  Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs.").

<mark>Defendant's Reply</mark>: To the extent Plaintiff disputes Paragraph 53 of Defendant's SOF on the basis that Meridell purportedly would not accept A.D. due to his age, Defendant incorporates by this reference Defendant's Reply to Paragraph 52, *supra*, as if fully restated herein.

To the extent Plaintiff disputes the appropriateness of Meridell on the basis of purported representations by A.D.'s treatment team, Defendant incorporates by this reference Defendant's Reply to Paragraph No. 32, *supra*, as if fully restated herein.

Further responding, the Administrative Record relied upon by Plaintiff to dispute the facts asserted in Paragraph 53 is to the first level claim appeal submitted by Plaintiff's third-party appeal consultant. That document does not support Plaintiff's controversion of the facts alleged in Paragraph 53 inasmuch as nothing contained therein states that any member of A.D.'s treatment team specifically advised that Meridell was inappropriate for A.D.'s care. Moreover, no medical records in the Administrative Record support Plaintiff's controverting of the facts set forth in Paragraph 53. Instead, Plaintiff's position, as well as that expressed in the claim denial appeal cited by Plaintiff in support thereof, is not supported by any admissible evidence and is improper argument. *See Holtz*; *Alliance Security Products, Inc.*; *Nowlin*, *supra*.

Still further replying, Plaintiff's response is directly controverted by the portion of the Administrative Record cited in Paragraph 53:

> Meridell Achievement Center: Parents were provided the facility's contact information on 9/16. On 9/17 the educational consultant stated that the facility doesn't work with 10-year-olds and its short-term. On 9/19, CA emailed parents stating that he had spoken to the facility and the member's age does not exclude him. There is a 2-week waitlist and they are willing to interview him. CA informed them that this is not short term and is a residential facility. There is availability in the next 2 weeks.

DGIP001854. Plaintiff cannot create a disputed issue of material fact by at best disregarding, or worse, intentionally misrepresenting, evidence in the Administrative Record that expressly contradicts Plaintiff's position.

For these reasons, Plaintiff's response to Paragraph 53 of Defendant's SOF should be disregarded, and the facts asserted in Paragraph 53 should be deemed undisputed.

54.     Through communications between September 20 and 21, 2022 (and again in March 2023), Aetna advised Plaintiff that Oak Plains was an in-network RTC that could admit A.D. within seven to ten days, with consideration given to A.D.'s specific needs and age. (DGIP001769; 1808-09: "CA spoke to Marc, the director of admissions 931-362-2008, who stated that the member's age and ASD dx are not exclusionary. There will be availability in the next 7-10 days and the member's parents can call him directly to start the intake process;" *see also* DGIP001820.)

**Plaintiff's Response:** Disputed. Oak Plains was inappropriate and unavailable for residential treatment of A.D. the facility had a 5 week wait, was a short term program, there were allegations of children harmed in the facility, and the program accepted patients with very low IQ which did not describe A.D. who had a high IQ. DGIP0132, 1765; *see also* DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team

(outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs.").

**Defendant's Reply**: To the extent Plaintiff contends that Oak Plains "had a 5 week wait," that contention is directly contradicted by the Administrative Record. *See* DGIP001808: "CA sent an email to the member's parents, stating that the CA spoke to an RTC – Oak Plains Academy. There is availability in the next 7-10 days." *See also* DGIP001809. Plaintiff cannot create a disputed issue of material fact by at best disregarding, or worse, intentionally misrepresenting, evidence in the Administrative Record that expressly contradicts Plaintiff's position.

To the extent Plaintiff disputes the appropriateness of Oak Plains for A.D.'s care on the basis of purported representations by A.D.'s treatment team, Defendant incorporates by this reference Defendant's Reply to Paragraph No. 32, *supra*, as if fully restated herein. *See also* Defendant's Reply to Paragraphs 131-132, *infra*.

Further responding, the Administrative Record relied upon by Plaintiff to dispute the facts asserted in Paragraph 54 is to the first level claim appeal submitted by Plaintiff's third-party appeal consultant. That document does not support Plaintiff's controversion of the facts alleged in Paragraph 54 inasmuch as nothing contained therein states that any member of A.D.'s treatment team specifically advised that Oak Plain was inappropriate for A.D.'s care. Moreover, no medical records in the Administrative Record support Plaintiff's controverting of the facts set forth in Paragraph 54. Instead, Plaintiff's position, as well as that expressed in the claim denial appeal cited

by Plaintiff in support thereof, is contradicted by medical records and is improper argument. *See Holtz*; *Alliance Security Products, Inc.*; *Nowlin*; *Sepulveda*, *supra*.

For these reasons, Plaintiff's response to Paragraph 54 of Defendant's SOF should be disregarded, and the facts asserted in Paragraph 54 should be deemed undisputed.

55.     As of September 24, 2022, Plaintiff refused to admit A.D. to Oak Plains, despite Oak Plains being fully accredited and vetted by Aetna and approved as an in-network RTC under the Plan, based on Plaintiff's and/or Plaintiff's separately engaged consultant's review of negative online reviews and based on concerns surrounding A.D.'s IQ and the care environment. (DGIP001765; 1803; 1835.)

**Plaintiff's Response:** Disputed for the reasons cited in response to statement No. 54 above.

**Defendant's Reply**: Defendant incorporates by this reference Defendant's Reply to Paragraph 54, *supra*, as if fully restated herein.

56.     Before and after Plaintiff declined the Plan's referrals to suitable, available RTC in-network facilities, Aetna continued answering Plaintiff's inquiries regarding terms of Plan coverage, available in-network RTC facilities covered by the Plan, and how length of stay at an RTC is determined based on the individual's treatment needs and progress. (*See, e.g.*, DGIP001769; 1828; 1854-55.)

**Plaintiff's Response**: Undisputed as to the contents of the record. Disputed as to Defendant's characterization of the record.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the record," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because

1106835699\2\AMERICAS

Plaintiff's response to Paragraph 56 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 56 should be disregarded, and the facts asserted in Paragraph 56 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*;  *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

57.    As late as March 2023 – approximately five months after A.D.'s admission to Sandhill – Aetna continued to contact in-network RTC facilities to obtain updated availability to admit A.D. and continually provided updates to Plaintiff with the facilities' ability to admit A.D. and the associated timelines. (*See, e.g.*, DGIP001769; 1791; 1796; 1820; 1840.)

**Plaintiff's Response**: Undisputed as to the contents of the record. Disputed as to Defendant's characterization of the record.

==Defendant's Reply==: To the extent Plaintiff disputes "Defendant's characterization of the record," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 57 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 57 should be disregarded, and Paragraph 57 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*;  *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

58.    Aetna additionally explained that even if there were no in-network RTCs suitable for A.D.'s care per the terms of the Plan, Sandhill would not be approved on a single case agreement network exception basis because it did not meet the RTC criteria considered when in-network RTC facilities are not available: Sandhill lacked appropriate credentials for an RTC; did not have a licensed behavioral health provider on duty 24/7; did not employ a psychiatrist at the

facility; and did not have a medical director that is a psychiatrist. (DGIP001772-73; 1785; 1790; *see also* DGIP001668 (explaining the review process)).

**Plaintiff's Response**: Undisputed as to the contents of the record. Disputed as to Defendant's characterization of the record.

==**Defendant's Reply**==: To the extent Plaintiff disputes "Defendant's characterization of the record," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 58 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 58 should be disregarded, and Paragraph 58 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

F.    **Plaintiff Submits a Benefits Claim for Reimbursement of Sandhill Expenses, Which is Denied Due to Sandhill's Out-Of-Network Status.**

59.    Despite Plaintiff repeatedly being informed that as an out-of-network provider, services provided to A.D. by Sandhill would not be a covered expense under the express terms of the Plan, Plaintiff arranged for A.D.'s admission to Sandhill following his discharge from Huntsman. (DGIP001795; 1804-05; 1816-17: "The CA informed the parents about Sandhill Center's failure to meet criteria for OON [out of network] RTC's. The parents believe the facility's insurance advocacy team can assist with it. Parents have continued to decline INN [in-network] options.")

**Plaintiff's Response**: Undisputed that A.D. was admitted to Sandhill for residential treatment from his discharge at Huntsman. Disputed as to Defendant's characterization of the record.

1106835699\2\AMERICAS

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the record," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 59 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 59 should be disregarded, and Paragraph 59 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra.*

60.    A.D. was admitted to Sandhill on October 11, 2022. (DGIP000120.)

**Plaintiff's Response**: Undisputed.

61.    After A.D. was admitted to Sandhill, Plaintiff requested that the Plan pay for expenses incurred for A.D.'s treatment and care at Sandhill. (Pl. Mot., at 11; DGIP000011-17.)

**Plaintiff's Response**: Undisputed that Plaintiff submitted requests for Plan benefits for A.D.'s residential treatment at Sandhill. *i.e.* DGIP0136.

62.    On October 17, 2022, Aetna denied Plaintiff's request for reimbursement of Sandhill expenses, consistent with the reasons given to Plaintiff by Aetna's CA over the preceding month. (DGIP000011-17.)

**Plaintiff's Response**: Disputed. Aetna's denial did not reflect the informal communications between Aetna's representative and Plaintiff over the preceding month. Rather, the denial provided no facts regarding A.D. or his treatment history and instead offered the conclusory reason: "This is not a covered service under the terms of the plan." DGIP0012.

**Defendant's Reply**: Plaintiff disputes Paragraph 62 on the basis that Aetna's October 17, 2022 claim denial "did not reflect the informal communications between Aetna's representative

1106835699\2\AMERICAS

and Plaintiff over the preceding month." But Paragraph 62 does not assert that the denial letter contained or otherwise reflected those communications. Instead, it asserts that the claim denial communication was consistent with the explanations provided to Plaintiff by Aetna CA Kevin Gutierrez Barrios, extensively documented in the Administrative Record (*see*, *e.g.*, Defendant's Reply to Paragraph 84, *infra*), that Sandhill was an out-of-network RTC, that out-of-network services are not covered under the Plan, and thus Sandhill's treatment of A.D. was "not a covered service under the terms of the [P]lan." The facts asserted in Paragraph 62 are supported by the Administrative Record, and Plaintiff's disputing of those facts is merely Plaintiff's improper argument and attempt to "add his own 'spin' on the fact or otherwise dispute the inference from the stated fact." *See Nowlin*; *Alliance Security Products, Inc.*, *supra*. Accordingly, Plaintiff's response to Paragraph 62 should be disregarded, and the facts asserted in Paragraph 62 should be deemed undisputed.

63.    Aetna's claim denial letter does not dispute the medical necessity for A.D.'s receipt of RTC care, but instead explains that the Plan does not cover out-of-network provider expenses. (DGIP000011-17.)

**Plaintiff's Response**: Undisputed that the denial letter does not dispute the medical necessity of A.D.'s residential treatment. Disputed that the denial letter "explains that the Plan does not cover out of network provider expenses." The denial letter does not provide such an explanation.

==Defendant's Reply==: The October 17, 2022 claim denial letter (DGIP000011-17) states that the "coverage denial was based on the terms of the member's benefit plan document" and that "[t]he requested service," here, "Mental Health Residential Treatment," "is not covered" based on those terms, which include an exclusion for out-of-network services (which Plaintiff does not

dispute). The facts asserted in Paragraph 63 therefore are supported by the Administrative Record, and Plaintiff's disputing those facts is merely Plaintiff's improper argument and attempt to "add his own 'spin' on the fact or otherwise dispute the inference from the stated fact." *See Nowlin*; *Alliance Security Products, Inc.*, *supra*. Accordingly, Plaintiff's response to Paragraph 63 should be disregarded, and the facts asserted in Paragraph 63 should be deemed undisputed.

64.    On November 14, 2022, Plaintiff submitted an appeal to Aetna's October 17, 2022 claim denial prepared by an advocacy organization called Mental Health and Autism Insurance Project. (DGIP00021-125; the letter advocating for Plaintiff's position is located at DGIP000021-29, and the documentation provided with the appeal letter is located at DGIP00030-125.)

**Plaintiff's Response**: Undisputed.

65.    Through the appeal letter, Plaintiff's advocate alleged the in-network RTC facilities identified and vetted by Aetna, several of which confirmed their ability and willingness to timely admit A.D. following his discharge from Huntsman, were not suitable for A.D. (DGIP000021-27.)

**Plaintiff's Response**: Disputed. The November 14, 2022 appeal letter is not disputed. Defendant's characterization of the appeal letter is disputed as legal argument.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the appeal letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 65 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 65 should be disregarded, and Paragraph 65 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

66.    The appeal letter reiterates the exact same issues Plaintiff expressed to Aetna in September 2022 through October 2022 regarding the in-network RTC referrals provided by Aetna, which Aetna had already addressed with Plaintiff, as set forth *supra* ¶¶ 36-58. (DGIP000021-27.)

**Plaintiff's Response**: Undisputed as to the contents of the November 14, 2022 appeal submission. Defendant's characterization of the appeal letter is disputed as it is legal argument.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the appeal letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 66 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 66 should be disregarded, and Paragraph 66 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com, supra*.

67.    Plaintiff's advocate attached to the appeal letter correspondence from various of A.D.'s treating health care providers, medical records outlining A.D.'s treatment history, and prior Aetna correspondence. (DGIP00030-125.)

**Plaintiff's Response**: Undisputed that Plaintiff provided several enclosures with the appeal letter which are listed at DGIP0136-0137.

68.    The heath care providers' letters submitted in support of the appeal all recommend RTC care for A.D. upon discharge from Huntsman. (DGIP00037-45.)

**Plaintiff's Response**: Undisputed.

69.    None of A.D.'s health care providers recommended any specific RTC facility (including Sandhill) nor did they advise against any specific RTC facility. (DGIP00037-45.)

**Plaintiff's Response**: Disputed. DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs. They came up with two facilities that they felt were appropriate: Sandhill Center and InterMountain Academy in Montana. InterMountain felt that [A.D.'s] level of violence was too high and did not admit him. Sandhill meets nearly all of the needs described in Dr Tatti's letter."); DGIP0885 ("Everyone on the team wanted to find an in-network residential treatment center but it was not possible.").

**Defendant's Reply**: As in Paragraph 32, *supra*, Paragraph 69 asserts that none of A.D.'s health care providers recommended for or against any specific RTC facility. Plaintiff's controversion of the fact asserted in Paragraph 69, like Plaintiff's disputing of the facts asserted in Paragraph 32, is however not supported by the Administrative Record and is improper argument.

First, the health care providers that submitted recommendations for A.D.'s RTC treatment were Anne Tatti, Psy.D., a clinical psychologist (*see* DGIP000039-42); Lavere Haward, M. Ed., a Board-certified behavioral analyst (*see* DGIP000043-44); and Maggie Blau, a licensed clinical social worker at Huntsman Mental Health Institute (*see* DGIP000037). Each of these providers supplied a letter in September 2022 in which they recommended that A.D. move to RTC care following his discharge from hospitalization at Huntsman.

- Dr. Tatti's letter stated: "I, along with [A.D.'s] inpatient team as well as outpatient ABA team are in agreement that Residential Treatment is the appropriate level of care at this time." Dr. Tatti's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32. *See* DGIP000039; 41.

1106835699\2\AMERICAS

- Mr. Haward's letter stated: "It is my recommendation, as well as the recommendation of our clinic admin team, that [A.D.] be committed to a residential facility…" Mr. Haward's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32. *See* DGIP000043.

- Ms. Blau's letter stated: "The inpatient team is recommending that [A.D.] transition to a residential treatment facility to address aggression, mood, family relationships, and ASD." Ms. Blau's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32. *See* DGIP000037; *see also* DGIP001825 ("CA spoke to discharge planner Maggie Blau. She stated that the facility support [sic] an RTC stepdown," with no reference to any specific RTC.).

Pamela Wilkison, Ph.D., a licensed psychologist who treats A.D.'s brother, additionally provided a letter in September 2022 in which she stated: "It is imperative that [A.D.] remain hospitalized until he can enter residential treatment…" (*see* DGIP000045). However, like A.D.'s providers, Dr. Wilkison's letter contains no recommendation for or against any specific RTC facility, as asserted in Paragraph 32.

Plaintiff asserts that Meagan Heilman, a psychologist at Huntsman, also was part of A.D.'s treatment team, but the only references in the Administrative Record to Dr. Heilman are in Plaintiff's first and second level claim appeals (see below), and the Administrative Record does not reflect any recommendation from Dr. Heilman as to RTC care in the first instance, much less as to any specific RTC facility. Plaintiff's response also asserts Jennifer Taylor, a "placement consultant," also was part of A.D.'s treatment team, but as with Dr. Heilman, the Administrative Record contains no records showing Ms. Taylor ever opining on whether A.D. required RTC care or her providing any recommendation about any specific RTC to provide such care.

Thus, none of the medical records or other information provided by A.D.'s health care providers ever recommended for or against RTC treatment at any specific RTC facility – only that A.D. transition from inpatient hospitalization to RTC care. Plaintiff's disputing the fact asserted

in Paragraph 32 relating to the absence of any RTC recommendation from A.D.'s providers therefore lacks support in the Administrative Record and therefore should be disregarded. *See Holtz*, *supra*.

Second, the portions of the Administrative Record that Plaintiff cites to controvert the facts asserted in Paragraph 32 consist of the November 14, 2022 first level appeal to Aetna's claim denial (DGIP000130-137, with attachments at DGIP000138-229) and Plaintiff's second level appeal to Aetna's claim denial (DGIP000881-892, with attachments at DGIP000893-1002), each of which were authored by Plaintiff's third-party appeal consultant. A party's own statement regarding medical records, when contradicted by actual medical records, does not create a genuine issue of material fact. *Sepulveda v. City of New York*, No. 15CV5187RRMCLP, 2020 WL 2836952, at *8 (E.D.N.Y. May 29, 2020). Plaintiff's statements purporting to summarize the statements of certain health care providers contained in medical records should be disregarded for purposes of Defendant's SOF and Defendant's Motion.

Last, Plaintiff's controversion of the fact asserted in Paragraph 69 that none of A.D.'s providers recommended for or against any specific RTC facility relies solely on after-the-fact arguments advanced by Plaintiff's third-party appeal consultant in post-claim denial appeals. As such, Plaintiff's response to Paragraph 32 is improper argument and as well as Plaintiff's improper effort to "add his own 'spin' on the fact or otherwise dispute the inference from the stated fact." *See Nowlin, supra. See also, Alliance Security Products, Inc.*, *supra*.

For each and all of these reasons, Plaintiff's response to Paragraph 69 should be disregarded and the facts asserted in Paragraph 69 of Defendant's SOF should be deemed undisputed.

1106835699\2\AMERICAS

70.     None of A.D.'s health care providers stated A.D. needed a specific type of RTC facility based on A.D.'s IQ, recommended length of stay, or a specific therapeutic milieu. (DGIP00037-45.)

**Plaintiff's Response**: Disputed. The appeal letter describes how the residential facilities identified by Aetna were inappropriate for A.D. based on several factors pursuant to consultation with A.D.'s treatment team. DGIP0023; *see also* DGIP0130 ("Parents discussed the centers that Aetna put forward with their clinical team, which included an expert on mental health placements."); DGIP0132 ("[A.D.'s] parents, in consultation with his treatment team (outpatient therapist Ann Tatti, ABA therapist Lavere Harward, Huntsman psychologist Dr Meagan Heilman, Huntsman social worker Maggie Blau, and placement consultant Jennifer  Taylor), carefully reviewed the facilities provided by the Aetna team."); DGIP0133 ("The treatment team felt that none of the Aetna recommended centers would be appropriate in meeting [A.D.'s] needs. They came up with two facilities that they felt were appropriate: Sandhill Center and InterMountain Academy in Montana. InterMountain felt that [A.D.'s] level of violence was too high and did not admit him. Sandhill meets nearly all of the needs described in Dr Tatti's letter."); DGIP0885 ("Everyone on the team wanted to find an in-network residential treatment center but it was not possible.").

**Defendant's Reply**: Defendant incorporates by this reference Defendant's Reply to Paragraphs 32 and 69, *supra*, as if fully restated herein.

71.     Plaintiff rejected or otherwise refused to consider the in-network RTC facilities covered by the Plan that would admit A.D. upon discharge from Huntsman, opting instead to admit to Sandhill with full knowledge that Sandhill was an out-of-network provider and that as such,

under the terms of the Plan, coverage would not be provided for A.D.'s treatment at Sandhill. (*See, supra*, ¶¶ 41-59.)

**Plaintiff's Response**: Disputed as legal argument. Disputed for the reasons cited in response to statement Nos. 41-59 above.

==Defendant's Reply==: The facts alleged in Paragraph 71 are undisputed material facts fully supported by portions of the Administrative Record cited in Paragraphs 41 through 59 and are not argument. Defendant additionally incorporates by this reference Defendant's Reply to Paragraphs 41-59, *supra*, as if each was fully restated herein.

72.    On December 14, 2022, Aetna denied Plaintiff's appeal. (DGIP000870-78.)

**Plaintiff's Response**: Undisputed.

73.    The appeal denial letter explained the appealable issue, the materials reviewed in responding to the appeal, the decision reached, how the decision was made, and the Plan language and bases for denying the request for reimbursement. (DGIP000870-78.)

**Plaintiff's Response**: Undisputed as to the contents of the December 14, 2022 appeal denial letter. Defendant's characterization of the appeal denial letter is disputed.

==Defendant's Reply==: To the extent Plaintiff disputes "Defendant's characterization of the appeal letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 73 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 73 should be disregarded, and the facts asserted in Paragraph 73 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

74.    The appeal denial letter also explained how Plaintiff could pursue a second level appeal and provided member resources for assistance. (DGIP000873-74.)

**Plaintiff's Response**: Undisputed as to the contents of the December 14, 2022 appeal denial letter.

75.    Plaintiff's advocate submitted a second level appeal on February 22, 2023. (DGIP000881-1000; the letter advocating for Plaintiff's position is located at DGIP000881-892, and the documentation provided with the appeal letter is located at DGIP000893-1000.)

**Plaintiff's Response**: Undisputed.

76.    In this second level appeal, Plaintiff's advocate repeated the position previously expressed in the first appeal regarding issues with the in-network RTC facilities identified by Aetna as suitable for, and available to provide, care to A.D. (which Aetna previously already addressed with Plaintiff), and took issue with both the Plan's out-of-network language and Aetna's prior authorization for A.D.'s recurring (twice weekly, see DGIP000039) individual therapy from an out-of-network therapist (Dr. Tatti) while rejecting coverage for full-time, residential mental health care services from an out-of-network RTC (Sandhill). (DGIP000881-892.)

**Plaintiff's Response**: Undisputed as to the contents of the February 22, 2023 appeal letter. Defendant's characterization of the appeal letter is disputed.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the appeal letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 76 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 76 should be disregarded, and the facts asserted

in Paragraph 76 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

77.    Plaintiff's advocate acknowledged in Plaintiff's second level appeal that Aetna does not approve single case agreements for out-of-network providers absent a network inadequacy for the type of health care service requested. (DGIP000888.)

**Plaintiff's Response**: Undisputed as to the contents of the February 22, 2023 appeal letter. Defendant's characterization of the appeal letter is disputed.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the appeal letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 77 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 77 should be disregarded, and the facts asserted in Paragraph 77 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

78.    Nearly all documentation submitted by Plaintiff's advocate in support of Plaintiff's second level appeal was duplicative of the materials submitted with Plaintiff's initial appeal. (*Compare* DGIP000891-1000 *with* DGIP00027-125.)

**Plaintiff's Response**: Undisputed as to the contents of the February 22, 2023 appeal letter. Defendant's characterization of the appeal letter is disputed.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the appeal letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to

1106835699\2\AMERICAS

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 78 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 78 should be disregarded, and the facts asserted in Paragraph 78 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

79.    On February 28, 2022, Aetna denied Plaintiff's second level appeal. (DGIP0001148-56.)

**Plaintiff's Response**: Disputed. The second appeal denial letter was dated February 28, 2023. DGIP1148.

**Defendant's Reply:** Paragraph 79 of Defendant's SOF contains a typographical error reflecting the incorrect year of the second level claim appeal denial letter. The portion of the Administrative Record cited in Paragraph 79 reflects that the second level claim appeal denial letter is dated February 28, 2023, not 2022, as asserted in Paragraph 79. Plaintiff does not dispute the material fact asserted in Paragraph 79 of Defendant's SOF, which is that Aetna denied Plaintiff's second level appeal. Accordingly, Paragraph 79 of Defendant's SOF should be deemed undisputed, modified to correct the date of the second appeal denial to February 28, 2023.

80.    The second level appeal denial letter explained the materials reviewed, the decision, the basis for denial and how the determination was made, relevant Plan documents and language relevant to the denial (including terms regarding the Plan's network and the prior authorization process), and Plaintiff's rights to further dispute the Plan's decision. (DGIP0001148-56.)

**Plaintiff's Response**: Undisputed as to the contents of the February 28, 2023 appeal denial letter.

81.    At all relevant times, Sandhill was a "non-contracted" RTC, *i.e.*, an out-of-network provider for which Plaintiff had not received prior authorization. (DGIP001149; 1816-17.)

**Plaintiff's Response**: Undisputed that Sandhill was not a contracted provider.

82.    The Plan does not cover RTC expenses from out-of-network providers unless prior authorization for services from an out-of-network RTC has been requested and approved. (DGIP001149; 1663; 1667).)

**Plaintiff's Response**: Undisputed that the Plan purports not to cover services with out-of-network providers but does offer out-of-network coverage due to network inadequacy.

**Defendant's Reply**: Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 77 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 77 should be disregarded, and the facts asserted in Paragraph 77 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

83.    An individual may request coverage for out-of-network RTC prior to services being rendered; whether that request is approved is based upon Aetna's discretionary review of network status, reported services, member eligibility, and other Plan provisions and limits based on the specific service at issue. (DGIP001149; 1667-68.)

**Plaintiff's Response**: Undisputed that the Plan may cover services with out-of-network providers.

84.    When Plaintiff requested the Plan cover Sandhill RTC expenses, Aetna denied that request because Sandhill was an out-of-network provider and in-network providers were available,

- 50 -

and even if they were not, Sandhill did not meet Aetna's criteria for single case agreement exception-based coverage of an out-of-network RTC provider. (*See, generally*, DGIP000870-78,1148-56; *see also* DGIP001772-73, 1790, 1816-17.)

**Plaintiff's Response**: Disputed. Aetna's written denial letters to Plaintiff did not state that benefits were denied due to Sandhill not meeting Aetna's criteria. *i.e.* DGIP0011-0015, 0870-0872, 1132-1134.

**Defendant's Reply**: Plaintiff does not dispute that Aetna denied coverage "because Sandhill was an out-of-network provider and in-network providers were available." Thus, these facts are undisputed. As to what Plaintiff does dispute in Paragraph 84 – that "Aetna's written denial letters to Plaintiff did not state that benefits were denied due to Sandhill not meeting Aetna's criteria" – both the December 14, 2022 first level claim appeal denial letter and the February 28, 2023 second level claim appeal denial letter specifically stated that Aetna's "determination was based on the provider's [Sandhill's] network status, reported services, member eligibility, and all other written plan charge revisions and limits at the time the services were rendered." DGIP000871; DGIP001149. But, more importantly, Paragraph 84 does not assert that these denial letters specifically stated that coverage was denied due to Sandhill not meeting Aetna's criteria for exception-based out-of-network RTC coverage, as Plaintiff's response contends. Rather, Paragraph 84 states that Aetna denied Plaintiff's request for coverage of Sandhill expenses because in-network RTCs were available, Sandhill was out-of-network, and Sandhill did not meet the criteria for exception-based out-of-network RTC coverage. As to the latter point, the portion of the Administrative Record cited in Paragraph 84 evidences that as of September 28, 2022 – three weeks before the initial claim denial (which was dated October 17, 2022; DGIP000011-17), Plaintiff had been provided notice that Sandhill did not meet Aetna's criteria for exception-based

coverage of an out-of-network RTC provider. *See* DGIP001816: "CA reported to mother that he had discussed the Criteria for Recognizing Non-Contracted Residential Treatment Facilities and the facility [Sandhill] did not meet any of it." *See also* DGIP001772-1774 (October 20, 2022 email from Plaintiff to CA Kevin Gutierrez Barrios inquiring "what do we need to do to have Aetna credential Sandhill?" and addressing the specifics of Aetna's requirements for exception-based approval of an out-of-network RTC, e.g., accreditation; behavioral health provider on duty 24/7; at least weekly psychiatrist treatment; and medical director being a psychiatrist); *see also* DGIP001790 (CA Kevin Gutierrez Barrios email to Plaintiff dated October 26, 2022 discussing Sandhill not meeting Aetna out-of-network RTC requirements). Accordingly, the Administrative Record contains ample evidence to support the facts asserted in Paragraph 84. Plaintiff's disputing of those facts is merely Plaintiff's improper attempt to "add his own 'spin' on the fact or otherwise dispute the inference from the stated fact." *See Nowlin; Alliance Security Products, Inc.*, *supra*. Further responding, *see also* Defendant's Reply to Paragraphs 103-104; 117; 119; 137-143.

Accordingly, Plaintiff's response to Paragraph 84 should be disregarded, and the facts asserted in Paragraph 84 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*, *supra*.

### G. Plaintiff Files A Complaint for Recovery of Plan Benefits Under ERISA.

85.    Plaintiff filed the Complaint on June 6, 2023. (Doc. 1.)

**Plaintiff's Response**: Undisputed.

86.    Plaintiff's Complaint alleges a single cause of action for denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). (Doc. 1, ¶¶ 27-34.)

**Plaintiff's Response**: Undisputed.

87.     At no time has Plaintiff alleged any other cause of action nor amended the Complaint to seek relief on any other basis, including, without limitation, under the Mental Health Parity and Addiction Equity Act, the Affordable Care Act, or New York Insurance Law. (Doc. 1.)

**Plaintiff's Response**: Undisputed.

## H.     The Parties Each Seek Judgment Based Upon the Administrative Record and the Court Orders Remand for Further Administrative Review.

88.     On April 5, 2024, Plaintiff submitted to the Court a Rule 52 Motion for Judgment (Doc. 33).

**Plaintiff's Response:**  Undisputed.

89.     On May 3, 2024, Defendant submitted to the Court a Rule 56 Motion for Summary Judgment and Opposition to Plaintiff's Rule 52 Motion for Judgment (Doc. 36).

**Plaintiff's Response:**  Undisputed.

90.     On May 31, 2024, Plaintiff submitted to the Court an Opposition to Defendant's Rule 56 Motion for Summary Judgment and Reply in Support of Plaintiff's Rule 52 Motion for Judgment (Doc. 41).

**Plaintiff's Response:**  Undisputed.

91.     On June 14, 2024, Defendant submitted to the Court a Reply in Support of its Rule 56 Motion for Summary Judgment. (Doc. 42.)

**Plaintiff's Response:**  Undisputed.

92.     On February 24, 2025, the Court issued a Memorandum Opinion and Order on Plaintiff's Rule 52 Motion for Judgment and Defendant's Rule 56 Motion for Summary Judgment (Doc. 44, the "Order")).

**Plaintiff's Response:**  Undisputed.

93.     The Court's Order ruled that Plaintiff's and Defendant's motions must be treated as motions for summary judgment under Rule 56. (Doc. 44.)

**Plaintiff's Response:**  Undisputed.

94.     The Court's Order found that Aetna's decision to deny benefits to Plaintiff "did not adequately explain the basis for denial by failing to address whether to authorize a single case agreement for the out-of-network provider at issue" and determined the appropriate relief was to remand the case to Aetna for further administrative review. (Doc. 44.)

**Plaintiff's Response:** Undisputed that the Court found Aetna's decision did not adequately explain the basis for denial by failing to address the single case agreement. Disputed to the extent Defendant characterizes this as the only deficiency identified by the Court. The Court found the denial was arbitrary and capricious and rendered "without reason." ECF No. 44 at p. 6.

**Defendant's Reply:**     To the extent Plaintiff disputes Defendant's characterization of Court's Order, Paragraph 94 does not purport to provide a complete summary of the Court's order, which speaks for itself. Accordingly, Plaintiff's response to Paragraph 94 should be disregarded and Paragraph 94 of Defendant's SOF should be deemed undisputed.

95.     The Court, through the Order, issued a non-final order remanding Plaintiff's claim for benefits to Aetna "for a new review and with instructions to specifically address in any decision whether Sandhill should be granted a single case agreement, including consideration of Plaintiff's arguments concerning the adequacy of in-network offerings." (Doc. 44.)

**Plaintiff's Response:**  Undisputed.

96.     The Order further directed Defendant to "notify the Court within two weeks of the completion of the new review." (Doc. 44.)

**Plaintiff's Response:**  Undisputed.

97.     The Court retained jurisdiction over this case pending remand. (Doc. 44.)

**Plaintiff's Response:** Undisputed.

**I.      Aetna Issues a Determination on Remand, Which Plaintiff Appeals.**

98.     On April 28, 2025, Plaintiff's counsel submitted a letter motion to the Court requesting the Court to enter judgment for Plaintiff (Doc. 45), to which Defendant submitted a letter response in opposition on May 1, 2025 (Doc. 47).

**Plaintiff's Response:** Undisputed.

99.     On May 1, 2025, Aetna issued its decision following remand of Plaintiff's claims for benefits (the "May 1, 2025 Determination"), upholding its earlier denial of coverage for A.D.'s residential treatment at Sandhill. (DGIP001862-1910.)

**Plaintiff's Response:** Undisputed.

100.    On May 1, 2025, Defendant notified the Court in compliance with the Court's Order that Aetna "complet[ed] its new review" and issued a claim determination on remand. (Doc. 46.)

**Plaintiff's Response:** Undisputed.

101.    Aetna's May 1, 2025 Determination specifically considered Plaintiff's request that Aetna approve Sandhill, notwithstanding its status as an out-of-network provider, on a single case agreement basis, including Plaintiff's claim that there were no adequate in-network facilities available to provide A.D. with the necessary care. (DGIP001862-1867.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization of the record. Aetna did not consider all of Plaintiff's arguments on appeal.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the record," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Plaintiff's response to Paragraph 101 cites no admissible evidence controverting the material fact asserted therein.

To the extent Plaintiff's response states "Aetna did not consider all of Plaintiff's arguments on appeal," Plaintiff's response is not a controverting fact statement but rather is Plaintiff's argument. Moreover, the content of Aetna's May 1, 2025 Determination speaks for itself.

For these reasons, Plaintiff's response to Paragraph 101 should be disregarded, and the facts asserted in Paragraph 101 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

102.    Aetna's May 1, 2025 Determination explained that a single case agreement was not appropriate or warranted for Sandhill because there were adequate in-network facilities available, including Meridell Achievement Center, Oak Plains Academy, and Center for Discovery, and explained that these in-network residential treatment facilities were appropriate and available to promptly accept A.D. for residential treatment-based care following Aetna's contact with those facilities. (DGIP001862-1867.)

**Plaintiff's Response:**   Undisputed as to the contents of the record. Disputed as to Defendant's characterization of what was explained by Aetna in the denial letter.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of what was explained by Aetna in the denial letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact,

must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 102 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 102 should be disregarded, and the facts asserted in Paragraph 102 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

103.    Aetna's May 1, 2025 Determination further explained that even if the in-network residential treatment facilities it identified as appropriate and available to provide residential treatment to A.D. were inappropriate or unavailable, Sandhill nonetheless would not qualify for approval as an out-of-network provider on a single case agreement basis because Sandhill did not meet Aetna's quality of care requirements for residential treatment facilities. (DGIP001864.)

**Plaintiff's Response:**    Undisputed as to the contents of the record. Disputed as to Defendant's characterization of what was explained by Aetna in the denial letter.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of what was explained by Aetna in the denial letter," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 103 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 103 should be disregarded, and the facts asserted in Paragraph 103 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

104.    Aetna provided to Plaintiff the relevant quality of care requirements, and explained the specific criteria Sandhill failed to satisfy, with its May 1, 2025 Determination. (DGIP001864-1910.)

**Plaintiff's Response:**  Undisputed as to the contents of the record. Disputed as to Defendant's characterization of what was explained by Aetna in the denial letter and criteria provided by Aetna that are not contained in the Plan.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of what was explained by Aetna in the denial letter and criteria provided by Aetna that are not contained in the Plan," Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Because Plaintiff's response to Paragraph 104 cites no admissible evidence controverting the material fact asserted therein, Plaintiff's response to Paragraph 104 should be disregarded, and the facts asserted in Paragraph 104 of Defendant's SOF should be deemed undisputed. *See, e.g., Holtz*; *Alliance Security Products, Inc.*; *PharmacyChecker.com*, *supra*.

105.    On May 14, 2025, the Court held a teleconference with counsel for the parties, in which it requested Defendant "notify the Court by letter whether it will consent to Plaintiff filing an appeal" to Aetna's May 1, 2025 Determination. (May 14, 2025 Minute Entry; text-only entry).

**Plaintiff's Response:**  Undisputed.

106.    On May 19, 2025, Defendant notified the Court that it consented to Plaintiff's submission of an administrative appeal to Aetna's May 1, 2025 Determination and submitted a proposed agreed schedule for Plaintiff's appeal and Aetna's response to that appeal. (Doc. 49.)

**Plaintiff's Response:**  Undisputed.

107.    On May 20, 2025, the Court issued a Memo Endorsement directing Plaintiff to file an administrative appeal to Aetna's May 1, 2025 Determination within ninety days, and directing Aetna to respond to Plaintiff's appeal within ninety days of receipt of that appeal. (Doc. 50.)

**Plaintiff's Response:**  Undisputed.

108.    On August 13, 2025, Plaintiff submitted an appeal to Aetna's May 1, 2025 Determination (the "August 13, 2025 Appeal") in which Plaintiff restated A.D.'s treatment history and Plaintiff's position that Plaintiff's claim for benefits for A.D.'s residential treatment at Sandhill, although provided by an out-of-network provider, should have nonetheless been approved on a single case agreement basis because in-network residential treatment options were either unavailable and/or inappropriate. (DGIP001911-1922.)

**Plaintiff's Response:**  Undisputed as to the contents of the August 13, 2025 Appeal. Disputed as to Defendant's characterization of the appeal as merely restating prior arguments. The appeal also included new evidence and new arguments, including letters from residential treatment specialists who personally visited the in-network facilities, letters from treating providers written in 2025, and arguments regarding the Court's Order, the Plan's express coverage requirements, and Aetna's application of undisclosed criteria not contained in the Plan. DGIP1911-1950.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of the appeal as merely restating prior arguments" Defendant states that the content of Plaintiff's August 13, 2025 Appeal speaks for itself and supports the facts alleged in Paragraph 108, which is that the arguments made in support of Plaintiff's claim for benefits in Plaintiff's August 13, 2025 Appeal were materially and substantially unchanged from those advanced by Plaintiff in previous appeals. Accordingly, Plaintiff's response to Paragraph 108 should be disregarded and Paragraph 108 of Defendant's SOF should be deemed undisputed.

109.    Plaintiff's August 13, 2025 Appeal also restated arguments previously made by Plaintiff in prior appeals relating to the in-network residential treatment facilities identified by

Aetna for A.D.'s care, including Plaintiff's personal opinions about several of those facilities. (DGIP001916-1981.)

**Plaintiff's Response:**  Undisputed as to the contents of the record. Disputed as to Defendant's characterization of Plaintiff's documented concerns about the in-network facilities as "personal opinions." The concerns raised by Plaintiff were based on information provided by the facilities themselves, and on the opinions of A.D.'s treating providers and residential treatment specialists who personally visited the facilities. DGIP1916-1918; DGIP1942-1944; DGIP1947-1948.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization of Plaintiff's document concerns about the in-network facilities as 'personal opinions,'" Defendant states that the content of Plaintiff's August 13, 2025 Appeal speaks for itself and supports the facts alleged in Paragraph 108, which is that the arguments made in support of Plaintiff's claim for benefits in Plaintiff's August 13, 2025 appeal were substantially unchanged from those advanced by Plaintiff in previous appeals. Accordingly, Plaintiff's response to Paragraph 109 should be disregarded and Paragraph 109 of Defendant's SOF should be deemed undisputed.

110.    Plaintiff's August 13, 2025 Appeal included letters from several of A.D.'s health care providers dated June or July 2025, and thus three years after those providers treated A.D and recommended he receive continuing care in a residential treatment facility. Those letters asserted – for the first time – those providers' opinions that Sandhill was the only appropriate residential treatment facility for A.D. in 2022. (DGIP001936-1948.)

**Plaintiff's Response:**  Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The 2025 letters supplemented and elaborated on the providers' prior opinions recommending residential treatment at Sandhill. The statements that the in-network

facilities were inappropriate for A.D. were consistent with the providers' prior recommendations. DGIP1936-1948. Additionally, letters from residential treatment specialists Dr. Russell Hyken and Jennifer Taylor who personally visited the proffered in-network facilities were submitted for the first time and provided direct knowledge of those facilities in addition to direct knowledge about A.D.'s clinical needs in 2022. DGIP1942-1944; DGIP1947-1948.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Plaintiff's August 13, 2025 Appeal speaks for itself and supports the facts alleged in Paragraph 110, which is that the letters from several of A.D.'s health care providers dated June or July 2025 asserted – *for the first time* – those providers' opinions that Sandhill was the only appropriate residential treatment facility for A.D. in 2022. Accordingly, Plaintiff's response to Paragraph 110 should be disregarded and Paragraph 110 of Defendant's SOF should be deemed undisputed.

111. Plaintiff's August 13, 2025 Appeal additionally reiterated Plaintiff's prior arguments that Sandhill satisfied the Plan's definition of "provider" and "residential treatment facility" and that the network adequacy requirements of the federal Affordable Care Act and New York State insurance regulations required Aetna to approve Plaintiff's claim for out-of-network coverage. (DGIP001915.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Plaintiff's August 13, 2025 Appeal speaks for itself and supports the facts alleged in Paragraph 111. Accordingly, Plaintiff's response to Paragraph 111 should be disregarded and Paragraph 111 of Defendant's SOF should be deemed undisputed.

112.     Plaintiff's August 13, 2025 Appeal also enclosed documents relating to Sandhill's licensure and certifications in November 2023 – which was more than a year after A.D.'s admission at Sandhill. (DGIP001949-50.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The Plan requires only that a residential treatment facility be "appropriately licensed by the state Department of Health or its equivalent." DGIP1682. Sandhill was licensed at the time of A.D.'s admission. DGIP0136; 0890. The 2023 licensure certificates were the most recently available certificates and confirmed Sandhill's ongoing licensure status.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Plaintiff's August 13, 2025 Appeal speaks for itself and supports the facts alleged in Paragraph 112, which is that the evidence of licensure provided in Plaintiff's August 13, 2025 Appeal indicates that Sandhill was licensed by the State of New Mexico only as of November 2023 – which was more than a year after A.D.'s admission at Sandhill. To the extent Plaintiff's response asserts that "Sandhill was licensed at the time of A.D.'s admission," the citations in Plaintiff's response are to Plaintiff's appeal consultants' appeals purporting to establish Sandhill's licensure status as of A.D.'s admission to Sandhill. Those statements, however, are inadmissible hearsay. Accordingly, Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

To the extent that Plaintiff contends in his response to Paragraph 112 that the November 2023 licenses (DGIP001949-50) "were the most recently available certificates and confirmed

1106835699\2\AMERICAS

Sandhill's ongoing licensure status," Plaintiff does not cite any evidence to support that purported fact (and there is no evidence in the Administrative Record to support it). Accordingly, Plaintiff's response here also does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

For these reasons, Plaintiff's response to Paragraph 112 should be disregarded and Paragraph 112 of Defendant's SOF should be deemed undisputed.

> **J.    Aetna Considers All Materials Submitted by Plaintiff's Appeal, Provides a Full and Fair Review, and Denies Plaintiff's Claim for Benefits on Remand.**

113.    On November 11, 2025, Aetna responded to Plaintiff's August 13, 2025 Appeal (the "November 11, 2025 Determination"). (DGIP001951-1966.)

**Plaintiff's Response:** Undisputed.

114.    Aetna's November 11, 2025 Determination was made by a licensed psychiatrist who is board certified in child and adolescent psychiatry and who was not previously involved in any prior Aetna determinations with respect to A.D.'s treatment or claims relating thereto, including Plaintiff's prior appeals (the "Appeal Reviewer"). (DGIP001951-1952.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The Appeal Reviewer never met or evaluated A.D., never visited any of the in-network facilities or Sandhill, and did not consult with a residential treatment specialist. DGIP1951-1966.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 114. Defendant further responds that Paragraph 114 does not allege that the Appeal Reviewer met or evaluated A.D., visited any of the in-network

facilities or Sandhill, or consulted with a residential treatment specialist. Accordingly, to the extent Plaintiff's response disputes Paragraph 114, Plaintiff's response is improper argument, should be disregarded, and Paragraph 114 of Defendant's SOF should be deemed undisputed.

115.    The November 11, 2025 Determination entailed the Appeal Reviewer's review of the entire Administrative Record, including Plaintiff's August 13, 2025 Appeal and the documents submitted with it. (DGIP001951-1952.)

**Plaintiff's Response:**    Undisputed as to the contents of the record. Disputed as to Defendant's characterization. Despite purporting to review the entire Administrative Record, the Appeal Reviewer failed to address Plaintiff's argument that Sandhill satisfied the Plan's express requirements for a residential treatment facility and failed to identify any Plan provision authorizing application of the Aetna criteria to restrict coverage. DGIP1921; 1961-1963.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 115, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 115 of Defendant's SOF should be deemed undisputed.

116.    The November 11, 2025 Determination specifically and extensively addressed Plaintiff's arguments with respect to coverage for A.D.'s residential treatment at Sandhill, including Plaintiff's contentions with respect to network inadequacy and a single case agreement, as well as the materials submitted by Plaintiff with all prior appeals, including the August 13, 2025 Appeal. (DGIP001951-1966.)

**Plaintiff's Response:** Disputed. The denial letter did not specifically or extensively respond to Plaintiff's appeal. The denial letter failed to address specific arguments raised in Plaintiff's appeal including that Sandhill satisfied the Plan requirements for coverage, the ACA requirements apply to Aetna's network used for the Deloitte benefit plan, and the Aetna criteria are not applicable and restrict coverage under the Plan.

**Defendant's Reply:** Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 116. To the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any record evidence. Accordingly, Plaintiff's response is also improper because it does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 116 should be disregarded, and Paragraph 116 of Defendant's SOF should be deemed undisputed.

117. The Appeal Reviewer's November 11, 2025 Determination explained that as an out-of-network provider, Sandhill did not qualify for coverage under the terms of the Plan, nor was coverage for A.D.'s residential treatment at Sandhill necessary or appropriate on a single case agreement basis. (DGIP001951-1966.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The denial letter ignored the actual Plan language and Plaintiff's argument that Sandhill satisfied the Plan requirements for coverage.

**Defendant's Reply:** To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself

and supports the facts alleged in Paragraph 117, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any record evidence. Accordingly, Plaintiff's response is also improper because it does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 117 should be disregarded, and Paragraph 117 of Defendant's SOF should be deemed undisputed.

118.    Referencing Plan language, the Appeal Reviewer noted that the Plan expressly does not cover out-of-network care and explained that although Aetna retains discretion to enter into a single case agreement for coverage by an out-of-network provider, it also retains discretion to not do so, including when clinically appropriate in-network providers are available. (DGIP001953; DGIP001962-1964.)

**Plaintiff's Response:**    Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The denial letter ignored the actual Plan language and Plaintiff's argument that Sandhill satisfied the Plan requirements for coverage.

**Defendant's Reply:** To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 118, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any record evidence. Accordingly, Plaintiff's response is also improper because it does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact,

must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 118 should be disregarded, and Paragraph 118 of Defendant's SOF should be deemed undisputed.

119.    The Appeal Reviewer specifically cited the Plan's Prior Authorization language, which permits Aetna to consider requests for out-of-network provider coverage through use of the utilization review process, including review of a requested service's clinical necessity, appropriateness, efficacy, or efficiency, and using utilization review techniques such as ambulatory review, prospective review, second opinion, certification, concurrent review, case management, discharge planning, retrospective review, or similar programs. (DGIP001963-1964.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The utilization review process is limited to evaluating clinical necessity, appropriateness, efficacy, or efficiency. It does not authorize Aetna to impose facility accreditation requirements or staffing criteria not contained in the Plan and which restricts coverage provided under the Plan.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 119, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any record evidence. Accordingly, Plaintiff's response is also improper because it does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed.

1106835699\2\AMERICAS

R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 119 should be disregarded, and Paragraph 119 of Defendant's SOF should be deemed undisputed.

120.    The Appeal Reviewer explained that Aetna's prior approval of a single case agreement for A.D.'s non-residential, outpatient, episodic therapy from an out-of-network provider did not necessitate or warrant approval of a single case agreement for clinically different, continuous, ongoing, and residential treatment for A.D. (DGIP001953.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 120. Moreover, Plaintiff's response does not cite any record evidence. Accordingly, Plaintiff's response is also improper because it does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 120 should be disregarded, and Paragraph 120 of Defendant's SOF should be deemed undisputed.

121.    The Appeal Reviewer also explained that the Affordable Care Act and insurance-related regulations cited by Plaintiff relating to out-of-network coverage are inapplicable to the Plan based on its self-funded status. (DGIP001953.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The Appeal Reviewer did not address Plaintiff's specific argument that the ACA requirements apply because Aetna uses the same provider network for both self-funded and insured plans. DGIP1915; 1953.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 121, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 121 of Defendant's SOF should be deemed undisputed.

122.    The Appeal Reviewer concluded that the Plan provided clinically appropriate and available in-network residential treatment facility options for A.D.'s care such that no network deficiency existed, explaining that "a single case agreement to cover residential treatment services at Sandhill Center, an out-of-network provider, was not necessary, appropriate, or likely to provide cost savings or be more efficient when compared to a contracted in-network provider." (DGIP001954.)

**Plaintiff's Response:**  Disputed. The record does not support the conclusion that clinically appropriate and available in-network options existed for A.D. For the entire United States, Aetna was able to identify only four in-network facilities that it claimed could have provided residential treatment to A.D. DGIP1954. Each of those facilities was unavailable and/or inappropriate for A.D. as confirmed by Plaintiff, his wife, A.D.'s treatment team, and residential treatment specialists who personally visited the facilities. DGIP1916-1918; DGIP1942-1944; DGIP1947-1948.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 122, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025

Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 122 of Defendant's SOF should be deemed undisputed.

123.    The Appeal Reviewer thoroughly reviewed each of Plaintiff's arguments concerning each of the in-network RTCs researched and identified by Aetna in conjunction with A.D.'s discharge from Huntsman in 2022, including Plaintiff's claim that Aetna was unable to locate a clinically appropriate and available in-network RTC that would accept A.D. (DGIP001954.) In doing so, the Appeal Reviewer considered arguments contained in Plaintiff's August 13, 2025 Appeal, the Administrative Record broadly (including the efforts made by Aetna's Care Advocate in 2022 to place A.D. in an appropriate in-network RTC), the letter provided by A.D.'s parents with Plaintiff's August 13, 2025 Appeal, and additional documents submitted with Plaintiff's August 13, 2025 Appeal, including letters written in in 2025 by various health care providers who treated A.D. in 2022. (DGIP0001954-1956.)

**Plaintiff's Response:** Disputed. The Appeal Reviewer did not thoroughly review Plaintiff's arguments or respond to all of Plaintiff's arguments or evidence. The Appeal Reviewer dismissed the detailed opinions of residential treatment specialists Dr. Hyken and Ms. Taylor without providing contrary evidence and without consulting a residential treatment specialist. DGIP1956. The Appeal Reviewer conducted a paper review without meeting or evaluating A.D. and without visiting any of the facilities. DGIP1951-1966.

**Defendant's Reply:** Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 117, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 123 of Defendant's SOF should be deemed undisputed.

124.    The Appeal Reviewer determined that at least four in-network RTCs were offered and available to provide clinically appropriate care to A.D. (DGIP001954.)

**Plaintiff's Response:** Disputed. The record does not support this determination. Each of the four facilities identified by the Appeal Reviewer was unavailable and/or inappropriate for A.D. The record shows that in-network facilities identified by Aetna were all inappropriate and/or unavailable to provide residential treatment to A.D. for the reasons cited in response to statement No. 40 above.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 124, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 124 of Defendant's SOF should be deemed undisputed.

125.    More specifically, the Appeal Reviewer considered and responded to Plaintiff's arguments presented in the Administrative Record (including in the August 13, 2025 Appeal and supporting materials) regarding the clinical appropriateness and availability of each these four RTCs: Meridell Achievement Center; Oak Plains Academy; San Marcos Treatment Center; and Center for Discovery. (DGIP001955-1961.)

**Plaintiff's Response:** Disputed. The record does not support this determination. Each of the four facilities identified by the Appeal Reviewer was unavailable and/or inappropriate for A.D. The record shows that in-network facilities identified by Aetna were all inappropriate and/or unavailable to provide residential treatment to A.D. for the reasons cited in response to statement No. 40 above and DGIP1911-1922.

1106835699\2\AMERICAS

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 125, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 125 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47-55, *supra*, and 128-136, *infra*.

126.    The Appeal Reviewer further specifically considered and responded to Plaintiff's argument and the opinions A.D.'s health care providers submitted in 2025 (which Plaintiff included with the August 13, 2025 Appeal) that a single case agreement with Sandhill should be granted because the identified in-network RTCs were inadequate due to: untimely responses from the facilities; lengthy wait times; age restrictions; IQ restrictions; duration of treatment concerns; insufficient expertise in the treatment of A.D.'s conditions (including providing services to patients in a mixed milieu); and concerns about neglect or abuse in the facilities based on Plaintiff's Internet-based research. (DGIP001955-1962.)

**Plaintiff's Response:** Disputed. The Appeal Reviewer did not thoroughly review Plaintiff's arguments or respond to all of Plaintiff's arguments or evidence. Aetna did not dispute facts showing the in-network facilities were unavailable and inappropriate. Aetna did not dispute that Plaintiff received no return phone calls from Meridell or San Marcos. DGIP1957, 1959. Aetna did not dispute that Plaintiff was advised that Meridell and Center for Discovery did not accept children under age 11, and that A.D. was a newly turned 10-year-old who was emotionally immature for his age. DGIP1916, 1957, 1960. Aetna did not dispute that Plaintiff was informed that Oak Plains had a five-week wait and San Marcos had a six-to-eight week wait. DGIP1917, 1958-1959. Aetna did not dispute that the in-network facilities focused on short-term assessment

and stabilization rather than the intensive long-term care A.D. required. DGIP1957-1960. Aetna unreasonably dismissed safety concerns regarding Oak Plains. DGIP1958.

Aetna incorrectly claimed there was "no clinical evidence" that A.D.'s transfer to residential treatment was needed immediately. That claim is directly contradicted by Aetna's actions as set forth in Plaintiff's appeal: "[A.D.'s] need to transfer to residential treatment was accelerated when Aetna denied further benefits for [A.D.'s] hospitalization at Huntsman on October 3, 2022, and Huntsman unequivocally stated that [A.D.] was unsafe to return home." DGIP1917. Aetna did not address these facts in its decision.

Aetna failed to address Plaintiff's evidence on appeal that Aetna's secret criteria were unreasonable because they do not reflect the standard of care for mental health residential treatment in the treatment of mental illness in children. DGIP1921-1922, 1942-1944.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 126, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 126 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47-55, *supra*, and 128-136, *infra*.

127.  The Appeal Reviewer explicitly noted that (1) any limitations on the search for in-network RTCs based on geography were based on Plaintiff's request in discussions with the Aetna Care Advocate; (2) in-network RTC options were considered available if the in-network RTC confirmed it would accept A.D. after taking into consideration A.D.'s age and individualized clinical factors; and (3) A.D.'s medical records did not present clinical evidence that A.D.'s transfer from Huntsman to a residential treatment facility was needed immediately, such that a

reasonable transfer delay from Huntsman directly to a residential treatment facility could not be accommodated. (DGIP001956.)

**Plaintiff's Response:** Disputed. The record does not support this determination. The record shows that in-network facilities identified by Aetna were all inappropriate and/or unavailable to provide residential treatment to A.D. for the reasons cited in response to statement Nos. 40 and 126 above and DGIP1911-1922.

**Defendant's Reply:** Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 127, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 127 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47-55, *supra*, and 128-136, *infra*.

128.    The Appeal Reviewer relied on their certification in child and adolescent psychiatry, personal review of each of the identified facilities (including each facility's licensure, credentialing, and clinical program offerings), A.D.'s medical records (including A.D.'s age, personal clinical history, and diagnostic profile), the letters from A.D.'s parents and treating providers, and the Administrative Record in full, to determine that each of the four identified in-network RTCs was clinically appropriate to provide residential treatment care to A.D. and thus a network deficiency did not exist to warrant consideration of a single case agreement with an out-of-network provider. (DGIP001956-1961.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization and speculation as to what the Appeal Reviewer relied on for the determination.

- 74 -

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization and speculation as to what the Appeal Reviewer relief on for the determination," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 128. Moreover, Plaintiff's response does not cite any record evidence. Accordingly, Plaintiff's response is also improper because it does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 128 should be disregarded, and Paragraph 128 of Defendant's SOF should be deemed undisputed.

129.    As to Meridell Achievement Center, the Appeal Reviewer determined that A.D.'s age and IQ did not preclude his admission, as confirmed by Aetna's Care Advocate and Meridell materials; Meridell offered sufficient duration of stay and clinically appropriate treatment; and Plaintiff's concerns relating to unspecified complaints of abuse and negligence involving Meridell were not supported by Aetna's review of Meridell as an in-network facility with regard to safety violations, licensure, and credentialing. (DGIP01956-1957.)

**Plaintiff's Response:** Disputed. The record shows that Plaintiff did not receive return phone calls from Meridell and that Meridell did not accept children under age 11. DGIP1916, 1957. Aetna did not dispute either of these facts. DGIP1957. The Appeal Reviewer's paper review contradicts information provided directly by Meridell to Plaintiff and his wife.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 129, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph

129 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47; 52-53, *supra*, and 130, *infra*.

130.    The Appeal Reviewer concluded that "based on its licensure, credentialing, and clinical program offering, Meridell was suitable to provide appropriate Residential Treatment Services to [A.D.]. Specifically, this facility provided physician-led behavioral and neurobehavioral programs using evidence-based, trauma-informed interventions, including family therapy to target dysregulation and aggressive behaviors, improving functioning at home and school." (DGIP01956-1957.)

**Plaintiff's Response:**  Disputed. The Appeal Reviewer's conclusion is not supported by the record for the reasons stated in response to statement No. 129 above.

==Defendant's Reply:==  Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 130, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 130 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47; 52-53 and 129, *supra*.

131.    As to Oak Plains Academy, the Appeal Reviewer determined information provided by Oak Plains supported its suitability for admission of A.D., with specific consideration given to A.D.'s IQ and history of violent outbursts; that Oak Plains did not require demonstration of violent behavior as a clinical requirement for remaining at the facility; that concerns about short term discharge were not warranted because discharge was based upon completion goals; that Plaintiff's concerns of a reported patient death occurring at Oak Plains *after A.D.'s admission to Sandhill* was not supported by Aetna's review of Oak Plains as an in-network facility with regard to safety

violations, licensure, and credentialing; and that Plaintiff's concern about a five-week admission delay was not supported by Aetna's own review and communications with Oak Plains when planning for A.D.'s discharge from Huntsman into RTC care. (DGIP01957-1958.)

**Plaintiff's Response:** Disputed. Aetna unreasonably dismissed safety concerns regarding Oak Plains. Plaintiff cited a published news article reporting the fatal overdose of two female adolescent patients at Oak Plains during the period Aetna recommended it for A.D. DGIP1917. Aetna claimed these deaths were not "substantiated by any authority" – a factually incorrect assertion, as the deaths were confirmed by the Montgomery County Sheriff's Office. DGIP1917. Rather than address this evidence, Aetna speculated that Oak Plains had "appropriate de-escalation and restraint procedures, if needed," without any acknowledgment of A.D.'s documented history of violent behaviors toward peers of lower IQ, which was precisely the population Oak Plains served.[4] DGIP1958. The Appeal Reviewer's paper review also contradicts information provided directly by Oak Plains to Plaintiff and his wife regarding a five-week wait list. DGIP1958.

**Defendant's Reply:** Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 131, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 131 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47; 54-55, *supra*, and 132, *infra*.

---

[4] Defendant also dismisses the deaths at Oak Plains as occurring after A.D.'s admission to Sandhill. Plaintiff raised safety concerns about Oak Plains before A.D.'s admission to Sandhill. DGIP1765 ("I am very concerned to learn that two of the places recommended (Oak Plains and North Spring) seem to have multiple allegations of harming children in their care."). The subsequent death of two patients at Sandhill confirms Plaintiff's fears were justified.

1106835699\2\AMERICAS

132.    The Appeal Reviewer concluded that Oak Plains "was suitable to provide appropriate Residential Treatment Services to [A.D.]. Specifically, this facility is a trauma-informed psychiatric residential treatment program for children ages 7 to 17 struggling with emotional and behavioral issues, highlighting family therapy as part of its interventions." (DGIP01958-1959.)

**Plaintiff's Response:**  Disputed. The Appeal Reviewer's conclusion is not supported by the record for the reasons stated in response to statement No. 131 above.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 132, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 132 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47; 54-55; and 131, *supra*.

133.    As to San Marcos Treatment Center, the Appeal Reviewer determined San Marcos was responsive and communicative with Aetna regarding admission of A.D.; that San Marcos offers adequate round the clock treatment for autism spectrum disorders as presented by A.D. and including for A.D.'s age; that the 2025 letters from various physicians who treated A.D. three years earlier (and which were submitted years after A.D.'s admission to RTC care) alleging San Marcos was not appropriate and "more of a hospital program" were not supported by San Marcos' treatment offerings and modalities, as A.D. would not have been treated alongside older patients receiving treatment for alcohol dependency, or that A.D.'s treatment would have been limited to an insufficient duration; and that the longer waitlist of San Marcos was common and is often

1106835699\2\AMERICAS

accommodated after a follow-up to determine if a faster admission can be provided. (DGIP001956; DGIP001959-1960.)

**Plaintiff's Response:** Disputed. Aetna did not dispute that Plaintiff did not receive return phone calls from San Marcos. DGIP1917; 1959. Aetna dismissed reports from residential treatment specialist Dr. Hyken who reported that San Marcos was "more of a hospital program." DGIP1959. Aetna did not dispute that San Marcos had a six-to-eight week wait. DGIP1959.

<mark>**Defendant's Reply**</mark>: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 133, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 133 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraph 134, *infra*.

134.    The Appeal Reviewer concluded that, "based on its licensure, credentialing, and clinical program offering, San Marcos was suitable to provide appropriate Residential Treatment services to [A.D.]. Specifically, this facility provided physician-led, evidence-based child-centered interventions including weekly family therapy to target dysregulation and aggressive behaviors, improving functioning at home and school." (DGIP001960.)

**Plaintiff's Response:**  Disputed. The Appeal Reviewer's conclusion is not supported by the record for the reasons stated in response to statement No. 133 above.

<mark>**Defendant's Reply**</mark>: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 134, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph

134 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraph 133, *supra*.

135.    As to Center for Discovery, the Appeal Reviewer determined the facility would have accepted A.D., with consideration of his age and his diagnosis, as Center for Discovery treated 10-year-old patients and the full range of behavioral health issues and psychiatric disorders; that its many different treatment units and programs supported separate (i.e., not mixed) clinical populations, including by age, diagnosis, and gender, such that A.D. would receive clinically appropriate, individualized care; and that treatment was not subject to predetermined time limits. (DGIP001960-1961.)

**Plaintiff's Response:** Disputed. Residential treatment specialist Ms. Taylor, who personally toured Center for Discovery, reported that it did not treat patients with ASD. DGIP1948. Dr. Tatti also confirmed that the programs offered by Aetna were not appropriate for A.D. DGIP1937. Aetna rejected Ms. Taylor's reports without offering contrary evidence. DGIP1960. Aetna also did not dispute that Center for Discovery did not accept children under age 11 and that A.D. was newly age 10 and emotionally immature for his age. DGIP1916, 1960.

**Defendant's Reply:** Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 135, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 135 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47; 49-51, *supra*, and 136, *infra*.

136.    The Appeal Reviewer concluded that, "Center for Discovery was able to accept a 10-year-old . . . they operate 8–10 facilities nationwide that provide physician-led, evidence-based

residential care for complex child and adolescent mental health disorders, offering five to six hours of daily psychotherapy and weekly psychiatric visits." (DGIP001961.)

**Plaintiff's Response:**  Disputed. The Appeal Reviewer's conclusion is not supported by the record for the reasons stated in response to statement No. 135 above.

<mark>**Defendant's Reply**</mark>: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 136, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 136 of Defendant's SOF should be deemed undisputed. *See also* Defendant's Reply to Paragraphs 40-42; 47; 49-51, and 135, *supra*.

137.    The Appeal Reviewer further concluded that even if a network deficiency did exist, Sandhill nonetheless would not be appropriate for coverage on a single case agreement basis. (DGIP001961-1962.)

**Plaintiff's Response:** Disputed. Sandhill satisfied the Plan's requirements for a residential treatment facility as a state licensed residential treatment center. DGIP0136, 0890, 1682, 1752. Aetna's criteria are not contained in the Plan and Aetna did not identify any Plan provision authorizing their application. DGIP1921, 1961-1963.

<mark>**Defendant's Reply**</mark>: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 137, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's purported controversion of the facts alleged in Paragraph 137 regarding Sandhill's licensure are not supported by the record. As stated in Defendant's Response to Paragraph 112, *supra*, the evidence

of licensure provided in Plaintiff's August 13, 2025 Appeal indicates that Sandhill was licensed by the State of New Mexico only as of November 2023 – which was more than a year after A.D.'s admission at Sandhill. To the extent Plaintiff's response asserts that "Sandhill satisfied the Plan's requirement for a residential treatment facility as a state licensed residential treatment center," the citations in Plaintiff's response are to Plaintiff's appeal consultants' appeals purporting to establish Sandhill's licensure status as of A.D.'s admission. Those statements, however, are inadmissible hearsay. Accordingly, Plaintiff's response does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 137 should be disregarded, and Paragraph 137 of Defendant's SOF should be deemed undisputed.

138.    In response to Plaintiff's arguments that Sandhill satisfied the Plan's definitions of "provider" and "residential treatment facility," the Appeal Reviewer explained that the Plan expressly excludes Sandhill from coverage as an out-of-network provider, and exception-based coverage was confined to the prior authorization utilization review process. (DGIP001953 (quoting DGIP001667): "if you choose to receive Covered Health Services from an Out-of-Network provider, you are responsible for obtaining prior authorization before you receive the services.")

**Plaintiff's Response:** Disputed. The Appeal Reviewer did not address or acknowledge the Plan language requiring only state licensure for residential treatment facilities (DGIP1682, 1752), did not address the claim that Sandhill met the Plan requirements (DGIP0136, 0890), and did not identify any Plan provision authorizing application of the Aetna criteria. DGIP1921, 1961-1963.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 138, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 138 of Defendant's SOF should be deemed undisputed.

139.    The Appeal Reviewer reiterated the quality control and safety criteria considered by Aetna in the utilization review process for approval of single case agreements for out-of-network RTC care, which had been previously provided to the Plaintiff: "Included in those criteria are that the out-of-network residential treatment facility 'be accredited by one of the following agencies, commissions or committees for the services being provided: The Joint Commission (TJC), Committee on Accreditation of Rehabilitation Facilities (CARF), American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP), or the Council on Accreditation (COA); or is credentialed by Aetna.' The criteria further provide that in addition to accreditation, a licensed behavioral health provider must be actively on duty at the facility 24 hours per day for 7 days a week; the patient must be treated by a psychiatrist at least once per week; and the facility's medical director must be a psychiatrist." (DGIP001868-1910; DGIP001961-1962.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The Aetna criteria are not referenced in or authorized by the Plan. Aetna did not identify any Plan provision authorizing application of the Aetna criteria. DGIP1951-1966.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 139, and that to the extent Plaintiff's response asserts

1106835699\2\AMERICAS

Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 139 of Defendant's SOF should be deemed undisputed.

140.    The Appeal Reviewer explained why Aetna determined that Sandhill did not meet such criteria at the time of A.D.'s discharge planning from Huntsman: "it was not accredited or credentialed as required by the criteria, it did not have a licensed behavioral health provider actively on duty 24/7, [A.D.] was not being treated by a psychiatrist at least one time per week since his admission, and Sandhill Center's medical director was not a psychiatrist." (DGIP001961-1962.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The Plan does not require accreditation by organizations, 24/7 licensed behavioral health care provider actively on duty, weekly psychiatrist visits, or a psychiatrist medical director. DGIP1682, 1752. Sandhill satisfied the Plan's requirements for a provider, residential treatment center, and treatment center. DGIP0136; 0890.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 140, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 140 of Defendant's SOF should be deemed undisputed.

141.    The Appeal Reviewer also explained that Sandhill's treatment approaches and techniques (including basing patient care on the Neurosequential Model of Therapeutics) did not have adequate support of the academic and clinical community for purposes of best accepted

1106835699\2\AMERICAS

standard of care, prohibiting eligibility for Aetna's provider network or approval on a single case agreement basis. (DGIP001962.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The record does not support the Appeal Reviewer's statements.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 141, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any records evidence, and therefore does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 141 should be disregarded, and Paragraph 141 of Defendant's SOF should be deemed undisputed.

142.    The Appeal Reviewer acknowledged the opinions stated by A.D.'s health care providers in their June/July 2025 letters that Sandhill was the only appropriate option for A.D. in 2022 and noting that as of 2025 (and thus after A.D.'s discharge from Sandhill), Sandhill was licensed in New Mexico, focused on children with clinical profiles like A.D., and that staffing was adequate. (DGIP001962.) The Appeal Reviewer also acknowledged that the foregoing providers and A.D.'s parents opined that Meridell Achievement Center, Oak Plains Academy, San Marcos Treatment Center, and Center for Discovery were not appropriate for A.D. and that Sandhill was more appropriate due to perceived inadequacies in each identified in-network RTC (for example, A.D.'s age, the RTC's therapeutic focus, or clinical milieu). (DGIP0001956.) The Appeal

1106835699\2\AMERICAS

Reviewer explained that such opinions were considered, but even if accepted, they could not override Aetna's minimum safety clinical standards for coverage, as had been previously explained in earlier communications to Plaintiff. (DGIP001956; 1962.)

**Plaintiff's Response:** Disputed. The Appeal Reviewer dismissed the detailed and particularized opinions of A.D.'s treating providers and residential treatment specialists without providing contrary clinical evidence, without consulting a residential treatment specialist, and without visiting the facilities.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 142, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any records evidence, and therefore does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's Response to Paragraph 142 should be disregarded, and Paragraph 142 of Defendant's SOF should be deemed undisputed.

143.    Based on the foregoing, the Appeal Reviewer concluded that the utilization review process parameters would not authorize coverage for Sandhill, even in the event of a network deficiency, on a single case agreement basis. (DGIP001962.)

**Plaintiff's Response:**  Disputed. The utilization review process does not authorize Aetna to impose accreditation and staffing requirements not contained in the Plan. The Plan's utilization review process is limited to evaluating clinical necessity, appropriateness, efficacy, or efficiency.

1106835699\2\AMERICAS

DGIP1667-1668. Sandhill satisfied the Plan's requirements for a residential treatment facility. DGIP0136, 0890, 1682, 1752.

**Defendant's Reply**: Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 143, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument, should be disregarded, and Paragraph 143 of Defendant's SOF should be deemed undisputed.

144.    Relying on Plan terms, including Schedule of Benefits, Prior Authorization, and Interpretation of Benefits, the Appeal Reviewer determined that at least four clinically appropriate in-network options for A.D.'s residential treatment were available and thus there was no network deficiency, and that even if there was a network deficiency, coverage for Sandhill as an out-of-network provider on a single case agreement basis was not appropriate, and therefore Aetna's denial of coverage decision must be upheld. (DGIP001961-1964.)

**Plaintiff's Response:** Undisputed as to the contents of the record. Disputed as to Defendant's characterization. The record does not support the Appeal Reviewer's conclusions.

**Defendant's Reply**: To the extent Plaintiff disputes "Defendant's characterization," Defendant states that the content of Aetna's November 11, 2025 Determination speaks for itself and supports the facts alleged in Paragraph 144, and that to the extent Plaintiff's response asserts Plaintiff's contentions with respect Aetna's November 11, 2025 Determination, Plaintiff's response is improper argument. Moreover, Plaintiff's response does not cite any records evidence, and therefore does not comply with Local Civil Rule 56.1(d), which requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." For these reasons, Plaintiff's

1106835699\2\AMERICAS

Response to Paragraph 144 should be disregarded, and Paragraph 144 of Defendant's SOF should be deemed undisputed.

## II.    DEFENDANT'S RESPONSE TO "PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS."

Plaintiff's response to Defendant's SOF includes 191 paragraphs of purported "additional facts." But these 191 paragraphs are not actually *additional* facts. Rather, they are the same 191 paragraphs, verbatim, that comprise "Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1" which Plaintiff submitted with Plaintiff's Motion for Summary Judgment. *Compare* Doc. 56-2 with Doc. 61-1, at 50-72.

Local Civil Rule 56.1(b) provides that a party's opposition to a motion for summary judgment must include a response to the movant's statement of undisputed material facts "and <u>if necessary</u>, additional paragraphs containing a separate, short, and concise statement of additional material facts <u>as to which it is contended that there exists a genuine issue to be tried</u>" (emphasis added).

Ignoring both the plain language of the rule and the purpose of it, which is to permit a party opposing summary judgement to allege, but only "if necessary," facts *as to which that party contends there is a dispute*, Plaintiff cut-and-pasted the entirety of Plaintiff's statement of *undisputed* facts submitted with Plaintiff's motion for summary judgment, now asserting them as purported *additional* facts in response to Defendant's motion for summary judgment, and apparently contending as to each paragraph therein that "there exists a genuine issue to be tried" per Local Rule 56.1(b).[5]

---

[5] Plaintiff nonetheless labeled his submission of additional facts "Plaintiff's Statement of Additional <u>Undisputed</u> Material Facts" (emphasis added).

Plaintiff's reproducing the entirety of his statement of facts in support of his cross-motion for summary judgment as additional facts in response to Defendant's statement of facts in support of its summary judgment does not comply with the letter or the spirit of Local Rule 56.1. "[T]he counterstatement permitted by Local Rule 56.1(b) is for additional material facts Plaintiffs believe to be in dispute, not argument or other facts Plaintiffs find helpful." *Estevez v. Berkeley College*, No. 18-CV-10350 (CS), 2021 WL 3115452, at *10  (S.D.N.Y. July 19, 2021) (wherein the Court required plaintiffs to resubmit a 56.1 statement because it included information beyond the facts that were disputed and the basis for the dispute). It follows that "[t]he statements should, therefore, provide the Court with new information – beyond what the movant in a particular case has submitted – that creates genuine disputes about the material facts the movant has provided." *Allen v. Koenigsmann*, No. 23-CV-5651 (LAP), 2024 WL 403113, at *4 (S.D.N.Y. Feb. 2, 2024) (wherein the Court directed the plaintiff to refile when their previous filings supplied additional facts that were not in dispute and thus did not comport with Rule 56.1(b)). Plaintiff's SOAF does the opposite of provide the Court with new information that creates genuine disputes – it instead merely reasserts, now apparently as disputed, all of the facts Plaintiff previously asserted as undisputed in Plaintiff's moving papers.

Courts within this District have explained that what Plaintiff did by reproducing the entirety of his previously filed statement of undisputed material facts is improper:

> Plaintiff's responsive 56.1 Statement includes additional facts that he contends are undisputed. But such a statement is not permitted under Local Rule 56.1. That Rule allows for a counterstatement of "additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute.

*Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *1, n.1 (S.D.N.Y. Nov. 19, 2020) (cleaned up). Indeed, where a non-movant has improperly submitted a competing statement of undisputed facts, as Plaintiff did here, at least one court has imposed sanctions to deter the conduct. *See, e.g.*, *Samborski v. W. Valley Nuclear Servs. Co.*, No. 99-CV-0213E(F), 2002 WL 1477610, at *1-2 (W.D.N.Y. June 25, 2002) (sanctioning non-movant's counsel for submitting statement of undisputed, rather than disputed, material facts where counsel was previously admonished for the practice).

Plaintiff's wholesale duplication of his 191 paragraphs of previously alleged undisputed facts now as "additional facts" in response to Defendant's fact statement serves no legitimate purpose. Accordingly, Defendant submits that the Court should disregard the redundancies before it and "disregard any improper assertions" contained within Plaintiff's SOAF. *Allen,* 2024 WL 403113, at *3; see also *Maldonado v. Town of Greenburgh*, No. 18-CV-11077 (KMK), 2024 WL 433671, at *1, n.1 (S.D.N.Y. Sep. 26, 2024).

To the extent a response from Defendant is or may be required to Plaintiff's SOAF, rather than endorse Plaintiff's procedural noncompliance and further burden the record by reproducing the entirety of its previously filed response to each of the 191 paragraphs comprising Plaintiff's SOAF, Defendant instead incorporates its responses to each of the 191 paragraphs in Plaintiff's SOAF as set forth in Defendant's Response to Plaintiff's Statement of Undisputed Material Fact Pursuant to Local Rule 56.1, Doc. 60, as though fully set forth herein.

//

//

DATED:  March 13, 2026

Respectfully submitted,

*/s/ Daniel B. Pasternak*

Daniel B. Pasternak (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, Arizona 85016
T:  (602) 528-4000
F:  (602) 253-8129
daniel.pasternak@squirepb.com

Paul D. Erian
SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, New York  10036
T:  (212) 872-9800
F:  (212) 872-9815
paul.erian@squirepb.com

1106835699\2\AMERICAS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 13, 2026, I caused a copy of the foregoing **DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1 and DEFENDANT DELOITTE LLP GROUP INSURANCE PLAN'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS** to be served via ECF/CM filing on the ECF registrants for this case.

*/s/ Tammy Gougeon*

1106835699\2\AMERICAS